**Exhibit A**

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

PETER FRANKL AND JOHN DECKARD

V.

NETOPIA, INC. & ALAN LEFKOF

### SUBPOENA IN A CIVIL CASE

Case Number:[1]  3:05-cv-1757-B ECF

TO:   Johnathan Guthart
      KPMG
      55 Second Street, Ste. 1400
      San Francisco, California 94105

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   KPMG, 55 Second Street, Ste. 1400, San Francisco, California 94105 | DATE AND TIME 9/12/2007 9:00 am |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all Documents as Requested in the Attached Exhibit "A".

| PLACE   KPMG, 55 Second Street, Ste. 1400, San Francisco, California 94105 | DATE AND TIME 9/12/2007 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 9/24/07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Wade L. McClure, LLP, 8080 N. Central Expwy, Suite 1300, Dallas, Tx. 75206, (214) 891-8040

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT _____A_____  PAGE _____9_____

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) When responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

**EXHIBIT** _A_  **PAGE** _10_

## EXHIBIT "A"

1.  Any and all documents produced by you and/or KPMG to the SEC in the case styled In the matter of: Netopia, Inc., File No. SF-02846-A; This request includes electronic copies of said depositions and exhibits, if with in your custody or control.

2. Any and all documents identified and/or offered during your depositions taken on November 9, 2004 and January 5, 2005 in the case styled In the matter of: Netopia, Inc., File No. SF-02846-A.

The plaintiffs herein have entered into a confidentiality and protective order and will agree that any and all documents that you produce in connection with this subpoena shall be subject to the terms of that confidentiality and protective order.

EXHIBIT____A____ PAGE____11____

**Exhibit B**

ºAO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

PETER FRANKL AND JOHN DECKARD

V.

NETOPIA, INC. & ALAN LEFKOF

**SUBPOENA IN A CIVIL CASE**

Case Number:¹  3:05-cv-1757-B ECF

TO:  Johnathan Guthart
KPMG
55 Second Street, Ste. 1400
San Francisco, California 94105

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all Documents as Requested in the Attached Exhibit "A".

| PLACE      KPMG, 55 Second Street, Ste. 1400, San Francisco, California 94105 | DATE AND TIME  8/24/2007 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* Plaintiffs Atty | *[handwritten date]* |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Wade L. McClure, LLP, 8080 N. Central Expwy, Suite 1300, Dallas, Tx. 75206, (214) 891-8040

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

**EXHIBIT** B  **PAGE** 12

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT ___B___ PAGE ___13___

# EXHIBIT "A"

1.  Any and all documents produced by you and/or KPMG to the SEC in the case styled In the matter of: Netopia, Inc., **File No. SF-02846-A;  This request includes electronic copies of said depositions and exhibits, if with in your custody or control.**

2. Any and all documents identified and/or offered during  your depositions taken on November 9, 2004 and January 5, 2005 in the case styled In the matter of: Netopia, Inc., **File No. SF-02846-A.**

The plaintiffs herein have entered into a confidentiality and protective order and will agree that any and all documents that you produce in connection with this subpoena shall be subject to the terms of that confidentiality and protective order.

EXHIBIT____B¹____PAGE____/4____

**Exhibit C**

Guthart 11-9-04.TXT

1

1   U.S. SECURITIES AND EXCHANGE COMMISSION

2

3   In the Matter of:                )

4                                    )  File No. SF-02846-A

5   NETOPIA INC.,                    )

6

7   WITNESS:  Jonathan Guthart

8   PAGES:    1 through 284

9   PLACE:    U.S. Securities & Exchange Commission

10            44 Montgomery Street

11            Suite 2600, A-2602

12            San Francisco, California

13

14  DATE:     Tuesday, November 9, 2004

15

16

17

18       The above-entitled matter came on for hearing, pursuant

19  to notice, at 9:50 a.m.

