1 | GIBSON, MCCLURE, WALLACE & DANIELS, L.L.P.
WADE L. MCCLURE (SBN: 13428700)
2 | 8080 N. Central Expressway, Suite 1300, LB50
Dallas, Texas 75206-1838
3 | Telephone: (214) 891-8040
Facsimile:  (214) 891-8010
4 | wmcclure@gmwd.com
Attorneys for John Deckard and Peter Frankl

5

6

7

8 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

9

10

11 | PETER FRANKL AND
JOHN DECKARD,

Case No. 3:07(-MC-80195(MHP)

12 |          Plaintiffs,

(PENDING IN THE U.S. DISTRICT
COURT FOR THE NORTHERN
13 | DISTRICT OF TEXAS 3:05-CV-1757B)
(*PRO HAC VICE*)

14 | v.

15 | NETOPIA, INC. AND ALAN LEFKOF,

OPPOSITION TO NETOPIA'S MOTION
TO QUASH OR MODIFY SUBPOENA
16 |          Defendants.

DUCES TECUM AND NOTICE OF
PRIOR BRIEFING AND PRELIMINARY
17 | ORDER ON SIMILAR ISSUE BY
MAGISTRATE PATRICIA TRUMBULL

18

19 | Assigned to Magistrate Judge Edward Chen
Date:   October 3, 2007
20 | Time:  1:00 p.m.

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2  I.    Notice of Similar Proceedings and of Privilege Log from Morrison & Foerster . . . . . . . . . 1

3  II.   State of Relevant Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4  III.  Netopia's Privileges Concerning the Morrison & Foerster Investigation Are Waived . . . . 3

5         A.    Netopia Has Placed the Investigation in Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6         B.    Netopia Shared the Investigation with the Government
               in an Effort to Avoid Charges  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

8         C.    Mr. Martin's Texas Declaration Also Establishes That He Shared
               Investigation Details with Netopia's Independent Auditors, KPMG . . . . . . . . . . . 8

9         D.    The Disclosure of Privileged Communications in the Underlying
               Case and to the SEC Waives the Privilege for Entire Subject Matter,
10             The Entire Investigations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11        E.    Plaintiffs Have a Compelling Need for the Information  . . . . . . . . . . . . . . . . . . . 10

12 IV.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

4
*Apex Mun. Fund v. N-Group Sec.*,
    841 F.Supp. 1423 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5
*Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*,
    210 F.R.D. 506 (S.D.N.Y.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6

7
*Bird v. Penn Central Co.*,
    61 F.R.D. 43 (E.D.Pa.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

8
*Bowne of New York City v. AmBase Corp.*,
    150 F.R.D. 465 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

9

10
*Conkling v. Turner*,
    883 F.2d 431 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11
*Diversified Indus, Inc. v. Meredith*,
    572 F.2d 596 (8th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12

13
*Electro Scientific Indus. v. Gen. Scanning, Inc.*,
    175 F.R.D. 539 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14
*FDIC v. Wise*,
    139 F.R.D. 168 (D.Colo.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15

16
*Genentech, Inc. v. United States Int'l Trade Commission*,
    122 F.3d 1409 (Fed.Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17
*Hearn v. Rhay*,
    68 F.R.D. 574 (E.D.Wash.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

18

19
*Holmgren v. State Farm Mut. Auto. Ins. Co.*,
    976 F.2d 573 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20
*In re Columbia/HCA Healthcare Corp. Billing Prac. Litig.*,
    293 F.3d 289 (6th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

21

22
*In re Martin Marietta Corp.*,
    856 F.2d 619 (4th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

23
*In re Syncor ERISA Litig.*,
    229 F.R.D. 636 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

24

25
*In re World of Wonder Sec. Litig.*,
    147 F.R.D. 208 (N.D. Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26
*Kintera, Inc. v. Convio, Inc.*,
    219 F.R.D. 503 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27

28

*Kirkland v. Morton Salt Co.*,
     46 F.R.D. 28 (N.D.Ga.1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Medinol, Ltd. v. Boston Scientific Corp.*,
     214 F.R.D. 113 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mitzner v. Sobol*,
     136 F.R.D. 359 (S.D.N.Y.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nguyen v. Excel Corp.*,
     197 F.3d 200 (5th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Permian Corp. v. United States*,
     665 F.2d 1214 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*SEC v. Brady,*
     238 F.R.D. 429 (N.D. Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 7, 9, 10

*Shapiro v. Allstate Insur. Co.*,
     44 F.R.D. 429 (E.D.Pa.1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Amlani*,
     169 F.3d 1189 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Arthur Young & Co.*,
     465 U.S. 805 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Bilzerian*,
     926 F.2d 1285 (2d Cir.1991), cert. denied, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991)
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. El Paso Co.*,
     682 F.2d 530, 539 (5th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. M.I.T.*,
     129 F.3d 681 (1st Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Reyes*,
     239 F.R.D. 591 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

*Westinghouse Elec. Corp. v. Republic of the Philippines*,
     951 F.2d 1414 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8,


