1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| IN RE NETOPIA, INC. SECURITIES LITIGATION, | ) ) ) | Case No.: C 04-3364  RMW (PVT) And Related Cases |
| This document Relates to: | ) ) ) | **ORDER REQUIRING FURTHER BRIEFING ON PLAINTIFFS' MOTION TO COMPEL** |
| All Actions | ) ) | **PRODUCTION OF DOCUMENTS** |

On October 17, 2006  Plaintiffs filed a Motion to Compel Production of Documents responsive to their First, Second and Third Requests for Production of Documents (the "Document Requests").  Plaintiffs seek to compel production of documents withheld and redacted on the basis of attorney-client privilege and work product immunity, claiming that any privilege or immunity has either not been established or has been waived.  The Court held a hearing on November 28, 2006.   The parties raised complicated and unsettled issues of law in their briefs and at oral argument.  Accordingly,  IT IS HEREBY ORDERED that the parties shall submit further briefing addressing solely the following topics:

1.    Did the testimony of Netopia employees before the SEC waive the attorney-client privilege and/or work product immunity because there was no agreement in place covering the confidentiality of testimony?

2.    How do the purposes behind the attorney-client privilege and the work product

EXHIBIT
A

immunity support either a waiver or non-waiver from disclosure to the SEC?

3. Defendants shall explain why they have not asserted that most of the documents which they claim are protected by the work product immunity were created in anticipation of litigation. Defendants shall either withdraw the designation of documents as covered by the work product immunity or address why the documents are properly designated.

4. Plaintiffs shall distinguish this case from *In re Mckesson HBOC, Inc.* 2005 WL 934331 (March 31, 2005), giving particular attention to Judge Whyte's finding that the work product immunity was not waived by disclosure to the SEC.

5. Have Defendants attempted to use the findings of the internal investigation to gain a benefit in this litigation? Defendants shall explain which, if any, documents created by counsel for Netopia's audit committee were disclosed to the SEC.

6. Partial disclosure effects a waiver as to the subject matter disclosed. Defendants claim that any waiver should not involve communications with outside counsel. Why should a subject matter waiver be limited to conversations with a particular attorney?

7. Counsel for Defendants shall file a declaration under penalty of perjury stating whether they have access to the interview notes or other confidential documents from the internal investigation. Both sides shall briefly address whether such possession indicate a waiver of the attorney-client privilege and/or work product immunity?

8. What is the authority for withholding documents under European privacy regulations, especially documents in the custody of entities within the United States?

//

//

//

9.     Does being copied on correspondence rise to the level of reasonable cause to believe that an attorney is a participant in a crime or fraud such that the crime/fraud exception to the attorney-client privilege applies?

IT IS SO ORDERED.

Dated:   December 4, 2006

_Patricia V. Trumbull_

_____

PATRICIA V. TRUMBULL
United States Magistrate Judge

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8                          SAN JOSE DIVISION

9

| | | |
|---|---|---|
| IN RE NETOPIA, INC. SECURITIES LITIGATION, | ) ) ) | Case No.: C 04-3364  RMW (PVT) And Related Cases |
| This document Relates to: | ) ) | **ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| All Actions | ) ) ) | |

14         On October 17, 2006, Plaintiffs filed a Motion to Compel Production of Documents

15  responsive to their First, Second and Third Requests for Production of Documents (the

16  "Document Requests").  Plaintiffs seek to compel production of documents withheld and

17  redacted on the basis of attorney-client privilege and work product immunity, claiming that any

18  privilege or immunity has either not been established or has been waived.  The Court held a

19  hearing on November 28, 2006.  On December 4, 2006, the Court issued an Order requiring

20  further briefing on the Motion.  On December 8, 2006, Plaintiffs' counsel informed the Court of

21  a pending settlement agreement.  Plaintiffs sought to delay further briefing and resolution of the

22  motion pending approval of the settlement.  Accordingly, It Is Hereby Ordered that:

23         1.      The Motion to Compel is Denied Without Prejudice; and

24         2.      If Plaintiffs wish to renew the Motion to Compel, they shall address the

25                 issues in the Order Requiring Further Briefing and may seek to have the

26                 motion heard on shortened time.

27  Dated:   December 13, 2006                *Patricia V. Trumbull*

                                             PATRICIA V. TRUMBULL
28                                           United States Magistrate Judge

ORDER, *page 1*

EXHIBIT

**B**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

PETER FRANKL and       §
JOHN DECKARD,            §
                            §
      Plaintiffs,         §
                            §        Case No. 3:05-CV-1757-B
v.                            §        ECF
                            §
NETOPIA, INC., et al.,      §
                            §
      Defendants.      §

## DECLARATION OF CRAIG MARTIN

I, CRAIG MARTIN, declare as follows:

1.    I am over the age of twenty-one (21) years, have never been convicted of a felony, am competent to make this declaration, and have personal knowledge of the facts stated herein.

