# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **PETER FRANKL, and** | § | |
| **JOHN DECKARD,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No.  3:05 CV 386-B** |
| | § | |
| **ALAN LEFKOF and NETOPIA, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## DECLARATION OF JOHN CANNON

1.      My name is John Cannon. I am of sound mind, over the age of 18 years, have never been convicted of a felony or a crime of moral turpitude, and am competent and capable of making this Declaration. I have personal knowledge of all facts stated herein and swear under penalty of perjury that all are true and correct.

2.      I reside at 4413 Fairway Drive, Carrollton, Texas 75010. Until January 2005, I was employed as Regional Sales Manager for the Mid-Atlantic Region of Netopia, Inc. I was employed by Netopia, Inc. for approximately two and one-half years. I worked out of the company's office in Dallas, Texas.

3.      I attended Netopia, Inc.'s National Sales Meeting on or about December 1, 2004. Alan Lefkof addressed all employees in attendance at this meeting including approximately 10-12 employees from Netopia's Dallas, Texas office. In addressing the meeting, Lefkof stated that Peter Frankl and John Deckard had been terminated from their positions in the Dallas office because they engaged in dishonest conduct.

**DECLARATION OF JOHN CANNON - Page 1**



EXHIBIT

**F**

4.      Specifically, Lefkof stated that Mr. Frankl and Mr. Deckard had engaged in a practice of altering documents and engaging in improper "side agreements" with Netopia customers in order to reap personal benefit.

5.      Mr. Lefkof made these statements on his own initiative, and they were not prompted by any questions or comments by other personnel in attendance at the meeting.

6.      In addition to these comments to the entire Netopia sales and marketing force, Mr. Lefkof specifically requested another employee from the Dallas office to reserve a table because he wanted to speak further about these matters to the Texas employees.  Subsequently, with only Texas employees in attendance, Lefkof again launched into derogatory statements about Mr. Frankl and Mr. Deckard.  Again, these statements were made on his own initiative and were not prompted by questions or comments from anyone in the group of Texas employees.

7.      Lefkof repeated to Texas sales and marketing personnel that Mr. Frankl and Mr. Deckard had engaged in irregular and dishonest practices and acknowledged that the Texas employees should inform customers that Mr. Frankl and Mr. Deckard had been terminated because of their conduct. Netopia, Inc. has several major accounts in Texas, including Verizon, EDS, and SBC.

8.      Mr. Lefkof concluded his comments by stating that all employees were free to ask further questions about what had happened in the Dallas office, but that we should not put anything in writing.

9.      On this occasion, Mr. Lefkof explicitly described conduct by Mr. Frankl and Mr. Deckard that was dishonest and contrary to acceptable practices in the industry.  I clearly understood the import of his remarks, and other people from the Texas sales force expressed their shock that the company's CEO would openly make these accusations.

**DECLARATION OF JOHN CANNON - Page 2**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of March, 2005.

JOHN CANNON

**DECLARATION OF JOHN CANNON** - **Page 3**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER FRANKL and<br>JOHN DECKARD, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Case No. 3:05-CV-1757-B |
| v. | § | ECF |
| | § | |
| NETOPIA, INC., et al. | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT NETOPIA, INC.'S ANSWER TO**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Netopia, Inc. ("Netopia" or the "Company") hereby answers Plaintiffs Peter Frankl's and

John Deckard's First Amended Complaint ("Complaint") as follows:

To the extent the Complaint attempts to characterize certain alleged facts (*e.g.*, describing

conduct as "fraud," "false," "defamatory," "conspiracy," and "manipulating,"), Netopia responds

generally that such allegations constitute conclusions of law and do not constitute allegations of

fact requiring a response; but to the extent such statements may be construed as allegations of

fact, Netopia objects to and denies each and every such allegation, and incorporates by reference

this response in each paragraph below as if fully set forth therein.

In response to the first, unnumbered paragraph of the Complaint, Netopia responds that

this paragraph contains conclusions of law that do not constitute allegations of fact requiring a

response; but to the extent such statements may be construed as allegations of fact, Netopia

objects to and denies each and every such allegation.

**ANSWER**

1.      Netopia is without knowledge or information sufficient to form a belief as to the

truth of the allegations in the first sentence of Paragraph 1 of the Complaint. Netopia admits the

allegations in the second sentence of Paragraph 1 of the Complaint. Netopia admits that Mr.

1



EXHIBIT

**G**

Frankl held the position of Vice President of Sales & Marketing. Except as expressly admitted, Netopia denies each and every allegation in Paragraph 1 of the Complaint.

2.      Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 2 of the Complaint. Netopia admits the allegations in the second sentence of Paragraph 2 of the Complaint. Netopia admits that Mr. Deckard was employed as a Software Sales Manager. Except as expressly admitted, Netopia denies each and every allegation in Paragraph 2 of the Complaint.

3.      Netopia admits the allegations in Paragraph 3 of the Complaint.

4.      Netopia admits the allegations in Paragraph 4 of the Complaint.

5.      Netopia admits the allegations in the first sentence of Paragraph 5 of the Complaint. Netopia admits that Mr. Kadish is a Senior Vice President, the General Counsel and Secretary of the Company. Except as expressly admitted, Netopia denies each and every allegation in Paragraph 5 of the Complaint.

6.      Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 6 of the Complaint. Netopia admits the remaining allegations in Paragraph 6 of the Complaint.

7.      Netopia admits the allegations in Paragraph 7 of the Complaint.

8.      Netopia admits the allegations in Paragraph 8 of the Complaint.

9.      Netopia denies the allegations in Paragraph 9 of the Complaint.

10.     Netopia admits that Mr. Jones is a California resident. Netopia further admits that Mr. Jones was the founder of Netopia and served as the Chairman of the Board of Directors through October 2004. Except as expressly admitted, Netopia denies each and every allegation in Paragraph 10 of the Complaint.

11.     Netopia admits the allegations in the first sentence in Paragraph 11 of the Complaint, and admits that it conducts business in Texas. Except as expressly admitted, Netopia denies each and every allegation of Paragraph 11 of the Complaint.

2

12.     Netopia admits that certain of the individual defendants were at various times either officers, directors or employees of Netopia.  Except as expressly admitted, Netopia denies each and every allegation of Paragraph 12 of the Complaint.

13.     In response to Paragraph 13 of the Complaint, Netopia admits that Plaintiffs purport to assert jurisdiction pursuant to the statutes cited.

14.     In response to Paragraph 14 of the Complaint, Netopia admits that Plaintiffs purport to assert venue in this District and Division pursuant to the statutes cited.

