# SEC'S DEPOSITION OF ALAN LEFKOF

# TAKEN ON NOVEMBER 19, 2004



**EXHIBIT**

**K**

6806-1 Lefkof - Nov. 19, 2004

6806-1

SHEET 1  PAGE 1

1    UNITED STATES SECURITIES AND EXCHANGE COMMISSION

2

3    In the Matter of:        )

4    NETOPIA, INC.            ) FILE NO. SF-02846-A

5

6    WITNESS:  Alan Lefkof

7    PAGES:    1 through 251

8    PLACE:    Securities and Exchange Commission

9              44 Montgomery Street, Suite 1100

10             San Francisco, CA

11   DATE:     Friday, November 19, 2004

12

13       The above-entitled matter came on for hearing, pursuant

14   to notice, at 9:41 a.m.

15

16

17

18

19

20

21

22

23

24            Diversified Reporting Services, Inc.

25                 (202) 467-9200

DOCKET

JUL 0 7 2005

CONFIDENTIAL                                                NET_131338

6806-1 Lefkof - Nov. 19, 2004

SHEET 2  PAGE 2

2

1  APPEARANCES:
2
3  On behalf of the Securities and Exchange Commission:
4      BRIAN BUCHERO, ESQ.
5      SHEILA E. O CALLAGHAN, ESQ.
6      Division of Enforcement
7      Securities and Exchange Commission
8      44 Montgomery Street, Suite 1100
9      San Francisco, CA 94104
10     415-705-2459
11
12  On behalf of the Witness:
13     JAHAN P. RAISSI, ESQ.
14     ARTHUR J. SHARTSIS, ESQ.
15     Shartsis, Friese & Ginsburg LLP
16     One Maritime Plaza, 18th Floor
17     San Francisco, CA 94111
18     415-421-6500
19
20
21
22
24
25

PAGE 4

4

1                  PROCEEDINGS
2       MS. O CALLAGHAN:  We are on the record on November
3  19, 2004, at 9:41 a.m.
4       Sir, could you please raise your right hand.
5  Whereupon,
6                  ALAN BARRY LEFKOF
7  was called as a witness herein and, having been first duly
8  sworn, was examined and testified as follows:
9       MS. O CALLAGHAN:  Could you please state and spell
10 your full name for the record?
11      THE WITNESS:  First name Alan, A-l-a-n, middle
12 initial B, as in boy, last name, Lefkof, L-e-f-k-o-f.
13      MS. O CALLAGHAN:  Sir, what does the B stand for?
14      THE WITNESS:  Barry.
15      MS. O CALLAGHAN:  Spell it please?
16      THE WITNESS:  B-a-r-r-y.
17      MS. O CALLAGHAN:  Okay. My name is Sheila
18 O Callaghan, and with me is Mr. Brian Buchero.  We are both
19 officers of the Commission for the purposes of this
20 proceeding.
21      This is an investigation by the United States
22 Securities and Exchange Commission in the matter of Netopia,
23 to determine whether there have been violations of certain
24 provisions of the Federal Securities Laws, however, the facts
25 developed in this investigation might constitute violations

PAGE 3

3

1                  CONTENTS
2
3  WITNESSES                        EXAMINATION
4  Alan Lefkof                           4
5
6  EXHIBITS    DESCRIPTION               PAGE
7  48    Subpoena                         6
8  49    Email chain 7/8/02              137
9  50    Email 8/16/02                   141
10 51    Purchase Order 5/22/02          152
11 52    Email chain 9/23/03             163
12 53    Email & Attached PO 9/26/03     205
13
14
15
16
17
18
19
20
21
22
23
24
25

PAGE 5

5

1  of other federal or state civil or criminal laws.
2       Prior to the opening of the record, you were
3  provided with a copy of the Formal Order of Investigation in
4  this matter, it will be available to you for your examination
5  during the course of the proceeding.
6       Have you had an opportunity to review the Formal
7  Order?
8       THE WITNESS:  Yes.
9       MS. O CALLAGHAN:  Do you have any questions?
10      THE WITNESS:  No.
11      MS. O CALLAGHAN:  You were also provided with a
12 copy of the Commission s Supplemental Information Form, a
13 copy of that was marked as Exhibit 1.  Mr. Lefkof, have you
14 had an opportunity to review Exhibit 1?
15      THE WITNESS:  I ll just take one more minute.
16      MS. O CALLAGHAN:  Sure, go right ahead.
17      THE WITNESS:  Okay.
18      MS. O CALLAGHAN:  Do you have any questions
19 concerning Exhibit 1?
20      THE WITNESS:  No.
21      MS. O CALLAGHAN:  Mr. Lefkof, are you represented
22 by counsel?
23      THE WITNESS:  Yes.
24      MS. O CALLAGHAN:  Would counsel please identify
25 themselves?

CONFIDENTIAL

6806-1 Lefkof - Nov. 19, 2004

SHEET 3   PAGE 6

6

1    MR. RAISSI:  Jahan Raissi, Shartsis, Friese and
.  Ginsburg.

3    MR. SHARTSIS:  Arthur Shartsis, Shartsis, Friese
4  and Ginsburg.

5    MS. O CALLAGHAN:  Mr. Raissi and Mr. Shartsis, are
6  you representing Mr. Lefkof in his individual capacity today?

7    MR. RAISSI:  We are.

8    MS. O CALLAGHAN:  Just for the record, during the
9  course of the testimony we may be joined by another member of
10  the Commission s staff, Michael Dicke.

11                    EXAMINATION

12    BY MS. O CALLAGHAN:

13    Q    I m going to hand you a copy of what has been
14  marked as Exhibit 48 in this investigation.  It was marked
15  before we went on the record by the Court Reporter.  I ask
16  that you take an opportunity to review Exhibit 48.  For the
17  record, Exhibit 48 is dated November 2, 2004, it s addressed
18  to Mr. Lefkof, c/o Jahan Raissi at Shartsis Friese, and it
19  has the subpoena that calls for both documents and testimony.
20  And then an attachment identifying the documents.  It s under
21  my signature.  Sir, have you had an opportunity to review
22  Exhibit 48?

