IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PETER FRANKL and<br>JOHN DECKARD, | §<br>§<br>§ | |
| Plaintiffs, | §<br>§ | CIVIL ACTION NO. 3:05-CV-1757-AH<br>ECF |
| v. | §<br>§<br>§ | |
| NETOPIA, INC. and ALAN LEFKOF, | §<br>§<br>§ | |
| Defendants. | § | |

**DEFENDANTS' MOTION FOR PROTECTION OR, ALTERNATIVELY,
MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL SUMMARY JUDGMENT**

Respectfully submitted,

Roland M. Juarez
State Bar No. 24008411
rjuarez@akingump.com
Stephanie K. Osteen
State Bar No. 24002713
sosteen@akingump.com
Joshua Flynt
State Bar No. 24053204
jflynt@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Telephone:     (214) 969-2800
Facsimile:     (214) 969-4343

ATTORNEYS FOR DEFENDANTS



# TABLE OF CONTENTS

I.  Introduction ...................................................................................................................1

II. Statement of Facts .........................................................................................................3

    A.  The ICC Transactions ...........................................................................................4

        1.  The Chicago Transaction ...........................................................................4

        2.  The Philadelphia Transaction.....................................................................5

    B.  The True Nature Of The Philadelphia Transaction Is Revealed .............................6

    C.  The Audit Committee Retains Morrison & Foerster, LLP .....................................7

    D.  The Board Of Directors Votes To Terminate Plaintiffs' Employment ....................7

    E.  The SEC Investigation And Securities Class Actions ............................................8

    F.  This Lawsuit And The Improper Discovery Plaintiffs Are Now Seeking ..............8

III. Argument and Authorities .............................................................................................9

    A.  Plaintiffs Should Be Barred From Seeking Any Further Discovery
        Into Alleged Securities Fraud By Netopia Because It Is Irrelevant,
        Annoying, Oppressive, Unduly Burdensome, Harassing And Being
        Sought For Improper Purposes ..............................................................................9

    B.  Alternatively, The Court Should Grant Netopia Leave To Move For
        Partial Summary Judgment On Plaintiffs' Whistleblower Claims.........................12

IV. Conclusion ..................................................................................................................16

## TABLE OF AUTHORITIES

*AMS Staff Leasing, N.A., Ltd. v. Assoc. Contract Truckmen, Inc.*,
    No. 3:04-CV-1344-D, 2006 WL 1096777 (N.D. Tex. Apr. 26, 2006) .............................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).............................................................................................15

*Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*,
    910 F.2d 404 (5th Cir. 1990) ............................................................................10

*Williams ex rel. Williams v. Greenlee*,
    210 F.R.D. 577 (N.D. Tex. 2002) ......................................................................10

*Williams v. Roy O. Martin Lumber Co. LLC*,
    No. 02-30401, 2002 WL 31319337 (5th Cir. Sept. 30, 2002) .............................10

### <u>Statutes and Rules</u>

15 U.S.C. 78l ..............................................................................................................13

18 U.S.C. § 1514A .............................................................................................1, 8, 12, 13

Fed. R. Civ. P. 26© ....................................................................................................9

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants Netopia, Inc. ("Netopia") and Alan Lefkof (collectively, "Defendants") move for an order of protection precluding Plaintiffs Peter Frankl and John Deckard from seeking any further discovery into matters relating to securities fraud allegedly committed by Netopia and/or its officers, directors, or agents, including without limitation, a federal investigation of Netopia initiated by the Securities and Exchange Commission ("SEC") in August 2004, and multiple shareholder class action lawsuits alleging securities fraud by Netopia and its officers filed between August and September 2004.

In the alternative, Defendants move, pursuant to Federal Rule of Civil Procedure 56(b) and Local Civil Rule 56.2(b), for an order permitting Defendants to file a motion for summary judgment limited to Plaintiffs' claims for violation of the whistleblower protections of Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, on the ground that, while discovery is on-going with respect to Plaintiffs' other claims, there are no material facts in dispute with respect to Plaintiffs' whistleblower claims and that the Court may enter judgment on behalf of Defendants as a matter of law, thereby mooting Plaintiffs' alleged need for the irrelevant discovery they seek.