20

21

22

23

24            Diversified Reporting Services, Inc.

25                 (202) 467-9200


2

1   APPEARANCES:

EXHIBIT____C____PAGE__15__

2          Guthart 11-9-04.TXT

3      On behalf of the Securities and Exchange Commission:

4          BRIAN A. HUCHRO, Staff Attorney

5          SHEILA O'CALLAGHAN, Staff Attorney

6          United States Securities and Exchange Commission

7          Office of Enforcement

8          44 Montgomery Street, Suite 2600

9          San Francisco, California  94104

10         (415) 705-2458, voice; (415) 705-2331, fax

11

12     On behalf of Deponent Jonathan Guthart:

13         DALE E. BARNES, Attorney at Law

14         BRIAN CHUNG, Attorney at Law

15         Bingham McCutchen LLP

16         Three Embarcadero Center

17         San Francisco, California  94111-4067

18         (415) 393-2522, voice; (415) 393-2286, fax

19

20         DAVID WAGNER, Attorney at Law

21         KPMG LLP

22         757 Third Avenue

23         New York, New York  10017

24         (212) 909-5842, voice; (212) 909-5477, fax

25

3

1              I N D E X

2

3

4   WITNESS:                        EXAMINATION

5

Page 2

EXHIBIT____C____ PAGE __16__

Guthart 11-9-04.TXT

7    A    March 21st, 1962; Palo Alto, California.

8    Q    And your residential address and telephone number,
9  please?

10    A    148 Oak Avenue, San Anselmo, California 94960.
11  Home telephone number is 415-785-3750.

12    Q    Mobile number?

13    A    415-307-3251.

14    Q    Okay.  And if you could summarize your educational
15  background subsequent to high school?

16    A    University of California Santa Barbara, B.A.,
17  Bachelor of Arts.

18    Q    And what was your -- did you have a major --

19    A    Business economics.

20    Q    Okay.  Anything else?

21    A    No.

22         MR. BARNES:  When did you get the degree?

23         THE WITNESS:  1985.

24         BY MR. HUCHRO:

25    Q    Have you ever testified in an investigation by the

                                                              12
1  Commission or its staff, any other federal agency, any state
2  agency, any stock exchange, or the NASD?  And I can go back
3  through that if you need me to.

4    A    I have not.

5    Q    Okay.  Have you ever been named as a defendant or
6  respondent in any action brought by the Commission, any other
7  federal government agency, any state securities agency, any
8  stock exchange, or the NASD?

9    A    I have not.

10    Q    Have you ever been a defendant or witness in any
                        Page 10

EXHIBIT_____C_____PAGE_____17____

Guthart 11-9-04.TXT

11    civil litigation related to the securities laws?

12        A    I have not.

13        Q    Any indictments, convictions, or guilty pleas?

14        A    No.

15        Q    Could you summarize for me, please, your employment

16    history post-college?

17        A    KPMG 1986 to date.

18        Q    That makes this very easy.  Can you describe what

19    your major roles were during that timeframe?

20        A    I have been in the audit practice my entire career,

21    working my way from an assistant through to partnership.

22        Q    And when were you promoted to partner?

23        A    1996.

24        Q    Okay.  And in relation to Netopia, have you had

25    varying roles on Netopia on engagement?


13

1        A    I have.

2        Q    And what would those be?

3        A    I was initially the SEC reviewing partner and then

4    became the engagement partner in 2002 -- excuse me -- for the

5    2002 fiscal year ended.

6        Q    And their year ends 9/30; is that right?

7        A    That's correct.

8        Q    And as the SEC reviewing partner, is that different

9    from concurring partner?

10        A    No, that is the same.

11        Q    Okay.  And what was your responsibilities for

12    purposes of a concurring partner?

13        A    I provide a second level of partner review for an

14    engagement.  I review those work papers that I think I should

Page 11

EXHIBIT    C    PAGE    18

Guthart 11-9-04.TXT

7   can recollect that you had with the audit committee that

8   caused you concern?