**STATUTES**
Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002 ("Sarbanes-Oxley"), 18.
     U.S.C.A. § 1514A (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


**SECONDARY SOURCES**
"Developments in the Law – Privileged Communications,"
     98 Harv. L.Rev. 1629, 1637 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iii

1   GIBSON, MCCLURE, WALLACE & DANIELS, L.L.P.
    WADE L. MCCLURE (SBN: 13428700)
2   8080 N. Central Expressway, Suite 1300, LB50
    Dallas, Texas 75206-1838
3   Telephone: (214) 891-8040
    Facsimile:  (214) 891-8010
4   wmcclure@gmwd.com
    Attorneys for John Deckard and Peter Frankl
5

6

7

8                          UNITED STATES DISTRICT COURT
                         NORTHERN DISTRICT OF CALIFORNIA
9

10

11  PETER FRANKL AND                     Case No. 3:078-MC-80195(MHP)
    JOHN DECKARD,

12            Plaintiffs,                (PENDING IN THE U.S. DISTRICT
                                         COURT FOR THE NORTHERN
13                                       DISTRICT OF TEXAS 3:05-CV-1757B)
                                         (*PRO HAC VICE*)
14  v.

15  NETOPIA, INC. AND ALAN LEFKOF,       OPPOSITION TO NETOPIA'S MOTION
                                         TO QUASH OR MODIFY SUBPOENA
16            Defendants.                DUCES TECUM AND NOTICE OF
                                         PRIOR BRIEFING AND PRELIMINARY
17                                       ORDER ON SIMILAR ISSUE BY
                                         MAGISTRATE PATRICIA TRUMBULL
18
                                         Assigned to Magistrate Judge Edward Chen
19                                       Date:   October 3, 2007
                                         Time:   1:00 p.m.
20

21

22

23

24

25

26

27

28

1  **TO: THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2          Plaintiffs file this Response to Netopia's Motion to Quash the Subpoena Duces Tecum served

3  on Morrison & Foerster, LLP (hereinafter "MoFo") and notice of similar discovery motions

4  involving the same MoFo investigative materials before another  magistrate in this Division.

5          **I.  Notice of Similar Proceedings and of Privilege Log from Morrison & Foerster**

6          The very issues that are the subject of this motion have been briefed and argued to Magistrate

7  Sanderson in the Northern District of Texas in the underlying proceeding.  Plaintiffs' Motion to

8  Compel, Netopia's Response and Plaintiffs' Reply in Support of the Motion can be found on PACER

9  at 3:05-CV-1757 document numbers 67, 80 and 84.  Magistrate Sanderson heard arguments on this

10  matter on September 11, 2007,  and has taken the matter under advisement while he reviews the

11  documents submitted to him for *in camera* inspection.

12          In addition, class representatives of *In Re Netopia Inc. Securities Litigation,* Case No. C 04-

13  3364-RMW presented a motion to compel the production the MoFo investigation materials from

14  Netopia in 2006.  Netopia made the same objections that it is making here – that the material was

15  protected from discovery by the attorney-client and the "work product" privileges. The primary issue

16  for the Class Action Court was whether the disclosure of a substantial portion of the investigation

17  materials to the SEC waived the privileges.  The Motion to Compel, Response and Reply can be

18  found on PACER at Cause No.: 5:04-CV-03364, document numbers 146, 155, 159.

19          Magistrate Trumbull of the San Jose Division of this District Court  heard arguments on these

20  issues on November 28, 2006 and issued a preliminary order on the Motion on December 4, 2006.

21  *See* Exhibit A to the Declaration of Wade L. McClure.

22          Magistrate Trumbull did not conclude the hearing or rule on the Motion because the class

23  action counsel announced that a settlement had been reached with Netopia on December 8, 2006

24  (Document 167 which is attached to the Declaration of Wade L. McClure as Exhibit B).  Plaintiffs

25  have no objection should this Court wish to reassign this matter to Magistrate Trumbull because of

26  her prior involvement and analysis of the issue.  Defendants' counsel advises, however, that Netopia

27  would oppose this.

28          Lastly, Plaintiffs advise the court that they received a privilege log from Morrison & Foerster

1  which is marked as confidential.  In an abundance of caution, Plaintiffs intend to submit the log

2  under seal for *in camera* review.

3  ## II.  Statement of Relevant Facts

4  This underlying case is a wrongful termination,  defamation and conspiracy case in which

5  the Plaintiffs allege that they were terminated in violation of the whistleblower protection of

6  Sarbanes-Oxley[1] because they provided testimony and documentation that incriminated upper

7  management in the plot to improperly recognize revenue on two software sales to a reseller of

8  software named Interface Computers Corporation (hereinafter "ICC").  The two transactions at issue

9  were (1) a sale made on May 23,  2002 for 1.5 million dollars for resale to Chicago public schools

10  (hereinafter the "Chicago Transaction"); and (2) a September 30, 2003 sale to for $750,000 for resale

11  to the Philadelphia schools (hereinafter "Philly Transaction").  The Plaintiffs in the underlying case