2.    I graduated from Stanford University Law School in 1993 and am duly licensed to practice law in the State of California. I am a partner in the securities litigation and white-collar defense practice group at the law firm of Morrison & Foerster LLP.

3.    On or around July 19, 2004, the Audit Committee of Netopia, Inc. retained Morrison & Foerster to provide legal guidance in the face of potential claims. Morrison & Foerster was engaged by the Audit Committee to assist and advise the Audit Committee in its investigation of, among other things, revenue recognized in connection with two computer software transactions with one of Netopia's customers, Interface Computer Company.

4.    Pursuant to this engagement, Morrison & Foerster, on behalf of the Audit Committee, collected and reviewed documents and conducted witness interviews from approximately July 2004 through September 2004. To assist in the investigation, Morrison & Foerster also engaged Walter Rush, a forensic accountant, to act as its accounting advisor. Morrison & Foerster lawyers exercised their judgment and analytical skills in selecting and distilling the large volume of information under review for purposes of providing legal advice to the Audit Committee.

5.    During the course of the investigation, Morrison & Foerster attorneys kept members of the Audit Committee apprised of the facts and documents collected, and shared with the Audit Committee Morrison & Foerster's analysis and legal advice. At the conclusion of the investigation, Morison & Foerster presented a summary of relevant facts and documents collected during the course of the Audit Committee's investigation, and provided the Audit Committee with further legal advice and analysis.

EXHIBIT

C



EXHIBIT

K

6. I have reviewed document Nos. 34, 35, 36, 37, 38, and 39 on Netopia's Privilege Log in the above-captioned case. Document Nos. 34, 35, 36, and 37 are documents created by Morrison & Foerster in connection with the Audit Committee investigation. Morrison & Foerster periodically provided KPMG with updates concerning the status of the investigation. Document Nos. 38 and 39 were documents selected by Morrison & Foerster to send to counsel for KPMG, Netopia's then outside auditors.

7. Attached hereto as Exhibit A is true and correct copy of a letter agreement dated October 25, 2004 between Netopia and the Securities and Exchange Commission.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the facts stated in this Declaration are based on my personal knowledge and are true and correct, and this Declaration was executed this _1st_ day of ~~July,~~ August 2007 in _San Francisco_, California.

_____
Craig Martin

#6118589

38

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER FRANKL and<br>JOHN DECKARD, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Case No. 3:05-CV-1757-B<br>ECF |
| NETOPIA, INC., et al., | §<br>§ | |
| Defendants. | §<br>§ | |

## DECLARATION OF HOWARD SLAYEN

I, HOWARD SLAYEN, declare as follows:

1. I am over the age of twenty-one (21) years, have never been convicted of a felony, am competent to make this declaration, and have personal knowledge of the facts stated herein.

2. I have been a member of the board of directors of Netopia, Inc. ("Netopia") and the board's audit committee (the "Audit Committee") since approximately April 2003. The only other members of the Audit Committee between July and September 2004 were Defendants Robert Lee and Harold Wills.

3. I am, and for the last twenty-four years have been, a resident of California. I live and work in Atherton, California. My current residence is 2 Altree Ct., Atherton, California 94027-2224.

4. Since moving to California in September 1982, I have not owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas. I have no personal contacts with Texas and have not conducted any personal business in Texas since September 1982. To the extent I have made occasional visits to Texas during this time, they were to conduct business for Coopers & Lybrand, now



1



14

PricewaterhouseCoopers, in my capacity as a partner in that firm. I have never been in Texas in connection with my service on the board of directors of Netopia.

5.     Plaintiffs Peter Frankl and John Deckard are former employees of Netopia. Both were terminated from Netopia in September 2004 following an investigation conducted by attorneys from the San Francisco office of the Morrison & Foerster law firm, acting as outside counsel for the Audit Committee (the "Audit Committee Investigation").

6.     The Audit Committee Investigation began in or around July 2004 after Netopia learned it had received improper documentation concerning a software sales transaction. As part of the Audit Committee Investigation, the Morrison & Foerster lawyers went to Netopia's Texas office to interview certain employees, including Plaintiffs. After the interviews were completed, the Morrison & Foerster lawyers reported their findings to the Audit Committee, including myself. Among other things, these lawyers informed the Audit Committee that, during their interviews, Plaintiffs had provided facts and documents showing they had engaged in intentional wrongdoing in connection with certain software transactions they had negotiated, including altering documents and concealing material information from Netopia's accounting department.