15.     Netopia admits that Mr. Lee, Mr. Slayen, and Mr. Wills were members of Netopia's Audit Committee.  Except as expressly admitted, Netopia denies each and every allegation of Paragraph 15 of the Complaint.

16.     Netopia denies the allegations in Paragraph 16 of the Complaint.

17.     Netopia denies the allegations in Paragraph 17 of the Complaint.

18.     Netopia admits that an Audit Committee investigation was conducted by outside counsel, Morrison & Foerster.  Netopia further admits Mr. Slayen notified plaintiffs of the investigation and alerted them that they would be questioned by attorneys from Morrison & Foerster.  Netopia also admits that that each plaintiff was questioned by attorneys from Morrison & Foerster.   Except as expressly admitted, Netopia denies each and every allegation of Paragraph 18 of the Complaint.

19.     Netopia denies the allegations in Paragraph 19 of the Complaint.

20.     Netopia denies the allegations in Paragraph 20 of the Complaint.

21.     Netopia denies the allegations in Paragraph 21 of the Complaint.

22.     Netopia denies the allegations in Paragraph 22 of the Complaint.

23.     Netopia denies the allegations in Paragraph 23 of the Complaint.

24.     Netopia denies the allegations in Paragraph 24 of the Complaint.

25.     Netopia admits that it received payment on the ICC/Philadelphia Schools transaction at some time after plaintiffs ceased to be employed by Netopia, and that it restated

the timing of the recognition of revenue from this transaction. Except as expressly admitted, Netopia denies each and every allegation in Paragraph 25 of the Complaint.

26. Netopia denies the allegations in Paragraph 26 of the Complaint.

27. Netopia denies the allegations in Paragraph 27 of the Complaint.

28. Netopia denies the allegations in Paragraph 28 of the Complaint.

29. Netopia denies the allegations in Paragraph 29 of the Complaint.

30. Netopia denies the allegations in Paragraph 30 of the Complaint. However, Netopia notes that plaintiff Peter Frankl is a defendant in an action brought against him by the United States Securities and Exchange Commission.

31. Netopia admits the allegations in the first sentence of Paragraph 31 of the Complaint. Except as expressly admitted, Netopia denies each and every allegation of Paragraph 31 of the Complaint.

32. Netopia denies the allegations in Paragraph 32 of the Complaint.

33. Netopia denies the allegations in Paragraph 33 of the Complaint.

34. Netopia denies the allegations in Paragraph 34 of the Complaint.

35. Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 35 of the Complaint concerning the alleged state of mind of current or former employees. Netopia denies each and every remaining allegation in Paragraph 35 of the Complaint.

36. Netopia incorporates its responses to the foregoing Paragraphs as if fully set forth herein.

37. Netopia denies the allegations in Paragraph 37 of the Complaint.

38. Netopia admits that Mr. Lee, Mr. Slayen, and Mr. Wills were members of Netopia's Audit Committee. Except as expressly admitted, Netopia denies each and every allegation of Paragraph 38 of the Complaint.

39. Netopia denies the allegations in Paragraph 39 of the Complaint.

40. Netopia denies the allegations in Paragraph 40 of the Complaint.

41.     Netopia incorporates its responses to the foregoing Paragraphs as if fully set forth herein.

42.     Paragraph 42 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 42 of the Complaint.

43.     Paragraph 43 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 43 of the Complaint.

44.     Paragraph 44 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 44 of the Complaint.

45.     Paragraph 45 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 45 of the Complaint.

46.     Paragraph 46 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 46 of the Complaint.

47.     Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint and therefore denies them.

48.     Paragraph 48 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 48 of the Complaint.

49.     Paragraph 49 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 49 of the Complaint.

50.     Netopia incorporates its responses to the foregoing Paragraphs as if fully set forth herein.

51.     Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint and therefore denies them.

52.     Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint and therefore denies them.

53.     Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 of the Complaint and therefore denies them.

54.     Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint and therefore denies them.

55.     Netopia incorporates its responses to the foregoing Paragraphs as if fully set forth herein.

56.     Netopia is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Plaintiffs allegedly believe and therefore denies them. Paragraph 56 of the Complaint also consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 56 of the Complaint.

57.     Paragraph 57 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 57 of the Complaint.

58.     Paragraph 58 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 58 of the Complaint.

59.     Netopia denies the allegations in Paragraph 59 of the Complaint.

60.     Netopia denies the allegations in Paragraph 59 of the Complaint.

61.     Paragraph 61 of the Complaint consists of legal conclusions for which no response is required.  To the extent a response is required, Netopia denies each and every such allegation of Paragraph 61 of the Complaint.

62.     Netopia denies Plaintiffs are entitled to recover any relief in this action including the relief requested in subsections (a) – (f) of the Prayer for Relief.

## AFFIRMATIVE AND OTHER DEFENSES

Netopia alleges the following affirmative defenses without assuming the burden of proof where the burden of proof rests on Plaintiffs. Netopia also hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent and hereby reserves its right to amend this Answer and assert all such defenses available.

## FIRST AFFIRMATIVE DEFENSE

The claims asserted fail because Netopia had a legitimate, non-discriminatory rationale for terminating Plaintiffs, as determined by the United States Department of Labor on May 11, 2005.

## SECOND AFFIRMATIVE DEFENSE

The claims asserted fail because Netopia's legitimate, non-discriminatory rationale for terminating Plaintiffs was not a pretext.

## THIRD AFFIRMATIVE DEFENSE

The claims asserted fail because Netopia would have taken the same personnel actions in the absence of Plaintiffs' participation in the Audit Committee Investigation, and Plaintiffs cannot show a causal connection between Plaintiffs' participation in the Audit Committee and any such personnel actions, as determined by the United States Department of Labor on May 11, 2005.

## FOURTH AFFIRMATIVE DEFENSE

The claims asserted fail because they are barred by Plaintiffs' unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

Netopia is not liable for any damages suffered by Plaintiffs because the negligent, reckless, or willful acts of Plaintiffs constituted independent, intervening, and superseding causes, relieving Netopia of any liability.

## SIXTH AFFIRMATIVE DEFENSE

The claims asserted fail because they are barred by the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

The claims asserted fail because Plaintiffs were at-will employees under Texas law.

## EIGHTH AFFIRMATIVE DEFENSE

The claims asserted fail because Plaintiffs had express at-will employment agreements with Netopia.