23                    (SEC Exhibit 48 was marked
24                     for identification.)

25    A    Yes.

PAGE 7

7

1    Q    Are you appearing here today pursuant to that
2  subpoena, sir?

3    A    Yes.

4    Q    Sir, do you note the document not only calls for
5  your appearance here but it also calls for the production of
6  certain documents.  Those are listed on the attachment, which
7  I believe counsel is showing you right now?

8    A    Yes.

9    Q    Sir, have you tendered to the staff all the
10  documents that were called for by the subpoena?

11    A    Yes.

12    Q    I want to just make a note, when I was reviewing
13  the documents that you produced, I noted that you had a
14  10b5-1 plan, plan, are you familiar with that, sir?

15    A    Yes.

16    Q    And it was, I believe, for the year starting in
17  December 2003?

18    A    That s correct.

19    Q    Okay.  Did you have a plan prior to that time?

20    A    No.

21    Q    So, that was the first time you created a 10b5-1
22  plan?

23    A    That was my first plan.

24    Q    All right.  Let me just make sure, let me go back
25  and ask if you can tell me what you did to look for documents

PAGE 8

8

1  that would have been responsive to the subpoena?

2    A    And then one other small note, just the typo on my
3  name, at the end it s an  f , not a  b .

4    Q    Yeah, I apologize for that.

5    A    No problem.  So, the first thing I did was just
6  look through my office to see if there were any personal
7  items called for in the subpoena.  And the only thing there
8  was the calendars.  And then I looked in my home office and
9  the only thing I found there was the financial records of my
10  stock sales and the 10b5-1 plan.

11    Q    Sir, where did you look in your office?

12    A    At work, you mean at work?

13    Q    Yeah, right.

14    A    I looked just in the two areas where I have one
15  filing cabinet, and then I have notebooks that are stored on
16  the top of the desk.

17    Q    You looked at both those places?

18    A    Yes.

19    Q    And did you do that personally?

20    A    Yes.

21    Q    What do you usually keep in the filing cabinet?

22    A    Mostly customer contracts and some product vendor
23  files.

24    Q    Did you find anything in the filing cabinet?

25    A    No.

PAGE 9

9

1    Q    And the notebooks, what are those?

2    A    The notebooks on my desk are related to each
3  quarter and then there s pretty common tab in each quarter,
4  it would have our earnings conference which would have a
5  typey script that I use to make our earnings conference
6  call, and then it would have generally accounting data.

7    Q    Did you find any documents that were responsive to
8  our subpoena s subpoena in those notebooks?

9    A    Those notebooks had all sorts of documents and no
10  no, I didn t find any s personal documents related to the
11  subpoena.

12    Q    So the company had produced documents are you
13  aware of that?

14    A    Yes, in fact, I did the exercise earlier for the
15  audit committee investigation and those company documents I
16  gave to Morrison Foerster, and I know they were submitted
17  through those access to all of those s to you guys.

18    Q    Do you know that those were s of the documents
19  that were kept in your notebooks?

20    A    Yeah, well, they sent the m all the notebooks and
21  I know they took the xerox copies.  I don t know which items
22  they xeroxed.

23    Q    Did you provide them with access to your office
24  then?

25    A    I did.

# SEC'S DEPOSITION OF
# PERCY JAMES SANDERS

# TAKEN ON MARCH 1, 2005

Multi-Page™

**Page 3**

1   UNITED STATES SECURITIES AND EXCHANGE COMMISSION

2

3   In the Matter of:        )

4   NETOPIA, INC.            )  File No. SF-02846-A

5                            )

6

7   WITNESS:   Percy James Sanders

8   PAGES:     1 through 143

9   PLACE:     Securities and Exchange Commission

10             44 Montgomery Street, Suite 2600

11             San Francisco, California

12   DATE:     Tuesday, March 1, 2005

13        The above-entitled matter came on for hearing, pursuant

14   to notice, at 9:00 a.m.

15

16

17

18

19

20

21

22

23

24             Diversified Reporting Services, Inc.

25                  (202) 467-9200

---

**Page 3**

1                    C O N T E N T S

2

3   WITNESS                                   EXAMINATION

4   Percy James Sanders                            1

5

6   EXHIBITS:     DESCRIPTION                   IDENTIFIED

7   169          Subpoena, attachments              6

8   170          Resume/Application                 11

9   171          E-mail String                      63

10  172          E-mail String                      67

11  173          E-mail from Sanders                76

12

13

14

15

16

17

18

19

20

21

22

23

24

25

---

**Page 2**

1   APPEARANCES:

2

3   On behalf of the Securities and Exchange Commission:

4        SHEILA O'CALLAGHAN, ESQ.

5        BRIAN HUCHRO, ESQ.

6        44 Montgomery Street, Suite 2600

7        San Francisco, CA

8

9   On behalf of the Witness:

10       HOWARD S. CARO, ESQ.

11       MADELLENE LOW, ESQ.

12       Heller Ehrman

13       333 Bush Street

14       San Francisco, CA 94104

15       (415) 772-6487

16

17

18

19

20

21

22

23

24

25

---

**Page 4**

1              P R O C E E D I N G S

2        MS. O'CALLAGHAN:  We are on the record at 9:08

3   a.m., March 1st, 2005.

4        Sir, could I ask you to please raise your right

5   hand?

6   Whereupon,

7              PERCY JAMES SANDERS

8   was called as a witness herein and, having been previously

9   duly sworn, was examined and testified as follows:

10                EXAMINATION

11   BY MS. O'CALLAGHAN:

12        Q   Could you please state and spell your full name?

13        A   Percy James Sanders, P-e-r-c-y  J-a-m-e-s  S-a-n-d-

14   e-r-s.