## I. INTRODUCTION

This motion presents the question of how far the Court must go in allowing a party to engage in a far-reaching, unnecessary fishing expedition. Despite having had over ten months to conduct discovery relevant to their claims, Plaintiffs recently began demanding documents and deposition testimony concerning alleged violations of securities laws by Netopia. This eleventh-hour discovery might be appropriate if this case was a securities class action. It is not. This case is about whether Netopia violated Sarbanes-Oxley's protections for whistleblowers when it terminated Plaintiffs' employment.

The central issues relating to this narrow claim are undisputed. Plaintiffs admit they intentionally manipulated two software sales transactions with one of Netopia's customers, Interface Computer Company ("the ICC transactions"), including physically altering documents and concealing information from Netopia's accounting staff, in a manner that materially impacted Netopia's reported financial results and caused Netopia to improperly recognize revenue. Plaintiffs further admit that they confessed to this behavior during an internal investigation conducted by Netopia's Audit Committee concerning the revenue recognized by Netopia in connection with the ICC transactions. After admitting their misconduct, Plaintiffs were fired.

In this lawsuit, Plaintiffs allege they were unlawfully terminated in retaliation for engaging in conduct protected by the whistleblower protection provisions of the Sarbanes-Oxley Act. But rather than conducting any discovery relevant to their retaliatory discharge claims (such as deposing the decision makers), Plaintiffs are, instead, now intent on re-litigating the securities class action that ensued after Netopia announced it might need to restate its revenue in July 2004. Plaintiffs recently propounded written discovery, served three subpoenas, and noticed five depositions of individuals who, as part of the prior SEC investigation or private securities class action lawsuit, provided testimony concerning the revenue recognized by Netopia in connection with the ICC transactions. All of this discovery is wasteful, annoying, oppressive, and unduly burdensome. Moreover, because this discovery is not reasonably calculated to lead to the discovery of any material facts in this lawsuit, Defendants can only conclude that it is being sought for the improper purpose of harassing Defendants and unnecessarily escalating litigation costs.

Netopia respectfully requests that the Court put a stop to Plaintiffs' efforts to seek unnecessary and expensive discovery, and therefore moves pursuant to Rule 26(c)(1) for an order requiring Plaintiffs to cease any further discovery into any alleged securities fraud committed by Netopia or its officers, directors, and managing agents. Alternatively, Netopia asks the Court, pursuant to Local Civil Rule 56.2(b), to grant it leave to file an immediate motion for partial summary judgment limited to Plaintiffs' whistleblower claims, with leave to file a second motion for summary judgment with respect to Plaintiffs' other claims after the close of discovery. There are no material issues of fact in dispute with respect to Plaintiffs' whistleblower claims, and it will conserve the resources of both the parties and the Court to decide this issue now rather than permitting Plaintiffs to continue seeking discovery in this area.

## II. STATEMENT OF FACTS

The key facts surrounding Plaintiffs' whistleblower claims are undisputed. Netopia is a publicly traded company based in Emeryville, California. (Ex. A, Declaration of Alan Lefkof ("Lefkof Decl.") ¶ 2, App. at 1.) Netopia develops, markets, and supports a variety of broadband and wireless equipment and service delivery software. (Ex. A, Lefkof Decl. ¶ 2, App. at 1.)

At the time of his termination in September 2004, Plaintiff Peter Frankl was employed by Netopia as its Vice President of Worldwide Enterprise Sales and Marketing. (Ex. B, Deposition of Peter Frankl ("Frankl Dep.") at 18, App. at 5.) At the time of his termination in September 2004, Plaintiff John Deckard was employed as the Manager of Software Sales, Western Region. (Ex. C., Deposition of John Deckard ("Deckard Dep.") at 19, App. at 18.) In Deckard's capacity, he reported to Frankl. (Ex. C, Deckard Dep. at 19, App. at 18.)

**A.     The ICC Transactions.**

**1.     The Chicago Transaction.**

In May 2002, Plaintiffs negotiated a transaction whereby ICC would purchase a Netopia software and "maintenance" package, and then turn around and sell the package to the Chicago public school district.   At the conclusion of Plaintiffs' negotiations with ICC, ICC sent a purchase order reflecting its intent to purchase $1,593,000 of software and maintenance, which would be delivered to the Chicago public schools.  (*See* Ex. D, ICC Purchase Order dated 5/23/2002, App. at 25; Ex. C, Deckard Dep. at 139-40, App. at 19.)