9       A   No.

10      Q   And in relation to the timeframe that you were the

11  engagement partner on Netopia, what responsibility did you

12  have --

13      A   I'm sorry.  Could you just start from the

14  beginning, please?

15      Q   Sure.  When you were the engagement partner in

16  Netopia, --

17      A   Um-hum.

18      Q   -- what responsibility did you have to ensure an

19  audit and/or a review was conducted in accordance to GAAP?

20      A   That it was my responsibility as the engagement

21  partner.

22      Q   And in relation to generally accepted auditing

23  standards?

24      A   That as well.

25      Q   And in relation to GAAP, would that -- would that

                                                          20

1   include staff accounting bulletins?

2           MR. BARNES:  Is the question whether staff

3   accounting bulletins are a part of GAAP?

4           MR. HUCHRO:  In relation to the review that he's

5   responsible for.

6           THE WITNESS:  We would have considered staff

7   accounting bulletins as part of our -- part of procedures.

8           BY MR. HUCHRO:

9       Q   And would you have considered Regulation SX?

10      A   Yes, we would have.

Page 17

EXHIBIT____C____PAGE____19

Guthart 11-9-04.TXT

11    Q    Okay. This is maybe a difficult question to

12  answer, but as the engagement partner on Netopia is there any

13  work papers that you yourself routinely prepared as a matter

14  of course?

15    A    There were not work papers that I routinely

16  prepared.

17    Q    Are there work papers that you recollect that you

18  may have prepared while you were engagement partner?

19    A    Not that I recollect.

20    Q    Okay. In relation to your review process, if you

21  could outline that at a high level for me and then help me

22  understand what types of things as engagement partner you

23  tend to focus on for Netopia?

24    A    My responsibilities, according to the firm

25  standards, that I review those things that are identified as

21

1  critical audit areas. So I would look at those critical

2  audit areas.

3    Q    And what do those critical audit areas happen to be

4  in Netopia, if you can recollect?

5    A    Amongst other things, revenue recognition. I think

6  it was inventory reserves, accounts receivable reserve.

7  That's -- that's what I recollect at the moment.

8    Q    Now are those things that are set forth in the

9  firm's guidance of things you must look at?

10    A    I don't think that the firm tells engagement teams

11  what the critical audit areas are. That's a matter of

12  judgment.

13    Q    Okay. So those would have been areas that you

14  chose to focus on on the Netopia engagement?

Page 18

EXHIBIT____C____PAGE___20

Guthart 11-9-04.TXT

6  team members about the process of completing the audit or

7  review.  I would have reviewed those key work papers that I

8  thought were essential as a result of any issues that had

9  been raised.  I would have reviewed the public filing

10  documents.

11      Q    You know they are steps that are required of you as

12  a -- based upon firm guidance?

13      A    Those are the steps that I outlined.

14      Q    And based upon your recollection did you perform

15  those steps?

16      A    I believe I did.

17      Q    And in relation to Netopia and the quarter ended

18  6/30, are you --

19      A    6/30?

20      Q    '02.  -- are you required in any shape or form to

21  sign off physically on anything saying that you're satisfied

22  with what you've looked at?

23      A    There is.

24      Q    And what would that be?

25      A    There is a work -- a standard working paper.


                                                             67

1      Q    And what is in that standard working paper?

2      A    That I carried out my responsibilities as

3  concurring review partner.

4      Q    Okay.  And is that something -- what's the

5  timeframe for that signoff in relation to the company's

6  filing, for example, their 10Q?  The "company" being Netopia.

7      A    I don't know when that may have happened for that

8  particular quarter.

9      Q    Is there any practice of when that signoff should

Page 58

EXHIBIT____C____ PAGE__21

Guthart 11-9-04.TXT

10    occur in relation to the company filing their 10Q with the

11    Commission?

12        A    I don't know the answer to that question.

13        Q    Okay.  And at what point did you become the

14    engagement partner for -- on the Netopia account?