12  were the salesmen that made the sales to ICC.  Plaintiffs' First Amended Complaint is attached as

13  Exhibit E to the Declaration of Wade L. McClure.

14  Purportedly because of ICC's disclosure of information to Netopia's In-house Counsel during

15  collection communications, Netopia retained MoFo to conduct an internal investigation of the ICC

16  transactions and other things.  Plaintiffs participated in this investigation and provided information

17  which they contend incriminated the In House Counsel (Kadish) and the CEO of the Netopia

18  (Lefkof).  Plaintiffs assert that their participation in the investigation was a protected activity under

19  Sarbanes-Oxley because the investigation was initiated to assist in Netopia's defense of an

20  investigation about to be commenced by the SEC against it for violations of the securities laws.  The

21  SEC investigation of Netopia started in the fall of 2004.

22  On September 20, 2004 (days after their participation in the internal investigation) Netopia

23  terminated the Plaintiffs.  Plaintiffs filed their administrative claim with OSHA to perfect their

24  Sarbanes-Oxley claims on December 17, 2004.  On December 1, 2004, Netopia's CEO held a

25  meeting with the worldwide sales department of Netopia.  At that meeting Mr. Lefkof went to great

26

27  [1]*See* Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002; Pub. L.

28  No. 107-204; 18. U.S.C.A. § 1514A (2002) [hereinafter Sarbanes-Oxley].

**Opposition to Netopia's Motion to Quash or Modify Subpoena**
**Duces Tecum and Notice of Prior Briefing - Page 2**                    **Case No. 3:078-MC-80195(MHP)**

1   lengths to explain that Plaintiffs were fired for wrongdoing and failing to disclose information to the

2   Netopia accounting department. *See* The Declaration of John Cannon attached as Exhibit F to the

3   Declaration of Wade L. McClure.

4   **III.  Netopia's Privileges Concerning the Morrison & Foerester Investigation are WAIVED**

5          Netopia's Motion to Quash fails to mention three important facts about the Morrison &

6   Foerster investigation.  First, Netopia has relied on communications from Morrison & Foerster to

7   explain its terminaiton of the Plaintiffs in the underlying case and to support at least two of its

8   affirmative defenses.  Second, Netopia disclosed a substantial portion of the investigation to the SEC

9   prior to the underlying case.  Lastly, at least eight representatives of Netopia, including its In-House

10  Counsel David Kadish, were deposed by the SEC.[2]  In the Netopia Class Action (Cause No. 5:04-cv-

11  03364) mentioned above.  Netopia attempted to argue a letter agreement between Netopia and the

12  SEC preserved its privileges.  However, Netopia's attempt to selectively limit its waiver must fail.

13  Neither the Fifth Circuit (where the Plaintiff's case is pending) nor the Ninth Circuit recognize the

14  doctrine of "selective waiver" applied by the Eighth Circuit.[3]  In fact, recent cases from both Texas

15  and California have specifically declined to adopt the selective waiver analysis.  *See SEC v. Brady,*

16  *238*, F.R.D. 429, 440-441 (N.D. Tex. 2006); *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal.

17  2006) (rejecting selective waiver "[i]n accord with every appellate court that has considered the issue

18  in the last twenty-five years"); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 647-48 (C.D. Cal. 2005).

19

20  _____

21          [2]In response to Plaintiffs' subpoena, Plaintiffs' counsel for the Netopia Class (*In Re*

22  *Netopia, Inc. Securities Litigation*) produced several of these SEC depositions but none of the

23  exhibits to the SEC depositions, to Plaintiffs' knowledge. The depositions themselves, however,

24  make it clear that documents were produced to the SEC and the letter agreement between Craig

25  Martin of MoFo and the SEC confirms this. *See* Exhibit A to the Declarations of Craig Martin

26  attached as Exhibit J to The Declaration of Wade L. McClure.

27

28          [3]*Diversified Indus, Inc. v. Meredith*, 572 F.2d 596 (8th Cir.1978).

**Opposition to Netopia's Motion to Quash or Modify Subpoena**
**Duces Tecum and Notice of Prior Briefing - Page 3**          **Case No. 3:078-MC-80195(MHP)**

1     **A.**      <u>**Netopia Has Placed the Investigation in Issue.**</u>

2        As Netopia conceded in the underlying case, federal law applies to the privilege issues in this

3 case. Federal courts have long recognized the implicit waiver of the attorney-client privilege when

4 privileged information is "at issue" in the case. This concept was first articulated in *Hearn v. Rhay*,

5 68 F.R.D. 574, 581 (E.D.Wash.1975) and has been applied by both the Ninth Circuit and the Fifth

6 Circuit where the underlying case is pending. *See United States v. Amlani*, 169 F.3d 1189, 1195 (9th

7 Cir. 1999); *See also Apex Mun. Fund v. N-Group Sec.*, 841 F.Supp. 1423, 1431 (S.D. Tex. 1993);

8 *Conkling v. Turner*, 883 F.2d 431 (5th Cir. 1989). An implied waiver of the attorney-client privilege

9 occurs when: (1) assertion of the privilege was a result of some affirmative act; (2) through this

10 affirmative act, the asserting party put the protected information at issue by making it relevant to the

11 case; and (3) application of the privilege would have denied the opposing party access to information

12 vital to his defense. *Hearn* at 581.