7.     On or around September 14, 2004, I participated telephonically in a meeting of Netopia's board of directors in Emeryville, California. During the meeting, the Audit Committee discussed the results of the Audit Committee Investigation, including outside counsels' interviews with Plaintiffs.

8.     Based on the information reported by outside counsel concerning Plaintiffs' misconduct, I and the other members of the Audit Committee recommended to the board during the meeting that Plaintiffs' employment be terminated. Following our report and recommendation, the board of directors, including myself, voted unanimously to terminate

Plaintiffs' employment.  The board then instructed the Company's President and Chief Executive

Officer, Alan Lefkof, to carry out the terminations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _____ day of December, 2006 in _____, California.


_____

Howard Slayen

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER FRANKL and | § | |
| JOHN DECKARD, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:05CV-1757B |
| | § | ECF |
| NETOPIA, INC., ALAN LEFKOF, | § | |
| DAVID KADISH, WILLIAM D. BAKER, | § | |
| ROBERT C. LEE, HOWARD T. SLAYEN, | § | |
| HAROLD WILLS, and REESE M. JONES | § | |
| | § | |
| Defendants. | § | |

---

## PLAINTIFFS PETER FRANKL'S AND JOHN DECKARD'S
## FIRST AMENDED COMPLAINT

---

Plaintiffs Peter Frankl and John Deckard complain of Netopia, Inc., and Alan Lefkof, David Kadish, William D. Baker, Robert C. Lee, Howard T. Slayen, Harold Wills, and Reese M. Jones, individually and in their respective capacities as officers and directors of Defendant Netopia, Inc. and file this suit to redress grievances for discriminatory and retaliatory termination under the whistleblower protection provisions of the Sarbanes-Oxley Act of 2002 (SOX), 18 U.S.C.A. § 1514A, defamation, breach of contract, and civil conspiracy, respectfully showing the Court as follows:

### I. PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Frankl is a citizen of the United States and a resident of Dallas County, Texas. Plaintiff Frankl was employed by Defendants Netopia, Inc. and/or its predecessor beginning in September 1996.  At the time of his termination, he was the Vice President of Worldwide Enterprise Sales & Marketing for Netopia, Inc.



EXHIBIT
E

2.    Plaintiff Deckard is a citizen of the United States and a resident of Dallas County, Texas. Plaintiff Deckard was employed by Netopia, Inc. beginning in December 1997. At the time of his termination he was Netopia, Inc.'s Manager of Software Sales, Western Region.

3.    Defendant Netopia, Inc. is a Delaware corporation with headquarters and principal place of business in Emeryville, California. Defendant Netopia, Inc. is authorized to, and does, conduct business in the State of Texas and may be served with process upon its Registered Agent, C.T. Corporation, 350 North St. Paul Street, Dallas, Texas 75201.

4.    Defendant Alan Lefkof is an individual residing in California and may be served with process at 131 Sugarloaf Drive, Tiburon, California 94920. At all times relevant to this cause of action, Defendant Lefkof was President and CEO of Defendant Netopia, Inc.

5.    Defendant David Kadish is an individual residing in California and may be served with process at 67 Clarendon Avenue, San Francisco, California 94114. At all times relevant to this cause of action, Defendant Kadish was Senior Vice President and Chief Legal Counsel for Defendant Netopia, Inc.

6.    Defendant William D. Baker is an individual residing in California and may be served with process at 39206 Guardino Drive, #201, Freemont, California 74538. At all times relevant to this cause of action, Defendant Baker was Chief Financial Officer for Defendant Netopia, Inc.

7.    Defendant Robert C. Lee is an individual residing in California and may be served with process at 17 Magee Court, Maraga, California 94556. At all times relevant to this cause of action, Defendant Lee was a member of Netopia, Inc.'s Audit Committee.

8.    Defendant Howard T. Slayen is an individual residing in California and may be served with process at 2 Altee Court, Atherton, California 94027. At all times relevant to this cause of action,

Defendant Slayen was a Netopia Director and Chairman of Netopia's Audit Committee.

9.      Defendant Harold Wills is an individual residing in California and may be served with process at Netopia, Inc., 6001 Shellmound Street, 4th Floor, Emeryville, California 94608.  At all times relevant to this cause of action, Defendant Wills was Chairman of Netopia, Inc.'s Board of Directors.

10.     Defendant Reese M. Jones is an individual residing in California and may be served with process at Netopia, Inc., 6001 Shellmound Street, 4th Floor, Emeryville, California 94608.  At all times relevant to this cause of action, Mr. Jones was the found and former Chairman of the Board of Netopia, Inc.