## NINTH AFFIRMATIVE DEFENSE

The claims asserted fail to allege a violation of 18 U.S.C. § 1514A and therefore Plaintiffs have failed to state a claim upon which relief can be granted.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs failed to mitigate their alleged damages.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' damages, if any, are limited to the remedies set forth in Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002.

## TWELFTH AFFIRMATIVE DEFENSE

Even if the allegations asserted in the Complaint are taken as true, they do not, as a threshold matter, rise to the level of fraud against shareholders as defined within Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs did not engage in activity protected by Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002.

## FOURTEENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims are barred by the doctrine of after-acquired evidence.

## FIFTEENTH AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims and/or allegations should be dismissed to the extent they failed to meet the jurisdictional, timeliness, and/or other pre-requisites for bringing a claim on the issues alleged under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that some or all of Plaintiffs' claims and/or allegations that they are whistleblowers have any merit, Plaintiffs are barred from raising such claims to the extent that they did not properly utilize or exhaust established internal procedures of the Department of Labor, designed to address employee complaints under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part to the extent Plaintiffs seek relief for conduct occurring outside the applicable statute of limitations.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or part because any injuries or damages allegedly sustained are due to acts or omissions of Plaintiffs or third parties over which Defendant had no control.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' breach of contract claims are barred in whole or in part by the doctrines of failure of consideration and discharge.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' defamation claims are barred in whole or in part by the doctrines of substantial truth, privilege, and justification.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' defamation claims are barred in whole or in part by the litigation and/or administrative privilege.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' defamation claims are barred in whole or in part because any injuries or damages allegedly sustained were contributed to or caused by Plaintiffs' own actions or omissions. Therefore, Plaintiffs' recovery, if any, must be reduced in proportion to the amount of fault attributable to them.

WHEREFORE, having fully answered the Complaint, Netopia prays that judgment be entered:

1.      Dismissing the Complaint with prejudice or, alternatively, denying the relief requested therein;

2.      Awarding Netopia its costs and disbursements in this action, including attorneys' fees and other disbursements; and

3.      Awarding Netopia such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Stephanie K. Osteen
Roland M. Juarez
State Bar No. 24014211
Stephanie K. Osteen
State Bar No. 24002713
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Phone: 214/969-2800
Fax: 214/969-4343

COUNSEL FOR DEFENDANT NETOPIA, INC.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on December 15, 2006, a true and correct copy of this instrument was filed electronically, notice of the filing was served on Counsel for Plaintiffs by operation of the Court's electronic filing system, and the parties may access this filing by and through the Court's electronic filing system.

/s/ Stephanie K. Osteen

#6003297

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PETER FRANKL and        §
JOHN DECKARD,            §
                             §
     Plaintiffs,            §
                             §           Case No. 3:05-CV-1757-B
v.                            §           ECF
                             §
NETOPIA, INC., et al.       §
                             §
     Defendants.         §

**MOTION OF DEFENDANTS ALAN LEFKOF, DAVID KADISH,
WILLIAM BAKER, ROBERT LEE, HOWARD SLAYEN,
HAROLD WILLS, AND REESE JONES TO DISMISS PLAINTIFFS' CLAIMS
FOR LACK OF PERSONAL JURISDICTION AND BRIEF IN SUPPORT**

Respectfully submitted,

/s/ Stephanie K. Osteen
Roland M. Juarez
State Bar No. 24014211
Stephanie K. Osteen
State Bar No. 24002713
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Phone: 214/969-2800
Fax: 214/969-4343

COUNSEL FOR DEFENDANTS ALAN LEFKOF,
DAVID KADISH. WILLIAM BAKER, ROBERT
LEE, HOWARD SLAYEN, HAROLD WILLS, AND
REESE JONES



EXHIBIT
**H**

# TABLE OF CONTENTS

I.  Introduction ........................................................................................................1

II.  Procedural Background .......................................................................................2

III.  Factual Background ............................................................................................3

    A.  Plaintiffs' Employment With Netopia ...........................................................3

    B.  The Individual Defendants .............................................................................4

IV.  Plaintiffs' Suit Should Be Dismissed As To The Individual Defendants
Because The District Court Does Not Have Personal Jurisdiction Over Them ...........9

    A.  The Court Lacks General Jurisdiction Because The Individual
Defendants Do Not Have Continuous And Systematic Contacts
With Texas ...................................................................................................10

    B.  The Court Lacks Specific Jurisdiction Because The Individual
Defendants Did Not Purposefully Conduct Any Activities In
Texas Or Invoke The Benefits And Protections Of Texas's Laws ...............12

    C.  The Fiduciary Shield Doctrine Preclude The Court From
Exercising Personal Jurisdiction Over The Individual Defendants ..............14

    D.  Exercising Jurisdiction Over The Individual Defendants Would
Offend Traditional Notions Of Fair Play And Substantial Justice ...............15

    E.  This Court's Previous Ruling Concerning Plaintiffs' Defamation
Claim Against Defendant Lefkof Is Not Dispositive Of The
Jurisdictional Questions Presented In This Action .......................................16

    F.  Conclusion ...................................................................................................17

Certificate of Service ...................................................................................................18

i

# TABLE OF AUTHORITIES

*Asahi Metal Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987)..................................................................................10

*Aviles v. Kunkle*,
    978 F.2d 201 (5th Cir. 1992) ..............................................................9, 12

*Burchfield v. Stein*,
    No. Civ. A. 3:01-CV-2529, 2002 WL 318341 (N.D. Tex. Feb. 27, 2002).......................14

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..........................................................................10, 12, 13

*Crown Sterling, Inc. v. Clark*,
    815 F. Supp. 199 (N.D. Tex. 1993) ..............................................................12

*Denmark v. Tzimas*,
    871 F. Supp. 261 (E.D. La. 1994)..................................................................16

*Dockery v. America's Platinum Privileges, Inc.*,
    3:03-CV-1901-M, 2004 WL 1196067 (N.D. Tex. May 28, 2004) ...................................16

*Dominion Gas Ventures, Inc. v. N.L.S., Inc.*,
    889 F. Supp. 265 (N.D. Texas 1995) ..............................................................10

*E2M Health Servs. v. Curative Health Servs.*,
    No. Civ. A. 02-CV-1562-K, 2003 WL 23017509 (N.D. Tex. Dec. 19, 2003) .................11

*Electric & Gas Tech., Inc. v. Mazurek*,
    No. Civ. A. 3:01-CV-2756-G, 2002 WL 1125086 (N.D. Tex. May 28, 2002) .................14