15        Q   Sir, my name is Sheila O'Callaghan, with me is Mr.

16   Brian Huchro, we are both officers of the Commission for the

17   purpose of this proceeding.

18        This is an investigation by the United States

19   Securities and Exchange Commission, in the matter of Netopia,

20   to determine whether there have been violations of certain

21   provisions of the federal securities laws.

22        However, the facts developed in this investigation

23   might constitute violations of other federal or state, civil

24   or criminal laws.

25        Prior to the opening of the record you were

---

Multi-Page™

## Page 5

1  provided with a copy of the formal order of investigation.

2  It will be available for your examination during the course

3  of this proceeding.

4        Mr. Sanders, have you had an opportunity to review

5  the formal order?

6      A  Yes, I have.

7      Q  Do you have any questions regarding it?

8      A  Not at this time, no.

9      Q  Prior to the opening of the record, or previously

10  we had marked, you were provided with a copy of the

11  Commission's supplemental information.  A copy of that form

12  has previously been marked as Exhibit Number 1.

13        Mr. Sanders, have you had an opportunity to review

14  Exhibit Number 1?

15      A  Yes, I have.

16      Q  Do you have any questions concerning Exhibit 1?

17      A  No, I do not.

18      Q  Mr. Sanders, are you represented by counsel?

19      A  Yes, I am.

20        MS. O'CALLAGHAN: Would counsel please identify

21  themselves for the record?

22        MR. CARO: Howard Caro, of the firm of Heller,

23  Ehrman, White and McAuliffe, on behalf of the witness.

24        MS. LOH: Madellene Loh, from Heller Ehrman, on

25  behalf of the witness.

## Page 6

1        MS. O'CALLAGHAN: Prior to going on the record I

2  asked the court reporter to mark, for identification, a

3  document that is six pages in length.  The first two pages

4  are a letter dated January 27th, 2005, directed to Mr.

5  Sanders' care, of Craig Martin, of the law firm Morrison and

6  Foerster.  It's signed by Brian Huchro.  Following that is a

7  subpoena, also signed by Mr. Huchro, and then an attachment

8  with document items 1 through 18.

9        (SEC Exhibit No. 169 was marked for

10        identification.)

11  BY MS. O'CALLAGHAN:

12      Q  Sir, I'm going to hand you a copy of what's just

13  been marked as Exhibit 169.  And just let me caution you,

14  sir, that you cannot write on the exhibits, okay.  And the

15  same is true for counsel.

16        Sir, why don't you take an opportunity to look at

17  Exhibit 169, and once you finish looking it over, just let me

18  know.

19        Mr. Sanders, have you had an opportunity to review

20  Exhibit 169?

21      A  Yes, I have.

22      Q  Sir, is this the subpoena pursuant to which you are

23  appearing here, today?

24      A  Yes, it is.

25      Q  Sir, I believe that the subpoena also calls for the

## Page 7

1  production of documents, and those are set forth in the last

2  three pages of Exhibit 169.  Have you produced, to the staff,

3  all documents responsive to Exhibit 169?

4      A  Yes, I have.

5      Q  Sir, have you ever given testimony under oath

6  before?

7      A  No, I have not.

8      Q  All right, then let me — I'm sure your counsel has

9  covered a lot of this material with you beforehand, but just

10  sort of as a reminder, in this instance you're going to be --

11  we're speaking into microphones.  All this is going to be

12  recorded on the tape recorder, and then it will end up in a

13  booklet that will be provided to you, if you should decide to

14  purchase one.

15        Therefore, it's important that your responses be

16  oral, verbal responses.  Do you understand?

17      A  Yes, I do.

18      Q  Okay.  And it's also important that you speak up so

19  that the court reporter can hear you, and if you're not loud

20  enough, generally the court reporter will inform you.  So

21  okay?

22      A  All right.

23      Q  And if there's — I don't know if it's a problem

24  here, yet, in this regard, but often what happens is when I'm

25  asking questions people will anticipate and will start to

## Page 8

1  respond before I finish asking the question.  It's important

2  that you let me complete my question before you answer.  I'll

3  try to let you complete your answers before asking a further

4  question.  Does that sound fine?

5      A  Yes, it is.

6      Q  Okay.  If you don't understand a question, could

7  you let me know?

8      A  I will do so.

9      Q  Okay.  Otherwise, I'll assume that you understood

10  the question, okay?

11      A  I understand.

12      Q  Okay.  Could you also speak up a little, I notice

13  you seem to be a quiet talker.

14        Okay.  Sir, if at some point in time you've already

15  answered a question, we go on in the examination and you

16  think of something that you'd like to add, or some sort of a

17  clarification to what you've previously testified, let me

18  know and we'll go back and you can just add that information.

19  Okay?

20      A  Yes, I will.

21      Q  All right.  And sir, if sometimes when you're

22  asking questions you can think of a document that might

23  assist you in refreshing your memory, if you are aware of

24  such a document, let me know about that, okay?

25      A  I will attempt to do so.

# SEC'S DEPOSITION OF
# ERICK BELL

# TAKEN ON JANUARY 5, 2005

Depo.Bell.1.5.05

```
 1   UNITED STATES SECURITIES AND EXCHANGE COMMISSION
 2
 3   In the Matter of:        )
 4   NETOPIA, INC.            )   File No. SF-02846-A
 5                            )
 6
 7   WITNESS:  Erick Bell
 8   PAGES:     451 through 550
 9   PLACE:     Securities and Exchange Commission
10              44 Montgomery Street, Suite 2600
11              San Francisco, California
12   DATE:      Wednesday, January 5, 2005
13       The above-entitled matter came on for hearing, pursuant
14   to notice, at 9:45 a.m.
15
16
17
18
19
20
21
22
23
24             Diversified Reporting Services, Inc.
25                    (202) 467-9200
```