The original ICC purchase order, dated May 23, 2002, provides that "Payment will be broken into 2 payments" and that the "Second payment will be made upon receipt of 2nd [purchase order] from Board of Education . . . [Purchase order] should be received in July and payment can be made in August." (*See* Ex. D, ICC Purchase Order dated 5/23/2002, App. at 25; Ex. C, Deckard Dep. at 139-40, App. at 19.)  In other words, this purchase order indicates that, after making an initial payment, ICC did not have to pay the balance due until ICC actually received a subsequent purchase order from the Chicago public schools.   When Plaintiffs submitted this purchase order to Netopia headquarters for processing, Netopia's order management department rejected the purchase order because it contained contingent terms.  (Ex. B, Frankl Dep. at 205, App at. 11; Ex. C, Deckard Dep. at 147-48, App. at 20.)

Instead of securing a new purchase order for the sale without contingent terms, Deckard *whited-out* the conditional terms from the original purchase order (with Frankl's knowledge and consent) and re-submitted the altered document.  (*See* Ex. E, Altered ICC Purchase Order dated 5/23/2002, App. at 27; Ex. B, Frankl Dep. at 205-08, App. at 11-12; Ex. C, Deckard Dep. at 148-51, 156-57, App. at 20-22.)  In addition, the "Ship to" information from the purchase order that

4

indicated that Chicago school district was the intended recipient of Netopia's product was removed. (*See* Ex. E, Altered ICC Purchase Order dated 5/23/2002, App. at 27.) Thus, on the face of the altered purchase order, it appeared ICC had placed an order for the full value of the software without any conditions or reliance on third parties to complete the order.

Frankl also altered the terms of the arrangement with ICC in another significant way. A few days after the altered purchase order was submitted to Netopia's accounting department, he memorialized a "side agreement" with ICC in which he agreed with ICC executives that, although the purchase order indicated that the Chicago public schools would be entitled to one year of maintenance on the Netopia software, the Company would provide *two years* of maintenance. (*See* Ex. F, Email from Peter Frankl dated June 4, 2002, App. at 28; Ex. B, Frankl Dep. at 220-25, App. at 13-14.) This extra year of maintenance (had it been disclosed) would have required Netopia to defer additional revenue.

### 2. The Philadelphia Transaction.

Next, Frankl began working on another deal with ICC, this time to supply software to the Philadelphia public school system. As early as July 2003, Frankl was engaged in discussions with ICC about a sale to the Philadelphia school system. (Ex. B, Frankl Dep. at 139, App. at 6.) By the end of September 2003, Frankl had reached an agreement to sell ICC a second software package for about $750,000. (Ex. B, Frankl Dep. at 156-57, App. at 10.) The transaction was conditional on ICC receiving a purchase order from the Philadelphia public schools. (Ex. B, Frankl Dep. at 148, App. at 8.) Frankl, however, concealed the terms of the deal he had supposedly finalized with ICC as non-contingent from David Kadish, then Netopia's General Counsel – which ultimately lead Kadish to draft a form of purchase order reflecting an

unconditional final transaction with ICC. (*See* Ex. G, ICC Purchase Order dated 9/29/03, App. at 29; Ex. B, Frankl Dep. at 154-57, App. at 10.)

The purchase order supposedly consummating the Philadelphia Transaction did not reflect any contingencies. (*See* Ex. G, ICC Purchase Order dated 9/29/03, App. at 29.) Yet, Frankl knew the transaction was in fact contingent, and, on October 7, 2003, Frankl received a side letter from ICC confirming that the purchase order was "only valid upon ICC's receipt of a Purchase Order from the Philadelphia Public Schools." (*See* Ex. H, Letter from David R. Andalcio dated October 7, 2003, App. at 30; Ex. B, Frankl Dep. at 147-49, App. at 8.) Frankl did not provide a copy of this letter to Netopia's accounting department, or to Lefkof or Kadish. (Ex. B, Frankl Dep. at 150, App. at 9.) Rather, Frankl placed the letter in his desk and said nothing. (Ex. B, Frankl Dep. at 150, App. at 9.) Frankl also encouraged ICC to submit documentation to Netopia's auditors, KPMG, that falsely confirmed ICC owed the full balance of the purchase order. (Ex. B, Frankl Dep. at 226-29, App. at 15.)