15        A    It would have been, I believe, in the fourth

16    quarter of the 2002 fiscal year.

17        Q    So was it during the quarter, at the end of the

18    quarter, beginning of the quarter?

19        A    I'm not sure where it was during that period of

20    time.

21        Q    Would you have signed off the accounts for that

22    9/30/02 audit?

23        A    Yes, I would have.

24        Q    And you said up through the -- at least the June

25    timeframe, June '02, that you were the concurring partner?

68

1         A    That's correct.

2         Q    Do you have a recollection of what you did to

3    satisfy yourself for the entire fiscal year as the engagement

4    partner?

5         A    I did a detailed review of the -- of the critical

6    audit areas of the working papers as part of the '02 fiscal

7    year audit.

8         Q    And does that mean you went back to prior quarters;

9    what does that mean?

10        A    I don't recall if I went back to prior quarters.

11        Q    Do you have a sense of what you -- what you did?

12        A    I did a detailed review of the critical audit areas

13    supporting of the opinion for the audit.

Page 59

EXHIBIT____C____ PAGE____22

Guthart 11-9-04.TXT

14    Q    And do you recollect what the critical audit areas

15    were?

16    A    As I noted before, amongst other things, it was

17    revenue recognition, reserves.  And there was a third item

18    that I had mentioned previously, but I can't recall it.

19    Q    I think it may have been accounts receivable.

20    A    Accounts receivable, yes.

21    Q    Is there anything in particular that stands out in

22    your mind for that timeframe as something you thought was

23    especially critical?

24    A    Fiscal year '02?

25    Q    Correct.

69

1    A    No.

2    Q    And do you have a sense of why you were -- were you

3    asked to take over as the engagement partner?

4    A    I was.

5    Q    And who asked you to take over?

6    A    I don't recall.

7    Q    And what was your reaction when you were asked to

8    take over the account?

9    A    I was fine with it.

10    Q    What role did Mr. Dansk play -- Dance -- excuse me

11    -- play in the 9/30/02 audit?

12    A    I don't recall when exactly he roled out, so I

13    don't know what level of -- what role he played during the --

14    the actual '02 audit.

15    Q    Do you have a reason to believe that -- did he --

16    first of all, did he leave the firm?

17    A    He did leave the firm.

Page 60

EXHIBIT____C____PAGE____Z3

Guthart 11-9-04.TXT

72

1  recollection to having any knowledge of a transaction at
2  9/30/02?

3      A    At 9/30/02 I didn't have a re- -- did not have a
4  recollection of that.

5      Q    Okay.  And once you became the engagement partner
6  on Netopia, you talked about one of the audit areas that you
7  tend to focus on is revenue.

8      A    Yes.

9      Q    What types of things in a general perspective are
10 you concerned with when you're looking at transactions
11 related to revenue at Netopia?

12     A    We would -- for those software transactions we'd
13 want to make sure they're in compliance with SOP 97.2.  And
14 for those transactions that are hardware-based we would like
15 to make sure that we understand they're in compliance with
16 SAB 104.

17     Q    And when you're conducting your review what are you
18 looking at?

19     A    Define "review" for me, please.

20         MR. BARNES:  Your review as the engagement partner.

21         THE WITNESS:  Review as engagement partner or
22 review, doing a quarterly review, SAS 100, or the review --

23         MR. BARNES:  I think -- I think it's your review --

24         THE WITNESS:  Okay.

25         MR. BARNES:  -- of critical area audit work papers.

73

1         THE WITNESS:  Okay.

2         MR. BARNES:  I do believe.

Page 63

EXHIBIT ___C___ PAGE __24__

Guthart 11-9-04.TXT

2  four criteria as outlined in Exhibit 29?

3      A    I think again it comes back to the terms of the

4  arrangement.

5      Q    And is there anything on Exhibit 29 that tells you

6  about what the terms of the arrangement are?