13        *Hearn* is significant not just for its annunciation of a test for the waiver of the attorney-client

14 privilege, but for its application to a defendant. In *Hearn*, an incarcerated inmate sued personnel

15 within the Washington State prison system for civil rights violations. The defendants claimed the

16 affirmative defense that they acted in good faith. As a result, the plaintiff sought to compel

17 deposition testimony regarding the advice from counsel (the Washington State attorney general's

18 office) to the defendants on the legality of certain aspects of the plaintiff's confinement. *See Hearn*

19 at 577. The defendants asserted attorney-client privilege; the plaintiff claimed that their assertion

20 of the affirmative defense of good faith waived that privilege. The *Hearn* court also noted that the

21 policy of the attorney-client privilege is to protect confidential attorney-client relationships only to

22 the extent that the relationship would suffer from disclosure is greater than the benefit to be gained

23 thereby. *Id.* at 582 (citations omitted). However, it also highlighted that the communications at

24 issue in the case (that bore directly on the defendants' affirmative defense) "in the controversy itself,

25 and to deny access to them would preclude the court from a fair and just determination of the issues.

26 *Id.* The *Hearn* court applied the above-articulated test and determined that the defendants had, in

27 fact, waived the attorney-client privilege. First, they invoked the privilege in furtherance of an

28 affirmative defense they asserted for their own benefit. Second, through this affirmative act they

1   placed the protected information at issue, as the legal advice they receive was germane to their

2   qualified immunity defense.  Third, a result of asserting the privilege was to deprive the plaintiff of

3   information necessary to "defend" against the defendants' affirmative defense.  *Hearn* at 581.

4          At issue waiver has also been found to apply where the privilege holder makes assertions,

5   the truth of which can only be assessed by examination of privileged communications.  *United States*

6   *v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991), cert. denied, 502 U.S. 813, 112 S.Ct. 63, 116

7   L.Ed.2d 39 (1991).  See 98 Harv. L.Rev. 1629, 1637 (1985) ("It has become a well accepted

8   component of waiver doctrine that a party waives his privilege if he affirmatively pleads a claim or

9   defense that places at issue the subject matter of privileged material over which he has control.").

10          As noted in *SEC v. Brady*, the *Hearn* rationale for excepting communications from the

11  attorney-client privilege has also been applied to work product.  *Brady*, 238 F.R.D. at 444, *Bank*

12  *Brussels Lambert v. Credit Lyonnais (Suisse), S.A.*, 210 F.R.D. 506, 509-11 (S.D.N.Y.2002); *Mitzner*

13  *v. Sobol*, 136 F.R.D. 359, 362 (S.D.N.Y.1991); *See also Holmgren v. State Farm Mut. Auto. Ins. Co.*,

14  976 F.2d 573, 577 (9th Cir.1992) ("We agree with the several courts and commentators that have

15  concluded that opinion work product may be discovered and admitted when mental impressions are

16  at issue in a case and the need for the material is compelling."); *FDIC v. Wise*, 139 F.R.D. 168, 172

17  n. 4 (D.Colo.1991).

18          Netopia has clearly put MoFo's investigation at issue in the underlying case.  Netopia's

19  response to OSHA at Page 5, Section C, states:

20      Attorneys from the San Francisco office of the Morrison & Foerster law firm,
        representing the Audit Committee, went to Netopia's Dallas office to interview
21      Complainants.  During the course of interviews with these lawyers, Complainants
        produced some of the incriminating documents, including a copy of the October 7,
22      2003 side agreement from ICC, and began to reveal the true nature of the
        transactions.  **The lawyers reported their findings to the Audit Committee; the**
23      **Audit Committee, in turn, met with Netopia's board of directors and described**
        **the results of its investigation.  Based on this report, the board of directors voted**
24      **to terminate Messrs. Frankl and Deckard, for the following misconduct**.
        (emphasis added)
25

26  See Exhibit I attached to Declarations of Wade L. McClure.  Netopia's pleadings and motions in the

    underlying case continue to place the investigation at issue.  Netopia's first affirmative defense relies
27

28  on the findings of OSHA which were obviously based on Netopia's assertions to OSHA set forth

**Opposition to Netopia's Motion to Quash or Modify Subpoena**
**Duces Tecum and Notice of Prior Briefing - Page 5**                    **Case No. 3:078-MC-80195(MHP)**

1    above. Netopia's twentieth affirmative defense puts the truth, justification and privilege at issue as

2    to Plaintiffs' defamation claims. *See* Defendant Netopia, Inc.'s Answer to Plaintiffs' First Amended

3    Complaint attached as Exhibit G to the Declaration of Wade L. McClure. Defendant Lefkof also

4    filed a motion to dismiss which was based in part on the findings of OSHA. *See* Defendants' Motion