11.     Defendant Netopia, Inc. is a company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 781, or that is required to files reports under Section 15(d) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 780(d), defined in Section 806 of SOX, 18 U.S.C.A. § 1514A(a).  Defendant Netopia, Inc. conducts business within, and significantly affects and operates within, Dallas County, Texas.

12.     All individual Defendants named above in Paragraphs 4-10 above, were at all relevant times officers, directors, employees, and/or agents of Defendant Netopia, Inc.

13.     This Court has jurisdiction to hear the merits of Plaintiffs Frankl's and Deckard's claims under 28 U.S.C.A. §§ 1331 and 1343, as well as 18 U.S.C.A. § 1514A, the whistleblower protection provisions of SOX.

14.     Venue is proper in this District and Division pursuant to 28 U.S.C.A. § 1391(b).

## II. **FACTUAL BACKGROUND**

15.     Plaintiffs were terminated on September 20, 2004, because they provided information to outside investigators engaged by Netopia, Inc.'s Audit Committee to review a series of accounting

irregularities. Members of the Audit Committee included Defendants Robert C. Lee, Howard T. Slayen, and Harold Wills.  The information provided by Plaintiffs implicated the above-named officers and directors of Netopia, Inc. in transactions that were calculated to defraud Netopia, Inc.'s shareholders, and which are now the subject of an investigation by the Securities and Exchange Commission (SEC) as well as various shareholder lawsuits.

16.    During the investigation, Plaintiffs identified the role of Alan Lefkof, Netopia's President and CEO, and David Kadish, Netopia's Senior V.P. and Chief Legal Counsel, in directing that certain invoices be created to reflect a sale of Netopia products contrary to the company's usual payment terms.  This irregular transaction resulted in a false inflation of the company's earnings, a jump in profits, and a resulting increase in the value of the company's stock price.  As a result of the manipulation of the questioned transaction – which had been booked as a sale one quarter and then written off as uncollectable the next – Netopia, Inc. reported a profit for the first time in 39 quarters.

17.    As a result of Defendants Lefkof and Kadish's manipulation of this transaction, Netopia, Inc.'s stock price was intended to, and did increase for the quarter in question so that Defendants, and each of them, could reap personal gain from the stock's price increase, to the detriment of Netopia, Inc.'s remaining shareholders.  Subsequently, Lefkof, Kadish, and the other Netopia officers and Directors named above sold substantial shares in the company and reaped personal benefit from the sale.

18.    On or about July 22, 2004, Plaintiffs Frankl and Deckard received memos from Defendant Slayen, directing them to participate in an Audit Committee investigation by outside counsel, the law firm of Morrison & Foerster, involving "certain aspects of the company's historical financial accounting and reporting."  Frankl and Deckard were instructed to cooperate fully with this investigation, and each was individually questioned at length by two attorneys from the Morrison & Foerster law firm, acting as agents for, and at the direction of, Netopia, Inc. and the Netopia, Inc.

_____

Audit Committee.

19.     In the course of the investigation by outside counsel acting on behalf of the Netopia, Inc. Audit Committee, Plaintiffs Frankl and Deckard provided certain communications and other information that shed light, for the first time, on the role of Defendant Lefkof and Defendant Kadish in directing that certain invoices be created to reflect a sale of Netopia, Inc. products contrary to the company's usual payment terms.  The Audit Committee initiated this investigation because these transactions resulted in false inflation of Netopia, Inc.'s earnings, a jump in profits, and a resulting increase in the value of Netopia, Inc.'s stock price.  As a result of Defendants Lefkof's and Kadish's manipulation of the transaction at issue – which was booked as a sale one quarter and then written off and uncollectable the next – Netopia, Inc. reported its first profitable quarter in over three years.

20.     Specifically, Plaintiff Frankl made the Audit Committee's counsel aware of Defendant Lefkof's role in manipulating a transaction with Interface Computer Company (ICC) in 2003.  This transaction involved a sale of software to ICC for resale to its end user, the Philadelphia school system.  Defendant Lefkof directed Plaintiff Frankl to book the transaction by the end of the quarter, *i.e.*, September 30, 2003, because this sale would help the company hit their target number for the quarter in question.  The natural closing of this transaction would have taken several more months. Plaintiff Frankl was not in a position to manipulate – or even to know – the effect of this transaction on Netopia, Inc.'s earnings for the quarter in question.  Defendant Lefkof, on the other hand, was privy to this information and was manipulating the company's earnings.