*Grundle Linin Constr. v. Adams Cty. Asphalt, Inc.*,
    85 F.3d 201 (5th Cir. 1996) ..............................................................11

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,
    815 S.W.2d 223 (Tex. 1991)..................................................................9

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
    466 U.S. 408 (1984)..........................................................................10, 11

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..........................................................................9, 15

*Lang v. Capital Res. Invs., I & II, LLC*,
    102 S.W.3d 861 (Tex. App.-Dallas 2003) ..............................................................14

*Lovett v. Sanderson,*
    184 F.3d 819, 1999 WL 500591 (5th Cir. 1999) ................................................9

*National Indus. Sand Ass'n v. Gibson,*
    897 S.W.2d 769 (Tex. 1995)................................................................13

*Norwood v. Teather,*
    Civ. A. No. 04-CV-861-K, 2005 WL 723863 (N.D. Tex. Marc. 28, 2005) .......11

*Omni Capital Int'l v. Rudolf Wolf & Co.,*
    484 U.S. 97 (1987)............................................................................9

*Panda Brandywine Corp. v. Potomac Elec. Power Co.,*
    253 F.3d 865 (5th Cir. 2001) ........................................................12, 13

*Point Landing, Inv. v. Omni Capital Int'l, Ltd.,*
    795 F.3d 415 (5th Cir. 1986) ...............................................................9

*Revell v. Lidov,*
    317 F.3d 467 (5th Cir. 2002) ..............................................................11

*Saktides v. Cooper,*
    742 F. Supp. 382 (W.D. Tex. 1990)...............................................15, 16

*Sefton v. Jew,*
    201 F. Supp.2d 730 (W.D. Tex. 2001)...................................................14

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)........................................................................10

*Skidmore Energy, Inc. v. KPMG,*
    No. Civ. A. 303-CV-2138B, 2004 WL 2804888, *2 (N.D. Tex. Dec. 3, 2004)...............13

*St. Claire v. Ensurelink,*
    No. Civ. A. 3:01-CV-1448-G, 2002 WL 336570 (N.D. Tex. Apr. 19, 2002) ..................11

*Stuart v. Spademan,*
    772 F.2d 1185 (5th Cir. 1985) ............................................................14

*Wilson v. Belin,*
    20 F.3d 644 (5th Cir. 1994) ...............................................................11

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)....................................................................12, 15

## Statutes and Rules

18 U.S.C. § 1514A ...................................................................................................2

18 U.S.C. § 1514A(b)(1)(B) .....................................................................................9

F.R.C.P. 4(e) ..............................................................................................................9

F.R.C.P. 12(b)(2) .......................................................................................................1

Tex. Civ. Prac. & Rem. Code § 7.042 ......................................................................9

#6011051

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Alan Lefkof, David Kadish, William Baker, Robert Lee, Howard Slayen, Harold Wills, and Reese Jones (the "Individual Defendants") move the Court to dismiss all claims asserted against them in this action for lack of personal jurisdiction.

## I.    Introduction

This motion presents a novel question with far-reaching implications for individuals serving in positions of corporate governance everywhere:  Can seven nonresident officers and directors of a foreign corporation, with little or no contacts in Texas, be haled into Texas court to defend an employment decision made and acted on by them in California that adversely affected two Texas employees?  Unless the Court is willing to extend personal jurisdiction doctrine far beyond anything the United States Supreme Court and Fifth Circuit Court of Appeals have approved in other cases, the answer to that questions must be no.

Texas residents Peter Frankl and John Deckard sued seven California, Nevada, and Virginia residents, all past or present officers or directors of their former California-based employer, for purportedly terminating and conspiring to terminate their employment.  None of the Individual Defendants have sufficient minimum contacts for this Court to exercise personal jurisdiction over them.  As citizens and residents of other states, the Individual Defendants do not maintain the systematic and continuous contacts with Texas necessary to justify the exercise of general jurisdiction, nor is there specific jurisdiction in Texas over them.  The employment decisions at issue were made by nonresidents in California and the only connection they have with Texas is the fortuitous fact that Plaintiffs reside here.  Under these circumstances, subjecting the Individual Defendants to the jurisdiction of a distant forum with which they have

insufficient or, in some instances, nonexistent contacts with Texas, would offend notions of fair play and substantial justice.

## II.     Procedural Background.

Plaintiffs Peter Frankl and John Deckard ("Plaintiffs") originally filed a claim against Netopia, Inc. ("Netopia") with the Occupational Health and Safety Administration (OSHA) alleging that their termination from Netopia constituted unlawful discrimination in retaliation for their participation in an investigation conducted by the audit committee of Netopia's board of directors (the "Audit Committee") in violation of Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A.   OSHA conducted a full investigation into Plaintiffs' allegations including interviewing certain of the Individual Defendants and counsel for the Audit Committee.   OSHA determined Plaintiffs' claims were without merit on May 11, 2005. Plaintiffs thereafter appealed to the Department of Labor Office of Administrative Law Judges. While Plaintiffs' appeal was pending, the parties agreed to dismiss the action.

On January 29, 2005, Plaintiffs filed a lawsuit in Dallas County Court against Defendants Netopia and Lefkof.   In that lawsuit, Plaintiffs asserted claims against Netopia for breach of contract and against both Netopia and Lefkof for defamation.   On February 25, Defendants removed the case to federal court based on diversity.   Thereafter, on March 4, 2005, Lefkof filed a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction that was denied on June 22, 2005. The parties subsequently agreed to dismiss the action without prejudice.

On August 31, 2005, Plaintiffs filed the present lawsuit against Defendants Netopia, Lefkof, Kadish, Baker, Lee, Slayen, Wills, and Jones (collectively the "Defendants") alleging only retaliation under the whistleblower protection provisions of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1541A.   Responding to Plaintiffs' Original Complaint, the Individual

2

Defendants filed a timely Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction on September 12, 2006.

Thereafter, on November 28, 2006, while the Individual Defendants' Rule 12(b)(2) motion was still pending and not yet fully briefed, Plaintiffs filed their First Amended Complaint reasserting their prior claims for alleged breach of contract against Netopia and alleged defamation against both Netopia and Lefkof. Plaintiffs also added new civil conspiracy claims against all Defendants.[1]

## III.    Factual Background.

### A.    Plaintiffs' Employment With Netopia

Netopia is a company based in Emeryville, California that develops, markets, and supports a variety of broadband and wireless equipment and service delivery software. (Declaration of Alan Lefkof ("Lefkof Decl.") ¶ 2, App. at 1.) Plaintiffs are two former employees of Netopia. (Lefkof Decl. ¶ 6, App. at 2.) Both were terminated from Netopia in September 2004 following an investigation conducted by outside counsel for the Audit Committee of Netopia's board of directors (the "Audit Committee Investigation"). (Lefkof Decl. ¶¶ 6-8, App. at 2-3.)