452

```
                              Depo.Bell.1.5.05
 1    APPEARANCES:

 2

 3    On behalf of the Securities and Exchange Commission:

 4          BRIAN HUCHRO, ESQ.

 5          SHEILA O'CALLAGHAN, ESQ.

 6          44 Montgomery Street, Suite 2600

 7          San Francisco, CA

 8

 9    On behalf of the Witness:

10          KAREN KENNARD, ESQ.

11          BRIAN CHUN, ESQ.

12          Bingham McCutchen

13          Three Embarcadero Center

14          San Francisco, CA 94111

15          (415) 393-2522

16

17

18

19

20

21

22

23

24

25
```

                                                              453

```
 1                      C O N T E N T S

 2

 3    WITNESS                                      EXAMINATION
```

Page 2

Depo.Bell.1.5.05

```
 4   Erick Bell                                          454

 5

 6   EXHIBITS:        DESCRIPTION                    IDENTIFIED

 7    99             Audit Committee Minutes 4/19/04       455

 8   100             Bad Debt Reserve Analysis             495

 9   101             E-mails/Press Release                 509

10   102             E-mail/Memo Audit Committee   520

11                   7/13/04

12   103             Audit Agenda                          529

13   104             E-mails for Audit 8/5/04              533

14

15

16

17

18

19

20

21

22

23

24

25
```

454

```
 1                 P R O C E E D I N G S

 2           MR. HUCHRO:  We're on the record at 9:45, on

 3   January 5th, 2005.

 4           Just for the record, I'm Brian Huchro, and with me

 5   is Sheila O'Callaghan.

 6   Whereupon,
```

Page 3

Depo.Bell.1.5.05

ERICK BELL

7
8    was called as a witness herein and, having been first duly
9    sworn, was examined and testified as follows:
10                              EXAMINATION
11            BY MR. HUCHRO:
12        Q    Mr. Bell, this is a continuation of your previous
13    testimony, which was pursuant to a subpoena, and I just want
14    to remind you, I'm not going to go through everything that we
15    went through the first time, that your testimony is still
16    under oath; do you understand that?
17        A    Yes.
18        Q    Great.  And then prior to opening the record you
19    were provided with a copy of the formal order, the memorandum
20    that's sitting in front of you.  Have you had an opportunity
21    to take a look at that?
22        A    Yes.
23        Q    Do you have any questions regarding that?
24        A    Are you referring to Exhibit 41?
25        Q    The formal order.  No, the formal order memo?

                                                             455

1        A    No.
2        Q    And then, also prior to the opening of the record,
3    you were provided with a copy of our standard form 1662,
4    which is marked as Exhibit Number 1.  Do you have any
5    questions regarding that?
6        A    No.
7            MR. HUCHRO:  And then if counsel could just
8    identify themselves, please?
9            MS. KENNARD:  Good morning, I'm Karen Kennard, from

Page 4

# DEPOSITION OF
# KATHY GEARHART

# TAKEN ON SEPTEMBER 12, 2006

KATHY GEARHART    September 12, 2006

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

--oOo--

IN RE NETOPIA, INC. SECURITIES)   Case No. C 04-3364
LITIGATION.                   )
_____ )


DEPOSITION OF

KATHY GEARHART

_____

Tuesday, September 12, 2006

(Pages 1 - 188)


REPORTED BY: KATHLEEN WILKINS, RPR, CRR, CSR 10068

(2001-386030)

LegaLink, A Merrill Communications Company      (800)   869-9132

35da1a02-15a5-4913-8851-de80a8c93c31

KATHY GEARHART   September 12, 2006

Page 2

```
 1                         INDEX
 2                  INDEX OF EXAMINATIONS
 3                                               PAGE
 4  EXAMINATION BY MR. KLEIN ...................    8
 5  AFTERNOON SESSION ..........................  132
 6                  INDEX OF EXHIBITS
 7  Gearhart             Description            Page
 8  Exhibit 1    E-mail from Jerome Anastase to ...   46
             Alan Lefkof and
 9           kathyg@netopia.com, dated
             January 5, 2004, with
10           attachment, Bates stamped
             NET_114734 through NET_114745 -
11           12 pages
12  Exhibit 2    E-mail from Jerome Anastase to ...   50
             Jayant Kadambi, Alan Lefkof,
13           David Kadish and William Baker,
             dated June 11, 2003, Bates
14           stamped NET_113792 through
             NET_113793 - 2 pages
15
    Exhibit 3    E-mail from Jerome Anastase to ...   51
16           Alan Lefkof dated January 12,
             2004, with attachment, Bates
17           stamped NET_114781 through
             NET_114798 - 18 pages
18
    Exhibit 4    E-mail from Jerome Anastase to ...   59
19           kokeeffe@netopia.com, dated
             January 7, 2004, Bates stamped
20           NET_114758 through NET_114759 -
             2 pages
21
    Exhibit 5    E-mail from Jerome Anastase to ...   69
22           Alan Lefkof, dated January 13,
             2004, Bates stamped NET_114822
23           through NET_114824 - 3 pages
24
25
```

LegaLink, A Merrill Communications Company    (800)  869-9132

35da1a02-15a5-4913-8851-de80a8c93c31

KATHY GEARHART    September 12, 2006

Page 3

INDEX OF EXHIBITS (Continued)

| Gearhart | Description | Page |
|---|---|---|
| Exhibit 6 | Document entitled, "Exhibit A" − . 14 pages | 80 |
| Exhibit 7 | E-mail from Kathy Gearhart to .... Marlene Grossenbacher, Beat Wittwer, Ame Zoell, Sascha Frei, dated December 3, 2003, Bates stamped NET_081236 − 1 page | 91 |
| Exhibit 8 | E-mail from Kathy Gearhart to .... Jerome Anastase, Alan Lefkof, dated December 3, 2003, Bates stamped NET_081231 through NET_081235 − 5 pages | 95 |
| Exhibit 9 | E-mail from Alan Lefkof to ....... Jerome Anastase dated January 9, 2003, Bates stamped NET_112942 − 1 page | 109 |
| Exhibit 10 | E-mail from Alan Lefkof to ....... Jerome Anastase, Alan Lefkof, dated January 20, 2003, Bates stamped NET_113005 through NET_113006 − 2 pages | 110 |
| Exhibit 11 | E-mail from Kathy Gearhart to .... Jerome Anastase, dated March 4, 2003, Bates stamped NET_113292 through NET_113294 − 3 pages | 117 |
| Exhibit 12 | E-mail from Alan Lefkof to ....... Jerome Anastase and Kathy Gearhart, dated April 30, 2003, Bates stamped NET_113633 through NET_113635 − 3 pages | 121 |