### B. The True Nature Of The Philadelphia Transaction Is Revealed.

Netopia delivered the software to ICC in October 2003, but payment was not forthcoming. (Ex. I, Declaration of David Kadish ("Kadish Decl.") ¶ 5, App. at 31.) Accordingly, during the fall of 2003 through the first half of 2004, Netopia was engaged in efforts to collect payment on the transaction. (Ex. I, Kadish Decl. ¶ 5, App. at 31.) Netopia continued its efforts to collect on the original receivable during the last two weeks of June 2004. (Ex. I, Kadish Decl. ¶ 5, App. at 31.)

Then, on July 2, 2004, ICC's outside counsel informed Netopia that ICC believed it did not owe Netopia any money until ICC received a purchase order and subsequent payments from the Philadelphia public school system. (Ex. I, Kadish Decl. ¶¶ 6, 7, App. at 31-32.) To support

6

its position, ICC's attorney presented a copy of the October 7, 2003 side agreement that ICC had sent to Frankl (and that Frankl had kept hidden in his desk drawer). (Ex. I, Kadish Decl. ¶ 7, App. at 32.) Having never seen the document before, and realizing that, if the Philadelphia Transaction was in fact contingent, there could be an impact on Netopia's reported financial results, Kadish immediately informed Netopia President and Chief Executive Office Alan Lefkof about the existence of the side letter, and recommended that he promptly discuss the matter with the Audit Committee of Netopia's Board of Directors. (Ex. I, Kadish Decl. ¶ 7, App. at 32.)

### C. The Audit Committee Retains Morrison & Foerster, LLP.

Responding to the possibility of future government investigation and litigation, in July 2004, the Audit Committee initiated an investigation and retained the law firm of Morrison & Foerster LLP to provide assistance and legal guidance in the face of potential claims. (Ex. J, Declaration of Howard Slayen ("Slayen Decl.") ¶¶ 5, 6, App. at 36.) Pursuant to this engagement, Morrison & Foerster collected and reviewed documents and conducted witness interviews from approximately July 2004 through September 2004. (Ex. K, Martin Decl. ¶ 4, App. at 38.) At the conclusion of its investigation, Morrison & Foerster presented its findings and legal advice to the Audit Committee. (Ex. J, Slayen Decl. ¶ 6, App. at 36; Ex. K, Martin Decl. ¶ 5, App. at 38.)

### D. The Board Of Directors Votes To Terminate Plaintiffs' Employment.

On or around September 14, 2004, the Audit Committee conferred with Netopia's entire Board of Directors and described the results of its investigation. (Ex. J, Slayen Decl. ¶¶ 7, 8, App. at 36-37.) Based on the information reported by the Audit Committee concerning Plaintiffs' actions with respect to the ICC transactions, the Board of Directors voted unanimously to terminate Plaintiffs' employment. (Ex. J, Slayen Decl. ¶ 8, App. at 36-37.) The Board of

Directors instructed Netopia's President and Chief Executive Officer, Alan Lefkof, to carry out the terminations, and on September 20, 2004, Plaintiffs were fired. (Ex. A, Lefkof Decl. ¶ 8, App. at 36-37.)

 **E. The SEC Investigation And Securities Class Actions.**

Completely apart from this lawsuit and the legal issues involved herein, one month into the above mentioned Morrison & Foerster investigation, during August 2004, the San Francisco District Staff of the SEC initiated an investigation into Netopia's accounting and financial results. (Ex. I, Kadish Decl. ¶ 8, App. at 32.) In addition, the first in a series of federal securities class action lawsuits was filed against Netopia on August 17, 2004. (Ex. I, Kadish Decl. ¶ 8, App. at 32.). The primary focus in the SEC investigation and class action lawsuits was whether Netopia committed securities fraud by improperly recording revenue from certain sales, including the Chicago and Philadelphia transactions – the question at issue was *not* whether Plaintiffs were terminated in violation of Sarbanes-Oxley (or any other law).