7      A    What -- on Exhibit 29?

8      Q    Correct.

9      A    No.  I think you'd have to go back to look at the

10  purchase order.

11      Q    So does -- on Exhibit 29 when it says customer does

12  that help you reach a conclusion as to when revenue you

13  recognized --

14      A    I'm not sure I understand your question.

15      Q    Sure.  It says on Exhibit 29, there's a heading

16  that says, "Customer," and it says, "Interface" Commuter --

17  excuse me -- "Interface Communication."

18      A    Um-hum.

19      Q    Does that help you determine in your mind whether,

20  you know, the company, for example, is -- you said they're an

21  integrator.

22      A    Right.

23      Q    When, in that fact pattern, when would revenue be

24  recognized if the company met the four criteria that are

25  outlined?

                                                            121

1      A    I'm sure -- I'm still not sure I understand what

2  your question is.

3      Q    Would the -- would Netopia -- should Netopia

4  recognize revenue at the time these four criteria were met or

5  at a later time?

                         Page 105

**EXHIBIT_____C_____PAGE____25____**

Guthart 11-9-04.TXT

6      A    Are you asking me that now as -- from what I know
7  today, or at the time that I was --
8           MR. BARNES:  I think it's assuming that these four
9  criteria are met, which are the criteria for 97.2.
10          MR. BARNES:  Right.
11          THE WITNESS:  Yeah, --
12          BY MR. HUCHRO:
13     Q    At -- you know, at the time or prior to the time
14  you're signing off the accounts for the 9/30/03 audit.
15     A    Assuming that they met these four criteria, yes, I
16  say it would.
17          MR. BARNES:  And then -- may -- may I, Brian?
18          Does that fact ICC was an integrator, again
19  assuming that those four criteria are met, change your
20  answer?
21          THE WITNESS:  Not necessarily.
22          BY MR. HUCHRO:
23     Q    But possibly?
24     A    But possibly.
25     Q    And how would it possibly change it?

                                                        122
1      A    Depending on the terms of the arrangement.
2      Q    And what types of things could dictate whether
3  revenue is recognized or not?
4      A    Well, again you want to make sure that if we're
5  talking about an integrator, right, or a reseller, that there
6  isn't some kind of contingent aspect to the -- to the terms
7  of the arrangement they would sell -- you know, sell in is
8  not appropriate.
9      Q    I'm going to pick on my colleague for a second.
                        Page 106

EXHIBIT____C____PAGE__26__

Guthart 11-9-04.TXT

10    Can you describe what "sell in" is?

11        A    Why are you picking on your colleague for?

12        Q    She knows, but just to --

13        A    To be -- to recognize revenue at the time of the

14    shipment to the integrator or the initial customer and not to

15    the ultimate customer of the -- of the integrator.

16        Q    Okay.  And is there anything you looked at here

17    today that would cause you to think that at the time that you

18    signed off the accounts at 9/30/03 -- well, first of all, do

19    you recollect whether the company did recognize revenue in

20    this particular transaction for the period ending 9/30/03?

21        A    I believe they did.

22        Q    Is there anything you've seen today that would

23    cause you to believe that treatment was inappropriate?

24        A    That I've seen today that you've provided to me?

25        Q    Correct.

                                                              123

1         A    I don't believe that I have.

2         Q    Okay.  Do you want to go back and look at the two

3    purchase orders that we previously discussed?  You're sure?

4    Exhibit 24 and Exhibit 25.

5         A    Um-hum.

6         Q    And for the record I'll indicate you said you may

7    have seen them, but you're not real sure.

8         A    Right.

9              Okay.

10        Q    Is there anything in Exhibit 24 or 25 that would

11   modify your answer that at 9/30/03 Netopia wouldn't have been

12   eligible to recognize revenue under 97.2?

13        A    I guess I would have to ask the question on this
                              Page 107

EXHIBIT ___C___ PAGE ___27___