5    to Dismiss attached as Exhibit H to the Declarations of Wade L. McClure. The Declaration of

6    Howard Slayen was also filed in support of the Motion to Dismiss.[4] Paragraph 6 of the Slayen

7    Declaration states:

8    The Audit Committee Investigation began in or around July 2004 after Netopia
     learned it had received improper documentation concerning a software sales
9    transaction. As part of the Audit Committee Investigation, the Morrison & Foerster
     lawyers went to Netopia's Texas office to interview certain employees, including
10   Plaintiffs. **After the interviews were completed, the Morrison & Foerster
     lawyers reported their findings to the Audit Committee, including myself.**
11   **Among other things, these lawyers informed the Audit Committee that, during
     their interviews, Plaintiffs had provided facts and documents showing they had
12   engaged in intentional wrongdoing in connection with certain software
     transactions they had negotiated, including altering documents and concealing
13   material information from Netopia's accounting department**. (emphasis added)

14   The partial disclosure of this communication and Netopia's reliance on the communication

15   waives their privileges. Plaintiffs' are entitled to discover what other items were reported by MoFo.

16   **B.    Netopia Shared the Investigation with the Government in an Effort to Avoid Charges.**

17   Apparently Mr. Craig Martin of Morrison & Foerster signed two Declarations for Netopia

18   in connection with this issue. The Texas Declaration of Mr. Martin filed in the underlying case is

19   attached as Exhibit C to the Declaration of Wade McClure. This Declaration includes the following

20   paragraphs which are noticeably absent from Mr. Martin's Declaration filed in this Miscellaneous

21   proceeding:

22   6. I have reviewed document Nos. 34, 35, 36, 37, 38, and 39 on Netopia's Privilege
     Log in the above-captioned case. Document Nos. 34, 35, 36, and 37 are documents
23   created by Morrison & Foerster in connection with the Audit Committee
     investigation. Morrison & Foerster periodically provided KPMG with updates
24   concerning the status of the investigation. Document Nos. 38 and 39 were documents
     selected by Morrison & Foerster to send to counsel for KPMG, Netopia's then outside
25   auditors.

26

27   [4]The Declaration of Mr. Slayen is attached as Exhibit D to the Declarations of Wade L.

28   McClure.

**Opposition to Netopia's Motion to Quash or Modify Subpoena**
**Duces Tecum and Notice of Prior Briefing - Page 6**                 **Case No. 3:078-MC-80195(MHP)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

     7.  Attached hereto as Exhibit A is true and correct copy of a letter agreement dated October 25, 2004 between Netopia and the Securities and Exchange Commission.

The letter agreement is also absent from Mr. Martin's declaration in this Miscellaneous Proceeding.  Mr. Martin's missing testimony establishes that, on behalf of Netopia, MoFo agreed to provide the SEC with copies of "certain materials" concerning the treatment of the two transactions with ICC.  Thereafter, Netopia produced nine of its representatives (including its In-House Counsel) for depositions by the SEC.  It is Plaintiffs' position that this disclosure to its adversaries (the SEC) resulted in a subject matter waiver of Netopia's privilege claims concerning the ICC transactions.

Netopia's attempt to selectively preserve its privilege concerning the material  disclosed to the SEC must fail.[5]  By disclosing purportedly confidential communications to one adversary (like the SEC), Defendants waived the attorney-client privilege and "work product" immunity as to all adversaries (including Plaintiffs).  *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) (rejecting selective waiver "[i]n accord with every appellate court that has considered the issue in the last twenty-five years"); *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 647-48 (C.D. Cal. 2005) (listing -- arguably in dicta -- three reasons for categorically denying selective privilege).  *See also SEC v. Brady*, 238 F.R.D. at 440, which expressly rejected the selective waiver argument.

In fact, the appellate courts that have ruled on the issue have *rejected* "selective waivers" in general and *Diversified* in particular.  *In re Columbia/HCA Healthcare Corp. Billing Prac. Litig.*, 293 F.3d 289, 302-04 (6th Cir.2002); *U.S. v. M.I.T.*, 129 F.3d 681, 686 (1st Cir.1997); *Genentech, Inc. v. United States Int'l Trade Commission*, 122 F.3d 1409, 1417 (Fed.Cir. 1997); *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1429 (3rd Cir. 1991); *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir.1998); *Permian Corp. v. United States*, 665 F.2d 1214, 1220 (D.C. Cir. 1981).  These courts rejected the "selective waiver" concept for the simple reason

---

[5] The letter agreement includes the SEC's agreement that Netopia's production of information to the SEC would not waive its privileges as to anyone else.  *See* Exhibit A to the Texas Declaration of Craig Martin, attached as Exhibit J to the Declaration of Wade McClure.