21.     Unlike Netopia, Inc.'s principals, Plaintiff Frankl had no incentive to manipulate this transaction for personal gain.  As Vice President of Sales and Marketing, Plaintiff Frankl was in a position to receive only 50% of a 1% commission override – approximately $3,750 – for this

transaction. The sales representative – who did not provide inculpatory information to the investigators and was, therefore, not terminated – received a far more substantial sum.

22.     The Audit Committee's counsel also learned from Plaintiff Frankl that not only Defendant Lefkof, but also Netopia, Inc.'s General Counsel, Defendant Kadish, and Netopia, Inc.'s CFO, Defendant Baker, knew about, and participated in, the contingent nature of the ICC/Philadelphia transaction. The timing of ICC's $750,000 payment for the software was contingent upon its receiving a purchase order from its end user. Plaintiff Frankl never represented that the deal was non-contingent and did not prepare the Purchase Order for the ICC transaction. Defendant Kadish, however, was aware of this contingency and prepared the Purchase Order that he directed Plaintiff Frankl to submit to ICC.

23.     During the Audit Committee investigation, Plaintiff Frankl made counsel aware of Defendant Kadish's role in drafting and submitting the ICC Purchase Order. He informed the investigators that all parties involved knew that payment depended upon ICC's receiving a Purchase Order from the Philadelphia school system and that it was Defendant Kadish who prescribed the Purchase Order to be used. Although the Purchase Order prepared by Defendant Kadish did not reflect that payment was contingent on any other event, it was a drastic aberration from standard Netopia, Inc.'s standard policy because it included no terms of payment whatsoever – clearly because Defendant Kadish knew it would not be paid within 30 days. His objective was solely to have the sale finalized and on Netopia, Inc.'s books by September 30, 2003.

24.     In other words, Lefkof and Kadish specifically directed Plaintiffs' actions with respect to the ICC transaction and were aware  – as was Netopia's CFO Baker – that the transaction was booked as a sale but was not anticipated to be paid until a later date. Mr. Frankl and Mr. Deckard were

involved in no illegal conduct and no wrongdoing whatsoever. They did not realize, at the time the sale was booked and slotted for payment months later, that the company's principals intended this transaction to result in a profit for the company that quarter so that they could reap personal gain from the stock's price increase to the detriment of Netopia's shareholders. Further, they had no reason to anticipate that these same principals would then treat the ICC transaction as delinquent and uncollectible on the books of the company the following quarter, thus generating the Audit Committee investigation and squarely directing the blame at them. Nevertheless, when this irregular transaction came to light, Plaintiffs were blamed for manipulating invoices and allegedly causing the write-off to occur.

25.     The ICC/Philadelphia Schools transaction was collected and the write-off restated after Plaintiffs' termination. The date of collection was completely in keeping with the initial terms agreed upon by the customer with Netopia, Inc.'s principals when the sale was booked.

26.     In addition to the ICC/Philadelphia Schools transaction, the Audit Committee's external investigation also addressed a prior transaction with ICC involving a sale of software for resale to the Chicago Public Schools. At the time of this sale, Plaintiff Deckard shared the exact details of the ICC/Chicago Public Schools transaction directly with Defendant Lefkof during a conference call on the day that the Purchase Order was received. In addition, Defendant Lefkof received a fax copy of the original Purchase Order. Thereafter, Netopia's own accounting department directed Plaintiffs Frankl and Deckard to eliminate certain terms from the Purchase Order. Netopia, Inc.'s Controller and other Netopia, Inc. management fully understood the payment structure of the ICC/Chicago transaction, including Netopia's CFO, Defendant Baker.

27.     All documents memorializing the ICC/Chicago Schools transaction were, therefore, created

with the knowledge and consent of Netopia, Inc.'s management. Defendant Lefkof directed Plaintiff Deckard to make certain changes to the Purchase Order, and all changes were made with the customer's approval. However, after Plaintiff Deckard's cooperation with the Audit Committee's external investigators, and after providing information about management's role in the transaction, he was terminated allegedly for altering the terms of this sale. This was merely pretext for unlawful retaliation.

28.     Plaintiffs were involved in no illegal conduct and no wrongdoing whatsoever. Instead, Defendants Lefkof and Kadish, acting on behalf of Netopia, Inc., as well as other members of Netopia, Inc.'s Board of Directors and Audit Committee, specifically directed the Plaintiffs' actions in concluding the transaction at issue with the intent that the transaction be booked as a sale, although it was not anticipated to be paid until a later date.