As part of the Audit Committee Investigation, attorneys from the San Francisco office of the Morrison & Foerster law firm, retained as outside counsel for the Audit Committee, went to

---

[1] Based upon a review of relevant authorities, it is the Individual Defendants' position that the filing of Plaintiffs' First Amended Complaint on November 28, 2006 rendered Plaintiffs' Original Complaint a nullity, thereby mooting their first motion to dismiss for lack of personal jurisdiction filed on September 26, 2006. *See, e.g., King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (noting that amended complaint supersedes original complaint and renders it of no legal effect "unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading"). To the extent the Court determines otherwise, however, the Individual Defendants ask that the Court receive and consider the evidence and arguments submitted by them in support of this motion in connection with any ruling issued on their prior motion.

Netopia's Texas office to interview certain employees, including Plaintiffs.  (Declaration of Robert Lee ("Lee Decl.") ¶ 6, App. at 6.)  After the interviews were completed, the Morrison & Foerster lawyers reported their findings to the Audit Committee.  (Lee Decl. ¶ 6, App. at 6.)  In particular, these lawyers informed the Audit Committee that, during Plaintiffs' interviews, Plaintiffs had provided facts and documents showing they had engaged in intentional wrongdoing in connection with certain software transactions they had negotiated, including altering documents and concealing material information from Netopia's accounting department. (Lee Decl. ¶ 6, App. at 6.)

On or around September 14, 2004, the Audit Committee conferred with Netopia's board of directors, described the results of the investigation, and recommended to the board that Plaintiffs' employment be terminated.  (Lefkof Decl. ¶ 7, App. at 2; Lee Decl. ¶¶ 7-8, App. at 6.) Based on the report and recommendation of the Audit Committee, the board of directors voted unanimously to terminate Plaintiffs' employment.  (Lefkof Decl. ¶ 8, App. at 6.)  The board instructed the Company's President and Chief Executive Officer, Alan Lefkof, to carry out the terminations. (Lefkof Decl. ¶ 8, App. at 6.)

### B.    The Individual Defendants

Defendant Lefkof is the President and Chief Executive Officer of Netopia and a member of Netopia's board of directors.  (Lefkof Decl. ¶¶ 2-3, App. at 1.)  He participated in the board of directors meeting on or around September 20, 2004 from Netopia's headquarters in Emeryville, California, and voted to terminate Plaintiffs' employment based on the report and recommendation of the Audit Committee.  (Lefkof Decl. ¶¶ 7-8, App. at 2-3.)   He also communicated the board's decision to Plaintiffs at Netopia's headquarters in Emeryville, California, as instructed by the board of directors. (Lefkof Decl. ¶ 8, App. at 2-3.)

Lefkof is, and for the last twenty-seven years has been, a resident of California. (Lefkof Decl. ¶ 3, App. at 1.) He has never been a resident of Texas, owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas. (Lefkof Decl. ¶ 5, App. at 1-2.) He has no personal contacts with Texas and has never conducted personal business in Texas. (Lefkof Decl. ¶ 5, App. at 1-2.) The only presence Lefkof has in Texas is approximately three to five trips annually to visit customers and potential customers and, from time to time, to confer with the small number of Netopia employees located in Texas, in each case in his capacity as an officer of Netopia. (Lefkof Decl. ¶ 5, App. at 1-2.)

Defendant Kadish is a Senior Vice President and General Counsel of Netopia. (Declaration of David Kadish ("Kadish Decl.") ¶ 2, App. at 8.) He had no involvement in the decision to terminate Plaintiffs' employment. (Kadish Decl. ¶ 7, App. at 9.) He is not, and never has been, a member of Netopia's board of directors. (Kadish Decl. ¶ 7, App. at 9.) He did not attend the board of directors meeting on or around September 14, 2004, nor did he consult with any member of Netopia's board of directors concerning Plaintiffs' termination prior to the vote of the board of directors on September 14, 2004. (Kadish Decl. ¶ 7, App. at 9.)

Kadish is, and has been for his entire life except his post-graduate education years, a resident of California. (Kadish Decl. ¶ 3, App. at 8.) He has never been a resident of Texas, owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas. (Kadish Decl. ¶ 4, App. at 8-9.) He has no personal contacts with Texas and has never conducted personal business in Texas. (Kadish Decl. ¶ 4, App. at 8-9.) Both while employed by Netopia and previously, the only presence Kadish has had in Texas is infrequent business meetings with customers and prospective customers, and Texas counsel that has represented Netopia or his prior employer. (Kadish Decl.

¶ 4, App. at 8-9.)  In every case, Kadish's visits to Texas were to conduct business for Netopia (or a prior employer) in his capacity as an officer of or counsel for Netopia (or a prior employer). (Kadish Decl. ¶ 4, App. at 8-9.)  Furthermore, during his seven year career as Senior Vice President and General Counsel of Netopia, Kadish has never been in Netopia's office in Texas. (Kadish Decl. ¶ 4, App. at 8-9.)

Defendant Baker was Netopia's Chief Financial Officer from approximately July 2001 until approximately October 2004.  (Declaration of William Baker ("Baker Decl.") ¶ 2, App. at 11.)  He had no involvement in the decision to terminate Plaintiffs' employment.  (Baker Decl. ¶ 6, App. at 12.)  He was not a member of Netopia's board of directors.  (Baker Decl. ¶ 6, App. at 12.)  He did not attend the board of directors meeting on or around September 14, 2004, nor did he consult with any member of Netopia's board of directors concerning Plaintiffs' termination prior to September 14, 2004.  (Baker Decl. ¶ 6, App. at 12.)

During his term as Netopia's Chief Financial Officer, Baker lived and worked in California.  (Baker Decl. ¶ 3, App. at 11.)  He currently resides in Nevada.  (Baker Decl. ¶ 3, App. at 11.)  He has never been a resident of Texas, owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas.  (Baker Decl. ¶ 4, App. at 11.)  He has no personal contacts with Texas and has never conducted personal business in Texas.  (Baker Decl. ¶ 4, App. at 11.)  The only presence Baker has had in Texas is visiting relatives or occasional work related visits to conduct business for Netopia in his capacity as an officer of Netopia.  (Baker Decl. ¶ 4, App. at 11.)