35da1a02-15a5-4913-8851-de80a8c93c31

KATHY GEARHART    September 12, 2006

Page 4

1                    INDEX OF EXHIBITS (Continued)
2       Gearhart                   Description            Page
3       Exhibit 13    String of e-mails beginning ......  122
               with an e-mail from Larry Tam to
4              Kathy Gearhart and Barbara
               Medina, dated March 21, 2003,
5              Bates stamped NET_113345 through
               NET_113350 - 6 pages
6

        Exhibit 14    E-mail from Jerome Anastase to ...  137
7              Beat.Wittwer@swisscom.com, dated
               November 27, 2003, Bates stamped
8              NET_117119 through NET_117121 -
               3 pages
9

        Exhibit 15    E-mail from Jerome Anastase to ...  145
10             Jayant Kadambi, Alan Lefkof, and
               David Kadish, dated June 20,
11             2003, Bates stamped NET_113851 -
               1 page
12

        Exhibit 16    E-mail from Jerome Anastase to ...  151
13             David Kadish, Kathy Gearhart and
               Alan Lefkof, dated December 4,
14             2003, Bates stamped NET_114704 -
               1 page
15

        Exhibit 17    E-mail from Jerome Anastase to ...  158
16             Alan Lefkof, dated December 17,
               2003, Bates stamped NET_117210
17             through NET_117211 - 2 pages
18      Exhibit 18    Letter to Sascha Frei and Peter ..  166
               Wyss, from Jerome Anastase,
19             dated January 26, 2004, Bates
               stamped NET 09564 through NET
20             09565 - 2 pages
21      Exhibit 19    Letter to Peter Wyss and Sascha ..  167
               Frei, dated January 27, 2004,
22             Bates stamped NET_067952 through
               NET_067954 - 3 pages
23
24
25

KATHY GEARHART    September 12, 2006

Page 5

1         QUESTION WITNESS INSTRUCTED NOT TO ANSWER

2                         PAGE    LINE

3     Exhibit 20    E-mail from Isabella Sio to ......  177
                    Alan Lefkof, dated December 18,
4                   2003, with attachment, Bates
                    stamped NET_123297 through
5                   NET_123300 - 4 pages

6                         ---o0o---

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# SEC'S DEPOSITION OF
# JONATHAN GUTHART

# TAKEN ON NOVEMBER 9, 2004

Depo.Guthart.11.9.04

1

 1   U.S. SECURITIES AND EXCHANGE COMMISSION

 2

 3   In the Matter of:              )

 4                                  )  File No. SF-02846-A

 5   NETOPIA INC.,                  )

 6

 7   WITNESS:   Jonathan Guthart

 8   PAGES:     1 through 284

 9   PLACE:     U.S. Securities & Exchange Commission

10              44 Montgomery Street

11              Suite 2600, A-2602

12              San Francisco, California

13

14   DATE:      Tuesday, November 9, 2004

15

16

17

18       The above-entitled matter came on for hearing, pursuant

19   to notice, at 9:50 a.m.

20

21

22

23

24              Diversified Reporting Services, Inc.

25                      (202) 467-9200

Depo.Guthart.11.9.04

2

1    APPEARANCES:

2

3        On behalf of the Securities and Exchange Commission:

4            BRIAN A. HUCHRO, Staff Attorney

5            SHEILA O'CALLAGHAN, Staff Attorney

6            United States Securities and Exchange Commission

7            Office of Enforcement

8            44 Montgomery Street, Suite 2600

9            San Francisco, California  94104

10           (415) 705-2458, voice; (415) 705-2331, fax

11

12       On behalf of Deponent Jonathan Guthart:

13           DALE E. BARNES, Attorney at Law

14           BRIAN CHUNG, Attorney at Law

15           Bingham McCutchen LLP

16           Three Embarcadero Center

17           San Francisco, California  94111-4067

18           (415) 393-2522, voice; (415) 393-2286, fax

19

20           DAVID WAGNER, Attorney at Law

21           KPMG LLP

22           757 Third Avenue

23           New York, New York  10017

24           (212) 909-5842, voice; (212) 909-5477, fax

25

3

1                        I N D E X

2

Page 2

Depo.Guthart.11.9.04

3

4    WITNESS:                          EXAMINATION

5

6    Jonathan Guthart                      4, 131

7

8

9

10   EXHIBITS                                        PAGE

11

12   1         SEC Form 1662                             4

13   42        Subpoena for testimony and

14             documents                                 6

15   43        Notes from conversation with

16             Mr. Baker, Mr. Lefkof, and Mr.

17             Kadish                                  184

18   44        Notes from April 16th                   222

19   45        E-mail                                  254

20   46        Witness' Notes                          272

21   47        Minutes of Meeting of Audit

22             Committee, Dated July 6, 2004           275

23

24

25



                                                      4

1                    P-R-O-C-E-E-D-I-N-G-S

2                    (SEC Exhibit 1 was marked for

3                        identification.)

4          MR. HUCHRO:  We are on the record.  It's the 9th of

5    November at 9:15 in the morning.  I am Brian Huchro and this

Depo.Guthart.11.9.04

6    is Sheila O'Callaghan.

7         Mr. Guthart, could you raise your right hand,

8    please?