 **F. This Lawsuit And The Improper Discovery Plaintiffs Are Now Seeking**

On August 31, 2005, Plaintiffs filed the present lawsuit against Defendants alleging retaliation under the whistleblower protection provisions of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1541A. (Docket Entry No. 1.) On November 28, 2006, Plaintiffs amended their complaint to include additional claims for breach of contract against Netopia and alleged defamation and civil conspiracy against Defendants. (Docket Entry No. 34.)

Discovery in this case commenced on October 16, 2006. Ten months later, on July 24, 2007, Plaintiffs propounded over 230 discovery requests seeking information concerning the fact and timing of revenue recognition by Netopia for the ICC transactions and another unrelated software sales transaction with a different customer, Swisscom. (*See* Ex. L, Plaintiffs' Request

for Admissions and Interrogatory, App. at 43-86.)[1]  In addition, Plaintiffs recently served notices and subpoenas seeking testimony and documents from five nonparties located in California and New England, all of whom were previously deposed in connection with the prior SEC investigation of Netopia and/or one of the federal securities class actions brought by shareholders against Netopia.  (*See* Ex. M, third-party subpoenas served on Jonathan Guthart, Tim Noel, and Cathy Whitley, and deposition notices for Percy Sanders and Barbara Medina Martinez, App. at 87-107.)  Plaintiffs also have filed a motion to admit nine deposition transcripts from the prior SEC investigation of Netopia and six deposition transcripts from one of the prior securities class action lawsuits between Netopia and its shareholders (for a total of fifteen prior deposition transcripts).  (Docket Entry No. 75.)

## III.  ARGUMENT AND AUTHORITIES

### A.  Plaintiffs Should Be barred From Seeking Any Further Discovery Into Alleged Securities Fraud By Netopia Because It Is Irrelevant, Annoying, Oppressive, Unduly Burdensome, Harassing, And Being Sought For Improper Purposes.

The Court has the authority to enter a protective order barring or limiting discovery where "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  Here, the Court should enter a protective order barring Plaintiffs from further discovery regarding alleged securities fraud at Netopia, including the prior SEC investigation and shareholder class actions.  While the material facts of Plaintiffs' whistleblower claims under Sarbanes-Oxley are undisputed, Plaintiffs continue to seek discovery into these matters that are patently irrelevant, annoying, oppressive, unduly burdensome, and harassing.  So that Netopia and numerous nonparties subpoenaed for deposition

---

[1] All references to "App." refer to the Appendix in Support of Defendants' Motion for Protection or, Alternatively, for Leave to File Dispositive Briefing, filed contemporaneously herewith.

and production of documents can avoid further unwarranted burden and expense, the Court should enter a protective order.

A protective order is appropriate when the sought-after-discovery will expose the responding party to undue burden or expense. *See Williams ex rel. Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002). When a discovery request seeks irrelevant information, the Court may issue a protective order to restrict or limit the discovery request. *See Williams v. Roy O. Martin Lumber Co. LLC*, No. 02-30401, 2002 WL 31319337, at *6 (5th Cir. Sept. 30, 2002) (upholding protective order to prevent plaintiff from discovery of all records of defendant's employees).

The Fifth Circuit's ruling in *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO*, 901 F.2d 404 (5th Cir. 1990), is instructive. In that case, the Fifth Circuit explained that it is appropriate for a district court to enter a protective order staying discovery when "summary judgment motions could be decided as a matter of law on the basis of undisputed facts already before the court." *Landry*, 901 F.2d at 435-36. The *Landry* court explained that "[d]iscovery is not justified when cost and inconvenience is its sole result." *Id.* at 436. In that case, where the parties seeking discovery "asserted no facts they hoped to adduce, no genuine issues of material fact they hoped to create, [and] no showing they hoped to rebut" from the additional discovery, the court reasoned that a protective order was appropriate.

Identical reasoning applies in this case. As demonstrated above, all facts necessary to decide Plaintiffs' whistleblower claims have been discovered and are undisputed. Plaintiffs admit they engaged in the misconduct for which they were fired – specifically, undertaking intentional steps to conceal the actual terms of the ICC transactions. (*See* Statement of Facts, *supra*, at 4-6.)