**Opposition to Netopia's Motion to Quash or Modify Subpoena**
**Duces Tecum and Notice of Prior Briefing - Page 7**       **Case No. 3:078-MC-80195(MHP)**

1    that it is contrary to the fundamental purpose of the attorney-client privilege and "work product"

2    doctrine. "[T]he uninhibited approach adopted out of wholecloth by the *Diversified* court has little,

3    if any, relation to fostering frank communication between a client and his or her attorney. . .  The

4    attorney-client privilege was never designed to protect conversation between a client and the

5    Government. *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 302.  Indeed, the United States

6    Congress in 1984 specifically *rejected* the SEC's request that it amend the Securities and Exchange

7    Act of 1934 to establish a selective waiver rule regarding documents disclosed to the agency.

8    *Westinghouse*, 951 F.2d at 1425.  Courts have rejected similar attempts by defendants to somehow

9    preserve the attorney-client privilege and "work product" doctrine by entering into purported

10   confidentiality agreements with the SEC.  "[A]ny form of selective waiver, even that which stems

11   from a confidentiality agreement [with the SEC], transforms the attorney-client privilege into merely

12   another brush in an attorney's palette, utilized and manipulated to gain tactical or strategic

13   advantage."  *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 302-03 (company waived

14   attorney-client privilege through disclosures to SEC notwithstanding existence of confidentiality

15   agreement).  "[E]ven if the disclosing party requires, as a condition of disclosure, that the recipient

16   maintain the materials in confidence, this agreement does not prevent the disclosure from

17   constituting a waiver of the privilege; it merely obligates the recipient to comply with the terms of

18   any confidentiality agreement."  *Bowne of New York City v. AmBase Corp.*, 150 F.R.D. 465, 480

19   (S.D.N.Y. 1993); *Westinghouse*, 951 F.2d at 1430 (production to the SEC waives the attorney-client

20   privilege and "work product" doctrine as to all disclosed matters even if made pursuant to a

21   purported confidentiality agreement); *In re World of Wonder Sec. Litig.*, 147 F.R.D. 208, 211-13

22   (N.D. Cal. 1992) ("work product doctrine was waived as to all other adversaries, even when the first

23   adversary [the SEC] agreed not to disclose the protected documents").  Thus, all documents

24   concerning Netopia's internal investigation performed by MoFo must be produced.

25   **C.    Mr. Martin's Texas Declaration Also Establishes That He Shared Investigation Details**

26   **with Netopia's Independent Auditors, KPMG.**

27   The missing paragraphs from Mr. Martin's California Declaration reveals that certain

28   documents were also disclosed to Netopia's independent outside auditors, KPMG.  Even disclosure

1    of privileged information directly to a client's independent auditor, accountant, or tax analyst

2    destroys confidentiality. *See Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113 (S.D.N.Y.

3    2002) (holding that a corporation's disclosure of the special litigation committee's minutes to an

4    outside auditor constituted waiver).  In *Medinol*, the court observed that "[t]he auditor's review

5    supports the auditor's independent opinion about the fairness of the company's financial reports, not

6    the audited company's litigation interests.  Thus, the auditor's interests are not necessarily aligned

7    with the interests of the company and, as has become crystal clear in the face of the many accounting

8    scandals that have arisen as of late, in order for auditors to properly do their job, they must not share

9    common interests with the company they audit." *Medinol*, 214 F.R.D. at 116 (2002).  Quoting the

10    Supreme Court, the *Medinol* court stated, "By certifying the public reports that collectively depict

11    a corporation's financial status, the independent auditor assumes a public responsibility transcending

12    any employment relationship with the client. . . . This 'public watchdog' function demands that the

13    accountant maintain total independence from the client at all times and requires complete fidelity

14    to the public trust." *Medinol*, 214 F.R.D. at 116 (2002) (quoting *United States v. Arthur Young &*

15    *Co.*, 465 U.S. 805, 817- 18 (1984)).  *See also U.S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir.1982);

16    *SEC v. Brady*, 238 F.R.D. at 439.

17        The facts of this case clearly shows conflict existed between KPMG and Netopia which

18    eventually led to KPMG's resignation.[6]

19    **D.    The Disclosure of Privileged Communications in the Underlying Case and to the SEC**

20        **Waives the Privilege  for Entire Subject Matter, the Entire Investigations.**

21        The disclosure of any significant portion of a confidential communication waives the

22    privilege as to the whole. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 511 (9th Cir. 2003)

23    (citing *Electro Scientific Indus. v. Gen. Scanning, Inc.*, 175 F.R.D. 539 (N.D. Cal. 1997)); *Nguyen*

24    *v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir.1999).  Moreover, waiver of an attorney-client

25    communication waives the privilege as to all other communications relating to the same subject

26

27        [6]Netopia's 8-K for September 10, 2004 is attached as Exhibit L to the Declaration of Wade

28    L. McClure.  *See* Section 4.01.

**Opposition to Netopia's Motion to Quash or Modify Subpoena**
**Duces Tecum and Notice of Prior Briefing - Page 9**                    **Case No. 3:078-MC-80195(MHP)**

1    matter.  *See also SEC v. Brady*, 238 F.R.D. at 441.   Thus all communications and opinions

2    communication by MoFo to Netopia are discoverable.