29.     While Plaintiffs lost their long-term employment with Netopia, Inc. as a result of this sham audit process, Defendants Lefkof and Kadish, along with other top executives – including members of the Netopia, Inc. Audit Committee, such as Defendants Lee, Slayen, and Wills – reaped significant profits by a sale of their stock at its inflated value and suffered no adverse consequences. Plaintiffs' protected conduct was, at a minimum, a contributing factor in their termination. This adverse personnel action was retaliation for their role in the investigation.

30.     Neither Plaintiff engaged in any improper transaction. It was Netopia, Inc.'s manipulation of the transactions with ICC that resulted in illegal activity. Because of Netopia, Inc.'s manipulation, these transactions came under scrutiny, and both Plaintiffs cooperated with investigations by the SEC and the Netopia, Inc. Audit Committee. Critically, it was Plaintiffs who first made the external investigators aware of Netopia, Inc. management's role in possible shareholder fraud, and Plaintiffs

were terminated for providing this information to the investigators.

31.     On or about December 1, 2004, Defendant Lefkof addressed a meeting of Netopia, Inc.'s national sales and marketing personnel in Emeryville, California. During that address, Lefkof specifically stated that Frankl and Deckard were terminated for dishonest and improper activities in the course of their dealings with Netopia, Inc. customers. After addressing the entire sales and marketing force, Lefkof – at his own instance – met separately with just the Texas employees, where he repeated his defamatory rhetoric.

32.     Specifically, Lefkof stated that Frankl and Deckard had engaged in a practice of altering documents and engaging in improper "side agreements" with Netopia customers in order to reap personal benefit. Lefkof made these statements on his own initiative, and they were not prompted by any questions or comments by other personnel in attendance at the meeting.

33.     In addition to these comments to the entire Netopia sales and marketing force, Lefkof specifically requested another employee from the Dallas office to reserve a table because he wanted to speak further about these matters with only the Texas employees. With only Texas employees in attendance, Lefkof again launched into derogatory statements about Frankl and Deckard. Again, these statements were made on his own initiative and were not prompted by questions or comments from anyone in the group of Texas employees.

34.     Lefkof repeated to Texas sales and marketing personnel that Frankl and Deckard had engaged in irregular and dishonest practices and acknowledged that the Texas employees should inform customers that Frankl and Deckard had been terminated because of their conduct. Netopia, Inc. has several major accounts in Texas, including Verizon, EDS, SBC, University of Texas/Austin, TXU, and Texaco. Verizon and SBC are two of Netopia's largest customers. Lefkof concluded his comments by stating that all employees were free to ask further questions about what had happened

in the Dallas office, but cautioned that they should not put anything in writing.

35.     On this occasion, Lefkof explicitly described conduct by Frankl and Deckard that was dishonest and contrary to acceptable practices in the industry.  Employees from the Texas office clearly understood the import of his remarks, and expressed their shock that the company's CEO would openly make these accusations.

## III.  CAUSES OF ACTION

## A.     TERMINATION IN VIOLATION OF SOX WHISTLEBLOWER PROTECTION PROVISION

36.     Plaintiffs Frankl and Deckard reassert each and every allegation set forth in Paragraphs 1 through 35, above, and incorporate them by reference as if specifically stated herein.

37.     Defendants discriminated against Plaintiffs Frankl and Deckard by conspiring to terminate their employment, by terminating their employment on or about September 20, 2004, and by refusing to pay commissions which had been earned and were due and payable at the time of their termination, all in discrimination or retaliation for lawful acts by Plaintiffs Frankl and Deckard to provide information, or cause information to be provided, regarding conduct which Plaintiffs reasonably believed constituted a violation of rules and/or regulations of the Securities & Exchange Commission and/or provisions of federal law relating to fraud against shareholders.  Plaintiffs Frankl and Deckard provided this information and/or assistance to a person with supervisory authority over them, or to such other person working for their employer who had the authority to investigate, discovery, or terminate this conduct.

38.     Defendants Robert C. Lee, Howard T. Slayen, and Harold Wills were all members of the Netopia Audit Committee and individually engaged in the scheme to retaliate against Plaintiffs.  Upon

information and belief, each of these Defendants as well as Defendants Baker, Lefkof, and Kadish, knowingly and willingly took part in the decision to terminate Plaintiffs' employment. They knew of Kadish's and Lefkof's roles and their culpability in manipulating Netopia's stock price, but rather than punish the true wrongdoers for their securities fraud, they chose to terminate Plaintiffs Frankl and Deckard for their good faith participation in the Morrison & Foerster investigation, which followed explicit instructions to participate in such investigation. The acts of each of these individual members of Netopia's Audit Committee, as well as Defendants Baker, Lefkof, and Kadish, in facilitating Plaintiffs' terminations constituted unlawful retaliation.