Defendant Lee is a member of Netopia's board of directors and was a member of the Audit Committee.  (Lee Decl. ¶ 2, App. at 5.)  He recommended to the board of directors that

Plaintiffs' employment be terminated, and voted to terminate Plaintiffs' employment, based on the findings reported by the Morrison & Foerster lawyers. (Lee Decl. ¶¶ 6-8, App. at 6.)

Lee is, and for the last fifty-eight years has been, a resident of California. (Lee Decl. ¶ 3, App. at 1.) He has never been a resident of Texas, owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas. (Lee Decl. ¶ 4, App. at 5.) He has no personal or professional contacts with Texas and has never conducted personal or professional business in Texas. (Lee Decl. ¶ 4, App. at 5.)

Defendant Slayen is a partner in the accounting firm of PricewaterhouseCoopers. (Declaration of Howard Slayen ("Slayen Decl.") ¶ 4, App. at 14-15.) He also is a member of Netopia's board of directors and was a member of the Audit Committee. (Slayen Decl. ¶ 2, App. at 14.) He recommended to the board of directors that Plaintiffs' employment be terminated, and voted to terminate Plaintiffs' employment, based on the findings reported by the Morrison & Foerster lawyers. (Slayen Decl. ¶¶ 6-8, App. at 15.)

Since moving to California in September 1982, Slayen has not owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas. (Slayen Decl. ¶ 4, App. at 14-15.) He has no personal contacts with Texas and has not conducted any personal business in Texas since September 1982. (Slayen Decl. ¶ 4, App. at 14-15.) To the extent Slayen made occasional visits to Texas during this time, they were to conduct business for PricewaterhouseCoopers, formerly Coopers & Lybrand, in his capacity as a partner in that firm. (Slayen Decl. ¶ 4, App. at 14-15.) Slayen has never been in Texas in connection with his service on the board of directors of Netopia. (Slayen Decl. ¶ 4, App. at 14-15.)

7

Defendant Wills is a member of Netopia's board of directors and was a member of the Audit Committee. (Declaration of Harold Wills ("Wills Decl.") ¶ 2 , App. at 18.) He recommended to the board of directors that Plaintiffs' employment be terminated, and voted to terminate Plaintiffs' employment, based on the findings reported by the Morrison & Foerster lawyers. (Wills Decl. ¶¶ 6-8, App. at 18-19.)

Wills is, and for the last ten years has been, a resident of Virginia. (Wills Decl. ¶ 3, App. at 18.) He has never been a resident of Texas, owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas. (Wills Decl. ¶ 4, App. at 18.) He has no personal or professional contacts with Texas and has never conducted personal or professional business in Texas. (Wills Decl. ¶ 4, App. at 18.)

Defendant Jones is a member of Netopia's board of directors. (Declaration of Reese Jones ("Jones Decl.") ¶ 2, App. at 22.) He voted to terminate Plaintiffs' employment based on the recommendation of the Audit Committee. (Jones Decl. ¶¶ 6-7, App. at 23.)

Jones is, and for over forty-five years has been, a resident of California. (Jones Decl. ¶ 3, App. at 33.) He has never been a resident of Texas, owned any property in Texas, maintained a bank account in Texas, owned any assets or investments in Texas, or maintained a home in Texas. (Jones Decl. ¶ 4, App. at 22.) He has no personal contacts with Texas and has never conducted personal business in Texas. (Wills Decl. ¶ 4, App. at 22.) The only presence Jones has had in Texas are occasional visits to family and friends, attendance at one funeral, and appearing at past industry trade shows to conduct business for Netopia in his capacity as a board member. (Jones Decl. ¶ 4, App. at 22.)

## IV.  Plaintiffs' Suit Should Be Dismissed As To The Individual Defendants Because The District Court Does Not Have Personal Jurisdiction Over Them.

Lack of personal jurisdiction over a defendant is grounds for dismissal under Federal Rule of Civil Procedure 12(b)(2).  The test for personal jurisdiction in a federal question case is well established.  The court must look first to the service of process provisions of the federal statute from which the case arises.  *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 105-06 (1987); *Lovett v. Sanderson*, 184 F.3d 819, 1999 WL 500691, *1 (5th Cir. 1999).  When the statute is silent as to service of process, as the Sarbanes-Oxley Act of 2002 is, *see* 18 U.S.C. § 1514A(b)(1)(B), the federal court may reach those entities that are subject to the jurisdiction of the state in which the district court sits.  *See* Fed. R. Civ. P. 4(e); *Point Landing, Inv. v. Omni Capital Int'l, Ltd.*, 795 F.3d 415, 419 (5th Cir. 1986), *aff'd sub nom.*, *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987); *Aviles v. Kunkle*, 978 F.2d 201, 203-04 (5th Cir. 1992).

The Texas long-arm statute authorizes the exercise of jurisdiction over non-residents "doing business" in Texas.  Tex. Civ. Prac. & Rem. Code § 7.042.  The Texas Supreme Court has interpreted this statute to reach as far as due process permits.  *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).  The court's personal jurisdiction analysis in this case thus amount to an inquiry into whether the exercise of jurisdiction over the Individual Defendants comports with constitutional due process requirements.  *Aviles*, 978 F.2d at 204 ("Because Texas' long-arm statute extends personal jurisdiction to the constitutionally permissible limits of due process, the determination of personal jurisdiction compresses into a due process assessment.")(internal citations omitted).  Due process requires that:  (1) the nonresident must have purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that forum state, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); and (2) the exercise of jurisdiction

over the nonresident defendant must not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

Under the minimum contacts prong, a nonresident's contacts with the forum state can provide a basis for either "general" or "specific" jurisdiction. *Dominion Gas Ventures, Inc. v. N.L.S., Inc.*, 889 F. Supp. 265, 267 (N.D. Texas. 1995). For a forum state to exercise general jurisdiction over a nonresident defendant, the defendant must have "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). Specific jurisdiction requires that the nonresident defendant have "purposefully directed his activities at the residents of the forum state," and the plaintiff's claims must "arise out of [the] defendant's purposeful contact with the forum." *Dominion*, 889 F. Supp. at 268. Under either standard, the court's analysis focuses solely on the actions and reasonable expectations of the defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481-82 (1985) (defendant's purposeful conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there); *see also Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (determination requires an examination of the relationship between the defendant, the forum, and the litigation).

Here, Plaintiffs fail to allege and cannot show any basis for asserting either general or specific jurisdiction over the Individual Defendants. In addition, "traditional notions of fair play and substantial justice" require that Plaintiffs' claims against the Individual Defendants be dismissed.