9    Whereupon,

10                   JONATHAN GUTHART,

11   called as a witness by the Commission, having been duly

12   sworn, was examined and testified as follows:

13                   EXAMINATION

14        MR. HUCHRO:  Thank you.

15        BY MR. HUCHRO:

16        Q    Could you please state your full name and spell

17   your name for the record?

18        A    Jonathan Ross Guthart, J-o-n-a-t-h-a-n R-o-s-s

19   G-u-t-h-a-r-t.

20        Q    Thanks.

21             As I mentioned, Ms. O'Callaghan and myself are

22   officers of the Commission for the purposes of this

23   proceeding.  Michael Dicke, D-i-c-k-e, may be joining us

24   later in the day.

25             This is an investigation by the United States


                                                            5

1    Securities and Exchange Commission in the Matter of Netopia

2    Incorporated to determine whether there have been violations

3    of certain provisions of the federal securities laws.

4    However, the facts developed in this investigation might

5    constitute violations of other federal or state civil or

6    criminal laws.

7             Prior to the opening of the record you were

8    provided with a copy of the formal Order of Investigation in

Depo.Guthart.11.9.04

9   this matter.  It will be available for you during your

10  examination in this course of this proceeding.

11          Mr. Guthart, have you had an opportunity to review

12  the formal order?

13      A   I have.

14      Q   Do you have any questions?

15      A   Not at this time.

16      Q   Thanks.

17          Additionally, prior to opening the record you were

18  provided with a copy of the Commission's Supplemental

19  Information form.  A copy of that notice has been marked as

20  Exhibit Number 1.  Have you had an opportunity to read that,

21  Mr. Guthart?

22      A   I have.

23      Q   Do you have any questions regarding that?

24      A   Not at this time.

25      Q   Thanks.

6

1           Mr. Guthart, are you represented by counsel?

2       A   I am.

3           MR. HUCHRO:   Would counsel please identify

4   themselves?

5           MR. BARNES:   My name is Dale Barnes of Bingham

6   McCutchen.  And with me is Brian Chung also of Bingham

7   McCutchen.  And also present is David Wagner of KPMG.

8           MR. HUCHRO:  Very good.

9           BY MR. HUCHRO:

10      Q   Mr. Guthart, do you understand that the statutes

11  set forth in Exhibit 1 provide criminal penalties for

Page 5

# SEC'S DEPOSITION OF
# BARBARA JOY MEDINA MARTINEZ

# TAKEN ON MARCH 1, 2005

Multi-Page™

Page 3

| | |
|---|---|
| 1 UNITED STATES SECURITIES AND EXCHANGE COMMISSION | |
| 2 | |
| 3 In the Matter of:    ) | |
| 4 NETOPIA, INC.    ) File No. SF-02846-A | |
| 5    ) | |
| 6 | |
| 7 WITNESS:  Barbara Joy Medina Martinez | |
| 8 PAGES:    1 through 79 | |
| 9 PLACE:    Securities and Exchange Commission | |
| 10    44 Montgomery Street, Suite 2600 | |
| 11    San Francisco, California | |
| 12 DATE:    Tuesday, March 1, 2005 | |
| 13    The above-entitled matter came on for hearing, pursuant | |
| 14 to notice, at 2:00 p.m. | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24    Diversified Reporting Services, Inc. | |
| 25    (202) 467-9200 | |

```
1                    C O N T E N T S
2
3 WITNESS                              EXAMINATION
4 Barbara Joy Medina Martinez                 4
5
6 EXHIBITS:      DESCRIPTION          IDENTIFIED
7  174    Subpoena w/attachments           6
8  175    Copy of Shipping Order          44
9  176    Financials for D. Kadish        66
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
1 APPEARANCES:
2
3 On behalf of the Securities and Exchange Commission:
4      SHEILA O'CALLAGHAN, ESQ.
5      BRIAN HUCHRO, ESQ.
6      44 Montgomery Street, Suite 2600
7      San Francisco, CA
8
9 On behalf of the Witness:
10      HOWARD S. CARO, ESQ.
11      L. MICHAEL LIFTIK, ESQ.
12      Heller Ehrman
13      333 Bush Street
14      San Francisco, CA 94104
15      (415) 772-6487
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
1              P R O C E E D I N G S
2      MR. HUCHRO: We're on the record at 2:05 on March
3 1st, with -- March 5th -- excuse me, March 1st, 2005, with
4 Barbara Medina.
5      Ms. Medina, could you please raise your right hand
6 for me?
7      Whereupon,
8           BARBARA JOY MEDINA MARTINEZ
9 was called as a witness herein and, having been previously
10 duly sworn, was examined and testified as follows:
11              EXAMINATION
12      BY MR. HUCHRO:
13      Q  Thanks.  Would you please state your full name and
14 spell it for the record?
15      A  Barbara Joy Medina.  I just got married, so it is
16 now Martinez.
17      Q  Okay.  And could you spell that for us?
18      A  B-a-r-b-a-r-a  J-o-y  M-a-r-t-i-n-e-z.
19      Q  Thank you.  Just for identification purposes, I'm
20 Brian Huchro, and with me is Sheila O'Callaghan, and we are
21 both officers of the Commission for purposes of this
22 proceeding.
23      This is an investigation by the United States
24 Securities and Exchange Commission, in the matter of Netopia,
25 Inc., to determine whether there have been violations of
```

Multi-Page™

Page 5

1  certain provisions of the federal securities laws.
2      However, the facts developed in this investigation
3  might constitute violations of other federal or state, civil
4  or criminal laws.
5      Prior to the opening of the record you were
6  provided with a copy of the formal order of investigation in
7  this matter. It will be available for your examination
8  during the course of the proceeding.
9      Ms. Medina, do you have any -- would you prefer
10  Medina or Martinez?
11  A  Martinez.
12  Q  Okay. Ms. Martinez, have you had an opportunity to
13  review the formal order?
14  A  Yes.
15  Q  Do you have any questions?
16  A  No.
17  Q  Okay. In addition, prior to the opening of the
18  record, you were provided with a copy of the Commission's
19  supplemental information form, a copy of that has been
20  previously marked Exhibit Number 1.
21      Have you had an opportunity to read that?
22  A  Yes.
23  Q  Do you have any questions about that?
24  A  No.
25  Q  Ms. Martinez, are you represented by counsel today?