Any new facts Plaintiffs could possibly glean from the additional discovery they seek will not disprove or rebut the material, dispositive facts. For instance, Plaintiffs seek to depose two former controllers of Netopia (Cathy Whitley and Tim Noel), Netopia's current Credit and Collections Manager (Percy Sanders), Netopia's current Order Management Manager (Barbara Medina Martinez), and a partner at KPMG, Netopia's former outside auditors (Jonathan Guthart). It is undisputed that *none* of these individuals were involved in the decision to terminate Plaintiffs' employment. That decision was made solely by the board of directors of Netopia. (*See* Statement of Facts, *supra*, at 8.) Similarly, the fifteen deposition transcripts from prior proceedings Plaintiffs seek to have "admitted" in this case were taken of persons having no connection whatsoever to the termination decisions at issue in this case, by parties having no interest in developing testimony related to the termination decisions at issue in this case. Rather, these individuals were all deposed by either the SEC or attorneys representing the Netopia shareholder class concerning alleged violations of certain provisions of the securities laws by Netopia. (*See* Defendants' Response to Plaintiffs' Motion to Admit Deposition Testimony From Other Cases, Docket Entry No. 86.)

The only discernable purpose of the discovery Plaintiffs seek is to waste considerable additional time and resources in an unlimited fishing expedition to uncover facts that ultimately cannot change the undisputed facts undermining their whistleblower claims. On the other hand, Netopia is substantially and unduly burdened by Plaintiffs' continued discovery efforts. Not only have Plaintiffs propounded considerable written discovery on Netopia seeking irrelevant information regarding alleged securities fraud by Netopia, but they have also propounded third-party subpoenas on Netopia's outside counsel, auditors, and other current and former employees seeking additional irrelevant, cumulative, and sometimes privileged information. As a result,

Netopia has already been forced to file two motions to quash in the Northern District of California (Exs. N and O, App. at pp. 108-180 ), a response to Plaintiffs' motion to admit prior deposition testimony in this case (Docket Entry No. 86), and this motion for protection. Plaintiff's continued efforts have already caused, and will continue to cause, considerable expense of time and resources for Netopia and the third-party targets of Plaintiffs' subpoenas. This waste of time and resources far outweighs any need Plaintiffs have for the far-reaching discovery they seek.

In sum, the Court should bar Plaintiffs from any further discovery into any alleged securities fraud by Netopia or its officers, directors, or agents. The relevant facts of Plaintiffs' whistleblower claims are undisputed, and the additional discovery Plaintiffs seek is unduly burdensome, annoying, oppressive, and wasteful, and not reasonably calculated to lead to the discovery of material facts.

**B.      Alternatively, The Court Should Grant Netopia Leave To Move For Partial Summary Judgment On Plaintiffs' Whistleblower Claims.**

In the event the Court does not enter a protective order to bar further irrelevant discovery, it should grant Netopia leave to file a motion for summary judgment limited to Plaintiffs' whistleblower claims under section 806 of the Sarbanes-Oxley Act. Although discovery is on-going with respect to Plaintiffs' other claims, it is apparent these claims are subject to summary judgment dismissal on the basis of the undisputed factual record as presently developed.

Section 806 protects "whistleblowers" of publicly traded companies, by prohibiting employers from discriminating or retaliating against an employee who engages in protected activity under the Act. Section 806 was enacted, in pertinent part, as follows:

§ 1514A. Civil action to protect against retaliation in fraud cases.

(a)  Whistleblower protection for employees of publicly traded companies.  No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 781), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), or any officer, employee, contractor subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee-(1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct *which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders*, when the information or assistance is provide to or the investigation is conducted by – (A) a Federal regulatory or law enforcement agency; (B) any Member of Congress or any committee of Congress; or (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . [.]