3    **E.    Plaintiffs Have a Compelling Need for the Information.**

4            To the extent the court determines that same portion of the work product privilege has not

5    been waived, which Plaintiffs strongly contest, Plaintiffs would show that courts have readily

6    ordered production of work product when the party seeking discovery can show that it has substantial

7    need of the materials in the preparation of its case and that it is unable, without undue hardship, to

8    obtain the substantial equivalent of the materials by other means.  Even opinion work product

9    becomes subject to disclosure when mental impressions are at issue in a case and the need for the

10   material is compelling.  *Id.*

11           In *Bird v. Penn Central Co.*, 61 F.R.D. 43 (E.D.Pa.1973), the plaintiff insurers sued to

12   rescind two insurance policies because of alleged misrepresentations by the defendants.   The

13   defendants claimed the defense of laches, to which the plaintiff responded with a claim of "advice

14   of counsel."  The court held that because the nature of the plaintiff's "defense" concerned knowledge,

15   legal theories and conclusions of plaintiffs' attorneys charged with claim investigation, such advice

16   of counsel was discoverable.  *Id.* at 47.   In arriving at its conclusion, the *Bird* court observed the

17   following, which also rings true in the present case: "Since in this case counsel served as

18   investigators and advisors on the merits of the potential and actual claims asserted by defendants

19   under the policy, and therefore alone could ascertain the justification for a recision action, discovery

20   of the relevant documents in their possession is essential to defendants' case."  *Id.* at 46-47.

21   Similarly, MoFo served as investigators and advisors to Netopia/Netopia Audit Committee and

22   provided the basis for Netopia's decision to terminate Plaintiffs (according to Netopia's OSHA

23   response).

24           Other courts have also demonstrated the discoverability of attorney work product.  *Kirkland*

25   *v. Morton Salt Co.*, 46 F.R.D. 28 (N.D.Ga.1968) was a malicious prosecution action that required

26   a showing that the defendant prepared and carried out a suit and garnishment proceeding after

27   payment of an obligation had been made.  The court noted that work product "immunity retreats as

28   necessity and good cause is shown for its production in a balance of competing interests." *Id.* at 29.

1   The plaintiff was entitled to discovery regarding activities of the defendant's attorneys because they

2   formed the basis of the defendant's knowledge, a key element of the plaintiff's cause of action. *Id.*

3   at 30. *See also Shapiro v. Allstate Insur. Co.*, 44 F.R.D. 429 (E.D.Pa.1968) (in insured's suit for bad

4   faith handling of claim, recommendation of counsel ordered produced to show whether defendant

5   relied on a totally groundless evaluation of the claim).

6           Netopia has pointed to the investigation and reporting of its counsel as a justification for

7   terminating Plaintiffs and for publicly defaming the Plaintiffs.  The only way Plaintiffs can

8   investigate this alleged basis is though discovery of MoFo's materials and communications, even if

9   it contains core work product.  The compelling need is clear on its face.  The obvious undue (and

10  perhaps insurmountable) burden Plaintiffs will face if their discovery requests are denied is that they

11  will be unable to defend against Netopia's claimed basis for its employment decision.

12          The communications, information, opinions, and recommendations of MoFo cannot be

13  obtained by any other source and could be outcome determinative to this action.  For example, if

14  MoFo recommended that others should have been terminated besides Plaintiffs, this would in effect

15  prove that Lefkof and Netopia defamed Plaintiffs by publicly placing all the blame on Plaintiffs

16  instead of the others.  Moreover, unspecified documents from the investigation would help shed light

17  on whether the Plaintiffs were participating in a "protected activity" under Sarbanes Oxley when

18  it they agreed to be interviewed by MoFo and provided incriminating information on certain of

19  Netopia's Section 15 officers.

20                                      **IV.  Conclusion**

21          Plaintiffs maintain that Netopia has waived the attorney-client and work product privileges

22  because Netopia has put the investigation of MoFo at issue disclosing portions of MoFo's

23  communications in the underlying case.  Plaintiffs also contend that Netopia's disclosures to the SEC

24  of documents from MoFo and deposition testimony, also waived its privileges.  Accordingly,

25  Plaintiffs request that Netopia's Motion to Quash be denied in all respects.

26

27

28

1    Dated: September 12, 2007                    GIBSON, MCCLURE, WALLACE & DANIELS, LLP

2                                                          s/ Wade L. McClure
                                                   By:    _____
3                                                         Wade L. McClure
                                                          8080 N. Central Expressway
4                                                         Suite 1300, LB50
                                                          Dallas, Texas 75206-1838
5                                                         Telephone: (214) 891-8040
                                                          Facsimile:  (214) 891-8010
6                                                         wmcclure@gmwd.com