39. By their actions of conspiring to terminate Plaintiffs' employment, by terminating Plaintiffs' employment, and by denying Plaintiffs their earned commissions due and payable at the time of termination, Defendants, and each of them, violated Section 806 of SOX, 18 U.S.C.A. § 1514A.

40. Because Plaintiffs have suffered unlawful retaliation for protected activity under SOX, they are entitled to all remedies afforded by 18 U.S.C.A. § 1514A(c) and (d), including back and front pay, compensatory damages, special damages, punitive damages, litigation costs, and reasonable attorneys' fees, all with interest at the legal rate. Plaintiffs, therefore, seek all relief necessary to make them whole, including compensatory damages, as follows:

    a. the amount of back pay including all compensation, commissions, bonuses, and other benefits of employment that Plaintiffs, and each of them, would have earned had they not been terminated, with applicable interest; and

    b. front pay, taking into consideration the same seniority status, compensation, bonuses, commissions, and other benefits of employment that Plaintiffs, and each of them, would have had but for their discriminatory and retaliatory termination; and

    c.       compensation for any special damages sustained as a result of the retaliation and discrimination by Defendants, including litigation costs, expert witness fees, and reasonable attorneys' fees.

## B.   <u>DEFAMATION</u>

41.    Plaintiffs Frankl and Deckard reassert each and every allegation set forth in Paragraphs 1 through 35, above, and incorporate them by reference as if specifically stated herein.

42.    Through his statements, Defendant Alan Lefkof committed the tort of defamation against Plaintiffs. Based on the doctrine of *respondeat superior*, the defamatory statements may also be attributed to Defendant Netopia, as Defendant Lefkof made such statements in the course and scope of his employment. Further, Netopia ratified and approved the conduct of Defendant Alan Lefkof with full knowledge that he was acting with malice.

43.    The defamatory statements constitute defamation per se in that they suggested that the Plaintiffs were guilty of criminal activity.

44.    The Defendants published the defamatory statements set out above when Alan Lefkof made these statements in Netopia's International Sales Meeting, and to customers, vendors and investors while acting in scope of his employment as President of Netopia. All of the persons who heard the defamatory statements understood that the statements were defamatory in the manner described above. Furthermore, all of the persons who heard the defamatory statements understood that they referred to the Plaintiffs.

45.    The defamatory statements set forth above were false. The truth is that Plaintiffs were fired in retaliation for providing information to a Sarbanes Oxley Audit Committee that potentially incriminated other officers and directors of Netopia. The Defendants' publication of the defamatory

statements were not privileged because the Defendants did not limit their publication of the statements to those with a legitimate interest in the information. The statements were voluntarily published to the Plaintiffs' co-workers, who did not ask the Defendants for, and had no legitimate reason for knowing, the details of why the Plaintiffs were no longer at work. The Defendants published the defamatory statements with knowledge that they were false or with substantial grounds for knowing that they might be false and reckless disregard to whether they were true or false.

46.     The false statements were made with malice; that is, to cause substantial injury to Plaintiffs. The statements were made by Lefkof voluntarily, without prompting from the Netopia employees to whom he was addressing. The statements had no purpose but to inflict harm to the reputation of Plaintiffs and to hamper their ability to find employment in their geographic area.

47.     Plaintiffs reside in Dallas, Dallas County, Texas, and have resided there for the past several years. Prior to the publication of the defamatory statement described above, Plaintiffs enjoyed a reputation for industry, dependability, openness, and honesty.

48.     As a direct and proximate result of the Defendants' publication of the defamatory statements, the Plaintiffs' reputations have been severely injured. The allegations contained in the defamatory statements have caused Plaintiffs to suffer extreme mental anguish, public humiliation, and embarrassment. Plaintiffs also encountered difficulties in finding employment. All of this has caused pecuniary injuries.

49.     Furthermore, Plaintiffs are entitled to exemplary Damages from Defendant Alan Lefkof and Netopia because they acted with the malice required to support an award of exemplary damages. Alan Lefkof, and thereby Netopia, acted with a specific intent to cause injury to the Plaintiffs or with conscious indifference to the rights, safety, or welfare of the Plaintiffs, with actual, subjective

awareness that their conduct involved an extreme degree of risk of harm to the Plaintiffs. In particular, because the Plaintiffs had previously accused this Defendant of participation of a scheme to defraud the company, Defendant Lefkof had told the Plaintiffs that he would use any excuse to fire them, and published the statements wrongfully accusing Plaintiffs when he knew that the statements were false and that they would inflict severe emotional and financial damage on the Plaintiffs.