### A. The Court Lacks General Jurisdiction Because The Individual Defendants Do Not Have Continuous And Systematic Contacts With Texas.

General jurisdiction exists when the nonresident defendant's contacts with the forum are "continuous and systematic," even if the plaintiff's claims are unrelated to those contacts.

*Helicopteros Nacionales*, 466 U.S. at 415-16; *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). This Court has recognized that the "continuous and systematic contacts" test is a "difficult standard" and "heavy burden" for a plaintiff to meet. *Norwood v. Teather*, Civ. A. No. 04-CV-861-K, 2005 WL 723863, at *2 (N.D. Tex. Mar. 28, 2005); *see also St. Claire v. Ensurelink*, No. Civ. A. 3:01-CV-1448-G, 2002 WL 336570, at *3 (N.D. Tex. Apr. 19, 2002) (the standard for general jurisdiction "requires a showing of substantial activities in the forum state").

In this case, Plaintiffs cannot meet their heavy burden of proving general jurisdiction.[2] No allegations of fact show the Individual Defendants conducted regular or substantial activities in Texas. There are no allegations, for example, that any of the Individual Defendants have, in even remotely recent years, been residents of Texas, owned property, assets, or investments in Texas, maintained bank accounts in Texas, or conducted any personal business in Texas. *See Norwood*, 2005 WL 723863, at *2 (finding that nonresident defendants were not subject to general jurisdiction because none of the defendants resided, maintained offices, owned, rented, or leased real property in Texas). Even if made, such allegations would be contravened by the sworn affidavits submitted by the Individual Defendants in support of this motion, which clearly demonstrate the Individual Defendants do not have continuous and systematic contacts with Texas. (Lekfok Decl. ¶ 5, App. at 1; Kadish Decl. ¶ 4, App. at 8-9 ; Baker Decl. ¶ 4, App. at 11; Lee Decl. ¶ 4, App. at 5; Slayen Decl. ¶ 4, App. at 14-15; Wills Decl. ¶ 4, App. at 18; Jones Decl. ¶ 4, App. at 22.)

---

[2] Once a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of proving jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994); *E2M Health Servs. v. Curative Health Servs.*, No. Civ. A. 02-CV-1562-K, 2003 WL 23017509, at *2 (N.D. Tex. Dec. 19, 2003) (citing *Grundle Linin Constr. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 204 (5th Cir. 1996)).

**B.** **The Court Lacks Specific Jurisdiction Because The Individual Defendants Did Not Purposefully Conduct Any Activities In Texas Or Invoke The Benefits And Protections Of Texas's Laws.**

To exercise specific jurisdiction over a nonresident defendant, a court must find (1) the nonresident defendant purposefully directed activities toward the forum state, thus invoking the benefits and protections of its laws, and (2) the plaintiff's cause of action arises out of or relates to those purposeful contacts. *Burger King Corp.*, 471 U.S. at 474; *Aviles*, 978 F.2d at 204; *Crown Sterling, Inc. v. Clark*, 815 F. Supp 199, 203 (N.D. Tex. 1993).    Specific jurisdiction thus turns on a defendant's contacts with the forum; foreseeability of causing injury to the plaintiff in the forum state is not sufficient to confer specific jurisdiction, absent purposeful acts by the defendant toward the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *Burger King*, 471 U.S. at 474; *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869-70 (5th Cir. 2001).

Here, Plaintiffs do not allege any causes of action that arose from or relate to any alleged purposeful activity by the Individual Defendants in Texas.  Plaintiffs' Sarbanes-Oxley claim, and related conspiracy claim, are based solely on allegations that the Individual Defendants wrongfully terminated their employment with Netopia because of information they supplied during the Audit Committee Investigation.  (First Amended Complaint ¶¶ 37-39, 56-57.)  But there are no factual allegations showing the Individual Defendants engaged in any conduct in Texas giving rise to these claims.

Personal jurisdiction over the Individual Defendants may not be constitutionally premised on the bare allegation that Plaintiffs were wrongfully terminated while residing in Texas. *See Panda Brandywine*, 253 F.3d at 869 (district court lacked specific jurisdiction over the defendant in Texas because the defendant's alleged tortious interference with the plaintiff's financing

arrangements had "no relation to Texas other than the fortuity that [the plaintiffs] resided there"); *Skidmore Energy, Inc. v. KPMG*, No. Civ. A. 303-CV-2138B, 2004 WL 2804888, *2 (N.D. Tex. Dec. 3, 2004) ("the mere allegation that a plaintiff feels the effect of the defendant's tortious conduct in the forum state merely because the plaintiff is located there is insufficient") (Boyle, J.). This is true even if the Court assumes the Individual Defendants knew the effects of the alleged wrongful termination decision would be felt by Plaintiffs in Texas, because foreseeability of injury alone is not sufficient to confer specific jurisdiction over a nonresident defendant. *See Burger King*, 471 U.S. at 474 ("Appellants' allegations, even if true, only relate to the foreseeability of causing injury in Texas, which is not a 'sufficient benchmark' for specific jurisdiction"); *Panda Brandywine*, 253 F.3d at 870 ("If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts"); *Skidmore*, 2004 WL 280488, at *6 (declining to exercise jurisdiction where no facts suggested the nonresident defendants had purposefully availed themselves of the privilege of conducting activities in Texas); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) (declining to recognize personal jurisdiction over nonresident defendant based solely on the effects or consequences of an alleged conspiracy with a resident in the forum state).

Specific facts showing the Individual Defendants purposefully availed themselves of Texas and its laws are required to satisfy due process. Because Plaintiffs have not alleged any causes of action arising from any purposeful activities of the Individual Defendants in Texas, there can be no finding of specific jurisdiction.

### C. The Fiduciary Shield Doctrine Preclude The Court From Exercising Personal Jurisdiction Over The Individual Defendants.

Under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation[.]" *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir.1985); *see also Lang v. Capital Res. Invs., I & II, LLC*, 102 S.W.3d 861, 867 (Tex. App.–Dallas 2003, no pet. (occasional travel to Texas by corporate personnel insufficient to establish continuous and systematic contacts); *Electric & Gas Tech., Inc. v. Mazurek*, No. Civ. A. 3:01-CV-2756-G, 2002 WL 1125086, at *6 (N.D. Tex. May 28, 2002) (fiduciary shield doctrine protected defendant from personal jurisdiction where his only contact with Texas was signing a promissory note and a guaranty on behalf of a corporation in his capacity as a corporate officer); *Burchfield v. Stein*, No. Civ. A. 3:01-CV-2529, 2002 WL 318341, at *6 (N.D. Tex. Feb. 27, 2002) (no jurisdiction over executives who allegedly supervised employees who made fraudulent representations and participated in fraud); *Sefton v. Jew*, 201 F. Supp.2d 730, 743-44 (W.D. Tex. 2001) (refusing to assume personal jurisdiction over nonresident defendant whose only relevant contacts in Texas were in his capacity as a corporate officer).