Page 6

1  A  Yes.
2      MR. HUCHRO: Would counsel please identify
3  themselves?
4      MR. CARO: Howard Caro and Michael Liftik, of
5  Heller Ehrman, on behalf of the witness.
6      MR. HUCHRO: Before we started I had the court
7  reporter mark a six-page document as Exhibit Number 174. The
8  first couple pages are a two-page letter, signed by myself.
9  The third page is a subpoena for documents and testimony, and
10  then an attachment, a three-page attachment requesting
11  production of certain documents.
12      (SEC Exhibit No. 174 was marked for
13      identification.)
14  BY MR. HUCHRO:
15  Q  I'm going to hand you a copy of that right now,
16  give you an opportunity to look at that, and a copy to
17  counsel. And if you can just take a couple of minutes, or as
18  long as you like, and let me know when you've had an
19  opportunity to look at that document?
20      Have you seen document, Exhibit 174 before?
21  A  The subpoena, yes.
22  Q  Okay. And is the subpoena, on the third page, the
23  subpoena for which you're testifying here, today?
24  A  Yes.
25  Q  And the subpoena also called for the production of

Page 7

1  certain documents, as included on the attachment, the last
2  three pages of the subpoena; do you see that?
3  A  Yes.
4  Q  Did you tender all documents that you believe were
5  responsive to the SEC's request?
6  A  Everything that I had access to.
7  Q  Okay, great. Ms. Martinez, have you ever given
8  testimony under oath before?
9  A  Yes.
10  Q  How many times?
11  A  Once.
12  Q  Well, I'll just go through a couple of background
13  things for SEC testimony. You need to speak up and give oral
14  answers. Shaking the head, and uh-huhs, and huh-uhs don't
15  translate. As you see, this is being tape recorded, so it's
16  important that you let me finish my question before you
17  answer, and I'll let you finish your answer before I ask you
18  the next question. Does that make sense?
19  A  Uh-hum, yes.
20  Q  Okay. If at some point you don't understand a
21  question that I ask, just let me know and I'll rephrase the
22  question so you do understand it. Make sense?
23  A  Okay.
24  Q  Okay. In addition, sometimes you may recall
25  additional information as we're talking, about a question

Page 8

1  you've already answered. If that happens and you recollect
2  additional information, just stop me at that point and we'll
3  deal with your additional recollection at that point. Make
4  sense?
5  A  Yes.
6  Q  Okay. Are you taking any medications or drugs that
7  may make it difficult for you to understand and answer my
8  questions today?
9  A  No.
10  Q  Are you ill today?
11  A  No.
12  Q  Is there any reason you can think of why you will
13  not be able to answer my questions fully and truthfully?
14  A  No.
15  Q  Have you ever given testimony in an SEC proceeding
16  or a proceeding before one of the stock exchanges?
17  A  No.
18  Q  An arbitration proceeding?
19  A  No.
20  Q  Could you please state your date of birth for the
21  record?
22  A  June 16th, 1958.
23  Q  Okay. And your home address?
24  A  . . .
25  Q  Can you spell that, please?

REDACTED

*SEC Info*   Home    Search    My Interests    Help    Sign In    *Please Sign In*

# Netopia Inc · 8-K · For 9/10/04

**Filed On 9/16/04 6:22am ET   ·   SEC File 0-28450   ·   Accession Number 1193125-4-157272**

| Find | | in | this filing. | Show | docs searched | and | every "hit". |

Help...   *Wildcards:* ? (any letter), * (many).  *Logic:* for Docs: & (and), | (or); for Text: | (anywhere), "(&)" (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs | Issuer | Agent |
|--------|--------|--------|-----------|----------|--------|-------|
| 9/16/04 | Netopia Inc | 8-K{3,4,9} | 9/10/04 | 2:17 | | 1193125 |

---

**Current Report   ·   Form 8-K**
**Filing Table of Contents**

| Document/Exhibit | | Description | Pages | Size |
|------------------|--|-------------|-------|------|
| **1:** | 8-K | Current Report | **HTML** | **77K** |
| 2: | EX-99.1 | Press Release | HTML | 69K |

---

**8-K   ·   Current Report**



EXHIBIT
L

*This is an EDGAR HTML document rendered as filed. [ Alternative Formats ]*

---

| Form 8-K |

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

---

## FORM 8-K

---

### CURRENT REPORT

### PURSUANT TO SECTION 13 OR 15(d) OF THE
### SECURITIES EXCHANGE ACT OF 1934

Date of report (Date of earliest event reported): <u>September 10, 2004</u>

---

# NETOPIA, INC.
(Exact Name of Registrant as Specified in Charter)

---

| <u>Delaware</u> | 0-28450 | 94-3033136 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 6001 Shellmound Street, 4th Floor, Emeryville, California | 94608 |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

Registrant's telephone number, including area code: <u>(510)</u> 420-7400

Same
(Former name or Former Address, if Changed Since Last Report.)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

---

**Item 3.01. Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing**

As previously disclosed on August 25, 2004 in Netopia, Inc.'s ("*Netopia*") Form 8-K, Netopia's common stock is subject to delisting from The Nasdaq Stock Market because Netopia has not filed its Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2004. Netopia's common stock currently trades under the symbol NTPAE, reflecting Nasdaq's convention for companies making delayed public filings. Although Netopia had requested an oral hearing before the Nasdaq Listing Qualifications Panel to seek an extension of time before its common stock is delisted in order to file the Form 10-Q, Netopia now has withdrawn such request and has requested a decision on the basis of its written submissions.