18 U.S.C. § 1514A (emphasis added).[2]

Thus, to be a covered under section 806, an employee must "provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of [the various covered laws prohibiting fraud against shareholders]." 18 U.S.C. § 1514A. In this case, however, Plaintiffs admitted at

---

[2] Section 806 of the Sarbanes-Oxley Act is specifically entitled the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002 (Public Law 107-204), 18 U.S.C. § 1514A, as implemented by 29 C.F.R. Part 1980.

their deposition that it was not until *after their termination*, weeks after they were questioned as part of the Audit Committee investigation, that they formed a belief that they or anyone else at Netopia had allegedly engaged in conduct constituting fraud against shareholders:

> Q:   At the time you met with the Morrison & Foerster investigators . . . you weren't there to complain about fraud against shareholders; right?
>
> A.   Right.
>
> * * *
>
> Q.   And you also weren't there to complain about any scheme to defraud a person in connection with securities; is that correct?
>
> A.   That's correct.
>
> Q.   And you also weren't there to complain about anyone intentionally violating a rule or regulation of the SEC; is that correct?
>
> A.   That's correct.
>
> Q.   In fact, to this day do you maintain that the Chicago and Philadelphia transactions were appropriate?
>
> A.   That's a tough question to answer.  At that time I certainly believed that.
>
> Q.   And, in fact, at the time you were terminated from Netopia you believed that; right?
>
> A.   Yeah, I mean, I was going to go there.  You know, there's just so much that's occurred since then that I've learned - and about what occurred in these transactions.  On the surface what I knew at that time in 2004 was that those transactions were handled properly.
>
> Q.   Okay.  And that was your knowledge at the time that you were terminated from Netopia as well; correct?
>
> A.   That is correct.

(Ex. B, Frankl Dep. at 142-44, App. at 7.)

> Q.   On the Chicago transaction, do you believe that that constituted fraud against shareholders?

A.    I believe the way that it was recognized, certainly.

Q.    You think it was?

A.    Subsequently what I found out about how it was recognized, not knowing much, but what I understood, yes.

Q.    During your employment did you understand it to be fraud against shareholders?  During your employment at Netopia?

A.    I didn't know anything about revenue recognition, really, and so I would have no way of knowing that.

Q.    So it wasn't until after your employment that you learned that you believed that it was fraud against shareholders; is that correct?

A.    Yes.  But the - I guess so, yes.

Q.    Okay.  Let me just for the record to make it - make it clear, it wasn't until after you were terminated from Netopia that you learned that the Chicago transaction was fraud against shareholders; is that correct?

A.    It wasn't until after I was terminated that I understood that the way that it was recognized and the way that it was handled was apparently fraud against shareholders.

(Ex. C, Deckard Dep. at 227-28, App. at 23.)

In addition, as explained above, Plaintiffs concede in this lawsuit that they committed the very wrongdoing for which Netopia terminated their employment.  (*See* Statement of Facts, *supra*, at 4-6.)   Regardless of whether Plaintiffs allegedly took direction from others, or whether others at Netopia allegedly knew about the terms of the ICC transactions, Plaintiffs committed acts that justified – indeed required – their termination.

Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Here, the parties do not dispute the material facts underlying Plaintiffs' whistleblower claim and there is a sufficient record upon which the Court can decide

these claims as a matter of law. Considering a motion for partial summary judgment at this time would significantly narrow the issues before the Court and conserve the resources of the Court and both parties.

Under Local Civil Rule 56.2(b), the Court may grant a party leave to file an additional motion for summary judgment. Although Netopia is prepared to proceed on a motion for partial summary judgment with respect to Plaintiffs' whistleblower claims, discovery is on-going with respect to Plaintiffs' other claims. While Netopia anticipates it will seek summary judgment with respect to those claims as well, the record is not sufficiently developed for the parties to adequately brief those issues now. Permitting Netopia to file a motion for summary judgment now, with leave to file a second motion with respect to Plaintiffs other claims, will be more efficient and less costly. Therefore, it is appropriate for the Court to prospectively grant Netopia leave to file a second summary judgment with respect to Plaintiffs' other claims at a later date. *See AMS Staff Leasing, N.A., Ltd. v. Assoc. Contract Truckmen, Inc.*, No. 3:04-CV-1344-D, 2006 WL 1096777, at *7 (N.D. Tex. Apr. 26, 2006) (finding it appropriate to grant a party leave to file a second motion for summary judgment where the motion would be "more efficient, potentially less costly to the parties, and possibly less burdensome to the court"). Because Plaintiffs plan to engage in considerable additional, costly discovery, the Court should permit Netopia to seek summary judgment with respect to the whistleblower claims immediately, with leave to file a second motion for summary judgment with respect to Plaintiffs' remaining claims at a later date.