7                                                         Attorneys for John Deckard and Peter Frankl

8
                              **CERTIFICATE OF SERVICE**
9
            The undersigned attorney certifies that on September 12, 2007, a true and correct copy of this
10
     instrument was filed electronically, notice of the filing was served on counsel for the Defendants by
11
     operation of the Court's electronic filing system, and the parties may access this filing by and through
12
     the Court's electronic filing system.
13
                                                          s/ Wade L. McClure
14                                                        _____
                                                          Wade L. McClure
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Opposition to Netopia's Motion to Quash or Modify Subpoena**
**Duces Tecum and Notice of Prior Briefing - Page 12**              **Case No. 3:078-MC-80195(MHP)**

1  **DECLARATION OF WADE L. MCCLURE**

2  I, Wade L. McClure, hereby declare as follows:

3  1.      I am an attorney at law admitted *pro hac vice* to practice in the Northern District of

4  California and a partner in the law firm of Gibson, McClure, Wallace & Daniels, LLP, attorneys for

5  Plaintiffs Peter Frankl and John Deckard.  I have personal knowledge of the facts stated herein, and

6  if called and sworn as a witness, I would and could testify competently under oath thereto.  I submit

7  this declaration in support of the Opposition to Netopia's Motion to Quash or Modify Subpoena

8  Duces Tecum.

9  2.      Attached hereto as **Exhibit A** is a true and correct copy of the Order Requiring

10  Further Briefing on Plaintiffs' Motion to Compel Production of Documents, issued in *In Re Netopia,*

11  *Inc. Securities Litigation*, Case No. C 04-3364-RMW.

12  3.      Attached hereto as **Exhibit B** is a true and correct copy of the Order Denying Without

13  Prejudice Plaintiffs' Motion to Compel Production of Documents, issued in *In Re Netopia, Inc.*

14  *Securities Litigation*, Case No. C 04-3364-RMW.

15  4.      Attached hereto as **Exhibit C** is a true and correct copy of the Texas Declaration of

16  Craig Martin filed as Exhibit K in the Appendix in Support of Defendant Netopia, Inc.'s Response

17  to Plaintiffs' Motion to Compel and Supporting Brief in *Peter Frankl and John Deckard v. Netopia,*

18  *Inc., Alan Lefkof, et al*, 3:05-CV-1757-B.

19  5.      Attached hereto as **Exhibit D** is a true and correct copy of the Declaration of Mr.

20  Slayen, attached as Exhibit E in the Appendix in Support of Defendants to Dismiss Plaintiffs'

21  Claims for Lack of Personal Jurisdiction and Brief in Support in *Peter Frankl and John Deckard v.*

22  *Netopia, Inc., Alan Lefkof, et al*, 3:05-CV-1757-B.

23  6.      Attached hereto as **Exhibit E** is a true and correct copy of Peter Frankl's and John

24  Deckard's First Amended Complaint, filed in *Peter Frankl and John Deckard v. Netopia, Inc., Alan*

25  *Lefkof, et al*, 3:05-CV-1757-B.

26  7.      Attached hereto as **Exhibit F** is a true and correct copy of the Declaration of John

27  Cannon, filed in *Peter Frankl and John Deckard v. Netopia, Inc., Alan Lefkof, et al*, 3:05-CV-1757-

28  B.

8.      Attached hereto as **Exhibit G** is a true and correct copy of Defendant Netopia, Inc.'s Answer to Plaintiffs' First Amended Complaint, filed in *Peter Frankl and John Deckard v. Netopia, Inc., Alan Lefkof, et al*, 3:05-CV-1757-B.

9.      Attached hereto as **Exhibit H** is a true and correct copy of Motion of Defendants Alan Lefkof, David Kadish, William Baker, Robert Lee, Howard Slayen, Harold Wills, and Reese Jones to Dismiss Plaintiffs' Claims for Lack of Personal Jurisdiction and Brief in Support, filed in *Peter Frankl and John Deckard v. Netopia, Inc., Alan Lefkof, et al*, 3:05-CV-1757-B.

10.      Attached hereto as **Exhibit I** is a true and correct copy of the Netopia's response to OSHA dated January 21, 2005.

11.      Attached hereto as **Exhibit J** is a true and correct copy of Exhibit A to the Texas Declaration of Craig Martin - a letter agreement dated October 25, 2004 between Netopia and the Securities and Exchange Commission.

12.      Attached hereto as **Exhibit K** is a true and correct copy of the initial pages from the following depositions taken by the SEC of Netopia's employees and representatives: Alan Lefkof, Percy James Sanders, Erick Bell, Kathy Gearhart, Jonathan Guthart and Barbara Joy Medina Martinez. Netopia has also disclosed that its In-House Counsel, David Kadish, was deposed by the SEC. Netopia has refused to produce that deposition transcript, however, asserting is protected from discovery by the Attorney Client and Work Product privileges. This is one of the documents being reviewed by Judge Sanderson in the underlying proceeding.

13.      Attached hereto as **Exhibit L** is a true and correct copy of Netopia's 8-K dated September 10, 2004.

I declare under penalty of perjury under the laws of the United States of America that the foregoing declaration consisting of nine numbered paragraphs is true and correct, and is based upon personal knowledge.

Executed this 12th day of September, 2007, at Dallas, Texas.

s/ Wade L. McClure
_____
Wade L. McClure