## C.    **BREACH OF CONTRACT**

50.    Plaintiffs Frankl and Deckard reassert each and every allegation set forth in Paragraphs 1 through 35, above, and incorporate them by reference as if specifically stated herein.

51.    On a yearly basis, Plaintiffs each entered into the Plans. The Plans were substantially similar and each paid certain commissions to motivate its employees and managers. Plaintiffs are owed commissions pursuant to the terms of the Plans.

52.    With respect to termination, the Plans provide: "within 60 days after...termination for any reason, 50% of the normal commission amount will be paid. Beyond the 60-day period after termination, no software commission will be earned or paid."

53.    Plaintiffs calculated and demanded the commissions owed to them pursuant to the Plans, but Defendant Netopia has refused to pay the commission.

54.    Thus, Defendant Netopia has breached its obligations to make payments to Plaintiffs pursuant to the terms of the Plans and Plaintiffs have been damaged by the breach.

## D.    **CIVIL CONSPIRACY**

55.    Plaintiffs Frankl and Deckard reassert each and every allegation set forth in Paragraphs 1 through 54, above, and incorporate them by reference as if specifically stated herein.

56.    As set forth above, Plaintiffs believe that Defendants Lefkof, Kadish, Lee, Slayen, Baker and

Wills acted together and also in cohorts with Defendant Netopia, Inc. to unlawfully retaliate against Plaintiffs in violation of SOX. While Plaintiffs believe that each Defendant separately and individually violated SOX provisions, these individual Defendants also conspired with each other, and with Defendant Netopia, to unlawfully retaliate against Plaintiffs.

57.     Each of these Defendants acted in concert to accomplish the eventual termination of Frankl and Deckard for disclosing information to an independent auditor. Upon information and belief, they collaborated to form the decision to terminate Plaintiffs' employment, even after learning of Kadish's and Lefkof's culpability following the Morrison & Foerster investigation. This overt collaboration was in furtherance of their conspiracy.

58.     As a direct and proximate result of this retaliatory scheme the conspiracy to further the scheme, Plaintiffs, Frankl and Deckard were terminated from their employment and suffered financial harm.

**E.     ATTORNEYS' FEES**

59.     Netopia's conduct as described above and the resulting damages and loss to Plaintiffs have forced Plaintiffs to hire the law firm of Gibson, McClure, Wallace & Daniels, L.L.P. to collect the amount due and owing, and Plaintiffs have agreed to pay its attorneys reasonable attorneys' fees for their services.

60.     Demands for payment of the amount owed have been made on Defendant. More than thirty (30) days have elapsed since the demands for payment were made on Defendant.

61.     Upon judgment being rendered herein, Plaintiffs are entitled to collect and hereby sues to recover its reasonable attorneys' fees and expenses at the trial court and on appeal, if necessary, under § 38.001, *et. seq.* of the TEXAS CIVIL PRACTICE & REMEDIES CODE.

## IV.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Frankl and Deckard request that Defendants, and each of them, be summoned to appear and answer and that, on final trial, judgment be granted against Defendants, joint and severally, awarding Plaintiffs Frankl and Deckard the following relief:

a.  back pay, with interest, including without limitation lost wages, bonuses, commissions, benefits, and other benefits of employment;

b.  front pay, taking into consideration all future compensation, commissions, bonuses, and benefits of employment with the same seniority status that each Plaintiff would have enjoyed but for his discriminatory and retaliatory termination;

c.  compensation for all special damages sustained as a result of Defendants' discriminatory and retaliatory conduct, including litigation costs, expert witness fees, and reasonable attorneys' fees;

d.  pre-judgment and post-judgment interest, as allowed by law;

e.  attorneys' fees and costs of suit; and

f.  such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**GIBSON, McCLURE, WALLACE & DANIELS, L.L.P.**


BY:    <u>/S/ Wade L. McClure</u>
       Wade L. McClure
       Texas Bar No. 13428700
       Ruth Ann Daniels
       State Bar No. 15109200
       Jonni Walls
       State Bar No. 20793650
       8080 N. Central Expressway
       Suite 1300, LB 50
       Dallas, Texas 75206-1838
       (214) 891-8040
       (214) 891-8010 Facsimile

       **ATTORNEYS FOR PLAINTIFFS**
       **PETER FRANKL and JOHN DECKARD**


## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on November 27th, 2006, a true and correct copy of this instrument was filed electronically, notice of the filing was served on Counsel for the Defendants by operation of the Court's electronic filing system, and the parties may access this filing by and through the Court's electronic filling system.


/s/ Wade L. McClure

_____

**WADE L. MCCLURE**