In this case, there is a total lack of facts to tie the Individual Defendants, in their personal capacities, to the wrong allegedly perpetrated upon Plaintiffs. Defendants Kadish and Baker had absolutely no involvement in the decision to terminate Plaintiffs' employment (Kadish Decl. ¶ 7, App. at 9; Baker Decl. ¶ 4, App. at 11), and any involvement by the remaining Individual Defendants was carried out in their official capacities as directors for Netopia. (Lefkof Decl. ¶¶ 7-8, App. at 2-3; Lee Decl. ¶¶ 6-8, App. at 6; Slayen Decl. ¶¶ 6-8, App. at 15; Wills Decl. ¶¶ 6-8 , App. at 19-20; Jones Decl. ¶¶ 6-7, App. at 23.)

Although corporate agents may, under certain circumstances, be held personally liable for intentional torts committed during the course of their agency, courts recognize a difference between the rules governing personal jurisdiction and the rules governing substantive tort liability. *See Saktides v. Cooper*, 742 F. Supp. 382, 386 (W.D. Tex. 1990). When all of the relevant contacts are alleged acts performed not for the agent's benefit, but for the benefit of the employer, as they are here, personal jurisdiction should not lie. *Id.* (holding contacts of Nevada account executive with Texas for benefit of his employer did not create personal jurisdiction).

### D. Exercising Jurisdiction Over the Individual Defendants Would Offend Traditional Notions Of Fair Play And Substantial Justice.

If a court determines that minimum contacts exist, it must then decide whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 310. The fairness of exercising jurisdiction over a foreign defendant is determined by weighing "the burden on the defendant, the interests of the forum state, . . . the plaintiff's interest in obtaining relief, . . . the interstate judicial system's interest in obtaining the most efficient resolution of the controversies, and the shared interests of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292.

Even in the unlikely event that the Court was to find that the Individual Defendants have sufficient minimum contacts with Texas, a balancing of *International Shoe* factors weighs in favor of dismissal. First, an individual defendant who does not conduct business in or travel to Texas on a regular basis would be extremely burdened if required to defend this lawsuit in Texas. Furthermore, Texas, as the forum state, has no real interest in this litigation because it relates to business activities alleged to have occurred elsewhere (indeed, the Securities and Exchange Commission has initiated a lawsuit against Plaintiff Peter Frankl in the United States District Court for the Northern District of California, alleging Mr. Frankl committed securities

fraud there). Lastly, requiring the Individual Defendants to defend this case in Texas, based on a termination decision made by them in their official capacity as officers of a company located in California, was not reasonably foreseeable and will not serve the interest of the interstate judicial system in adjudicating disputes in the proper forum. *Saktides*, 742 F. Supp. at 385 ("From a policy perspective, it would offend traditional notions of fair play and substantial justice to force employees who have occasion to do business by telephone or mail with any number of given States, to require that they defend lawsuits in those States in their individual capacity based on acts performed not for their own benefit, but for the benefit of their employer.").

### E. This Court's Previous Ruling Concerning Plaintiffs' Defamation Claim Against Defendant Lefkof Is Not Dispositive Of The Jurisdictional Questions Presented In This Motion.

Although the Court previously determined it had specific personal jurisdiction over Defendant Lefkof with respect to Plaintiffs' defamation claim, that ruling is not controlling on the issue of personal jurisdiction as to any of the Individual Defendants, including Lefkof, with respect to Plaintiffs' Sarbanes-Oxley and civil conspiracy claims.[3] The Court must conduct the minimum contacts analysis separately for each cause of action asserted, because a plaintiff is obligated to secure jurisdiction over a nonresident defendant with respect to each claim brought. *See Dockery v. America's Platinum Privileges, Inc.*, 3:03-CV-1901-M, 2004 WL 1196067, at *1 (N.D. Tex. May 28, 2004); *Denmark v. Tzimas*, 871 F. Supp. 261, 266 (E.D. La. 1994); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 1069.7 (2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts."). Moreover, there is no basis for imputing

---

[3] Defendant Lefkof recognizes the Court has already ruled on this issue, but continues to maintain that the Court lacks personal jurisdiction over him with respect to Plaintiffs' defamation claim for the reasons demonstrated in his motion to dismiss filed on March 4, 2005.

Lefkof's alleged contacts to the other Individual Defendants and those alleged contacts have no relation to and cannot support the exercise of jurisdiction over the Individual Defendants with respect to Plaintiffs' unrelated wrongful termination and civil conspiracy claims.

**F.      Conclusion.**

Fundamental fairness militates strongly against the assertion of jurisdiction over the Individual Defendants on the claims alleged in this action. Acting in their individual capacities, the Individual Defendants did not purposefully availed themselves of the privilege of conducting activities in this state. And even if they foresaw that their official conduct on behalf of Netopia would cause harm to Plaintiffs in Texas, foreseeability alone is not enough for personal jurisdiction under the Due Process Clause. Were the law otherwise, officers and directors of corporations operating in several states would routinely be required to defend the propriety of their conduct in numerous distant forums. Because Plaintiffs cannot demonstrate any other affiliations between themselves, the Individual Defendants, and Texas, they cannot establish personal jurisdiction over the Individual Defendants and their claims should be dismissed.

Respectfully submitted,

/s/ Stephanie K. Osteen
Roland M. Juarez
State Bar No. 24014211
Stephanie K. Osteen
State Bar No. 24002713
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Phone: 214/969-2800
Fax: 214/969-4343

COUNSEL FOR DEFENDANTS ALAN LEFKOF, DAVID KADISH, WILLIAM BAKER, ROBERT LEE, HOWARD SLAYEN, HAROLD WILLS, AND REESE JONES

17

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that, on December 15, 2006, a true and correct copy of this instrument was filed electronically, notice of the filing was served on Counsel for Plaintiffs by operation of the Court's electronic filing system, and the parties may access this filing by and through the Court's electronic filing system.

/s/ Stephanie K. Osteen

#6008870