Because of the ongoing review by Netopia's audit committee described below, the resignation of KPMG LLP ("*KPMG*") described below as Netopia's auditors and the need for Netopia to engage new auditors, Netopia is unable to determine at this time when the restatements described below in Item 4.02 will be completed or when the Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2004 or any future quarterly or annual reports will be filed with the Securities and Exchange Commission. As a result, Netopia believes that it is likely that its common stock will be delisted from The Nasdaq Stock Market in the near future.

**Item 4.01. Changes in Registrant's Certifying Accountant**

On September 10, 2004, the KPMG partner in charge of its engagement as the independent registered public accounting firm for Netopia orally informed the Chairman of Netopia's audit committee that KPMG was resigning such engagement effective as of such date.

The reports of KPMG on Netopia's consolidated financial statements for the fiscal years ended September 30, 2003 and 2002 did not contain an adverse opinion or disclaimer of opinion and were not qualified or modified as to uncertainty, audit scope or accounting principles.

During the fiscal years ended September 30, 2003 and 2002, and the subsequent interim period from October 1, 2003 through September 10, 2004, (i) there were no disagreements between Netopia and KPMG on any matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure, which disagreements, if not resolved to the satisfaction of KPMG, would have caused KPMG to make reference to the subject matter of the disagreement(s) in connection with its report on the consolidated financial statements for such periods, other than as described in item (1) in the next paragraph and (ii) there were no "*reportable events*" as such term is defined in Item 304(a)(1)(v) of Regulation S-K, other than as described in item (2) in the next paragraph.

(1) Prior to KPMG's resignation, KPMG requested on September 8, 2004 that Netopia's audit committee provide KPMG with certain information, and the audit committee and KPMG were engaged in an ongoing discussion concerning such information, which consists of documents over which the Company had asserted privilege as a basis for not providing KPMG with access to such documents. This matter had not been resolved at the time of KPMG's resignation. According to KPMG, if all or some portion of such information were not provided as requested, KPMG's auditors' report would have included an audit scope limitation with respect to this matter. (2) Prior to its resignation, KPMG had advised the Netopia audit committee that information provided by the audit committee, if further investigated, (i) might materially impact the fairness or reliability of its previously issued audit reports and the underlying financial statements and (ii) might cause it to be unwilling to rely on management's representations. Because KPMG resigned before conducting such further investigation, it did not reach any conclusions and accordingly they were not resolved to KPMG's satisfaction at the time of its resignation.

Prior to September 10, 2004, KPMG had not previously advised management or Netopia's audit committee of its intention to resign its engagement as Netopia's independent registered public accounting firm. The resignation was not sought or recommended by Netopia's audit committee. The audit committee has commenced an immediate search for a new independent accountant.

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**

As previously disclosed on August 17, 2004 in Netopia's filing on Form 12b-25, Netopia has delayed the filing of its Quarterly Report on Form 10-Q for the third fiscal quarter ended June 30, 2004 due to an ongoing review by Netopia's audit committee of Netopia's accounting and reporting practices, including the appropriateness and/or timing of revenue recognition of software license fees in two transactions with a single software reseller customer. Although the overall audit committee review is not yet complete, the review relating to these two transactions is complete, and Netopia determined on September 14, 2004 that Netopia will restate its financial statements for the fiscal quarter ended June 30, 2002 and for each subsequent fiscal quarter and fiscal year through March 30, 2004 and will revise previously released preliminary financial results for the quarter ended June 30, 2004. Accordingly, the previously filed financial statements for such periods should no longer be relied upon. At the time of KPMG's resignation discussed above in Item 4.01, KPMG also advised Netopia that, based on information provided to KPMG by Netopia's audit committee, in KPMG's view, the audited financial statements for the fiscal year ended September 30, 2003 should no longer be relied upon.

The known restatements principally involve expected adjustments to Netopia's results of operations and balance sheet arising out of questions regarding the appropriateness and/or timing of revenue recognition relating to two software license transactions with a single software reseller customer that are described below.

2003 Software Reseller Transaction

In one of the software license transactions, Netopia recorded in the fourth fiscal quarter of the fiscal year ended September 30, 2003 an account receivable of $750,400 and recognized $670,000 of Web platform license revenue, together with $80,400 of deferred revenue for maintenance services related to this license sale. It is anticipated that the restatements will include the elimination of the $670,000 of Web platform license revenue recorded in such fourth fiscal quarter, the elimination of the $80,400 of deferred revenue to be recognized in subsequent quarters, and the elimination of the account receivable from Netopia's balance sheet as of September 30, 2003. It is also anticipated that Netopia will file a Form 10K/A for the fiscal year ended September 30, 2003 to reflect these changes. It is further anticipated that Netopia will file Forms 10Q/A for (i) the fiscal quarter ended December 31, 2003 to reflect the elimination of $20,100 in Web platform maintenance services revenue recognized in the unaudited condensed consolidated statement of operation for such quarter related to this transaction, and to eliminate the account receivable of $750,400 and deferred revenue of $60,300 shown on the unaudited condensed consolidated balance sheet for such quarter and (ii) the fiscal quarter ended March 31, 2004 to reflect the elimination of $20,100 in Web platform maintenance services revenue recognized in the unaudited condensed consolidated statement of operations for such quarter related to this transaction, and to eliminate the account receivable of $750,400 and deferred revenue of $40,200 shown on the unaudited condensed consolidated balance sheet for such quarter. It is also anticipated that these Forms 10-Q/A will include additional changes related to the 2002 Software Reseller Transaction described below.

As previously disclosed on July 22, 2004 in Netopia's filing on Form 8-K, Netopia announced that its operating expenses for the third fiscal quarter ended June 30, 2004 would include a specific bad debt charge of the full amount ($750,400) of the previously recorded account receivable relating to this transaction. Due to the restatements described above, there will be no bad debt charge for the third fiscal quarter.

On August 26, 2004, Netopia received a payment of $337,500 from the software reseller customer. Netopia currently is det