## IV. CONCLUSION

In the interest of protecting Netopia, its former outside auditors, and its current and former employees from needless and unduly burdensome discovery, the Court should enter an order of protection precluding Plaintiffs from seeking any discovery into matters relating to

securities fraud allegedly committed by Netopia, including its officers, directors, or agents. Should the Court decline to bar Plaintiffs from further discovery into alleged securities fraud by Netopia, then the Court should grant Netopia leave to brief a motion for partial summary judgment limited to Plaintiffs' whistleblower claims with further leave to brief a second motion for partial summary judgment with respect to Plaintiffs' remaining claims at a later date. Doing so will narrow the issues on which there is no dispute, conserve considerable resources that both parties are expending in on-going discovery, and avoid unnecessary burden and expense to multiple non-parties.

Respectfully submitted,


 /s/ Stephanie K. Osteen
Roland M. Juarez
State Bar No. 24008411
rjuarez@akingump.com
Stephanie K. Osteen
State Bar No. 24002713
sosteen@akingump.com
Joshua Flynt
State Bar No. 24053204
jflynt@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Telephone:     (214) 969-2800
Facsimile:     (214) 969-4343

ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with counsel for Plaintiffs in a good faith effort to resolve this dispute without court action, but agreement cannot be reached.

 /s/ Stephanie K. Osteen
Stephanie K. Osteen

## CERTIFICATE OF SERVICE

I hereby certify that, on August 22, 2007, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to ECF registrants.

/s/ Stephanie K. Osteen
Stephanie K. Osteen

#6125497

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PETER FRANKL AND JOHN DECKARD

V.

NETOPIA, INC. & ALAN LEFKOF

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   3:05-cv-1757-B ECF

TO:   Johnathan Guthart
      KPMG
      55 Second Street, Ste. 1400
      San Francisco, Califonia 94105

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all Documents as Requested in the Attached Exhibit "A".

| PLACE      KPMG, 55 Second Street, Ste. 1400, San Francisco, California 94105 | DATE AND TIME 8/24/2007 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) *Plaintiff's Atty* | DATE 7/24/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Wade L. McClure, LLP, 8080 N. Central Expwy, Suite 1300, Dallas, Tx. 75206, (214) 891-8040

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



0087



AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                    DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

0088

# EXHIBIT "A"

1. **Any and all documents produced by you and/or KPMG to the SEC in the case styled** In the matter of: Netopia, Inc., **File No. SF-02846-A;  This request includes electronic copies of said depositions and exhibits, if with in your custody or control.**

2. **Any and all documents identified and/or offered during  your depositions taken on November 9, 2004 and January 5, 2005 in the case styled** In the matter of: Netopia, Inc., **File No. SF-02846-A.**

**The plaintiffs herein have entered into a confidentiality and protective order and will agree that any and all documents that you produce in connection with this subpoena shall be subject to the terms of that confidentiality and protective order.**

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

PETER FRANKL AND JOHN DECKARD

V.

NETOPIA, INC. & ALAN LEFKOF

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   3:05-cv-1757-B ECF

TO:   Johnathan Guthart
      KPMG
      55 Second Street, Ste. 1400
      San Francisco, California 94105

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   KPMG, 55 Second Street, Ste. 1400, San Francisco, California 94105 | DATE AND TIME   9/12/2007 9:00 am |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Any and all Documents as Requested in the Attached Exhibit "A".

| PLACE   KPMG, 55 Second Street, Ste. 1400, San Francisco, California 94105 | DATE AND TIME   9/12/2007 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *(signature)* | *(date)* |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Wade L. McClure, LLP, 8080 N. Central Expwy, Suite 1300, Dallas, Tx. 75206, (214) 891-8040

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

0090

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT "A"

1.  Any and all documents produced by you and/or KPMG to the SEC in the case styled In the matter of: Netopia, Inc., **File No. SF-02846-A;  This request includes electronic copies of said depositions and exhibits, if with in your custody or control.**

2.  **Any and all documents identified and/or offered during  your depositions taken on November 9, 2004 and January 5, 2005 in the case styled** In the matter of: Netopia, Inc., **File No. SF-02846-A.**

**The plaintiffs herein have entered into a confidentiality and protective order and will agree that any and all documents that you produce in connection with this subpoena shall be subject to the terms of that confidentiality and protective order.**