1   ROLAND M. JUAREZ (SBN 160793)
    **AKIN GUMP STRAUSS HAUER & FELD LLP**
2   2029 Century Park East, Suite 2400
    Los Angeles, California 90067-3012
3   Telephone:      310-229-1000
    Facsimile:      310-229-1001
4   rjuarez@akingump.com

5   STEPHANIE K. OSTEEN (*admitted pro hac vice*)
    **AKIN GUMP STRAUSS HAUER & FELD LLP**
6   1700 Pacific Avenue, Suite 4100
    Dallas, Texas 75201
7   Telephone:      214-969-2800
    Facsimile:      214-969-4343
8   sosteen@akingump.com

9   Attorneys for The Netopia Audit Committee

10

11

12                  UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14

15

16  PETER FRANKL and JOHN DECKARD,        Case No. C07-80195 MISC MHP (EMC)

17              Plaintiffs,

18      v.                                 **REPLY MEMORANDUM IN SUPPORT
                                           OF THE MOTION OF THE NETOPIA
19  NETOPIA, INC. and ALAN LEFKOF,         AUDIT COMMITTEE TO QUASH OR
                                           MODIFY SUBPOENA DUCES TECUM**
20              Defendants.
                                           Date:      October 3, 2007
21                                         Time:      1:00 pm
                                           Ctrm:      C, 15th floor
22                                         Judge:     Magistrate Judge Edward Chen

23

24

25

26

27

28

1

## REPLY MEMORANDUM

2 **I.    Introduction**

3        Plaintiff's subpoena served on non-party Morrison & Foerster LLP, outside counsel to the

4 Netopia Audit Committee ("the Audit Committee"), calls for the production of confidential materials

5 created for or by Morrison & Foerster that are protected by the attorney-client privilege and/or the

6 work product doctrine.  Because the discovery Plaintiffs seek is protected by privilege, the Court

7 should quash or modify the subpoena.

8        In opposition, Plaintiffs principally argue Netopia has placed the entire subject of Morrison &

9 Foerster's work on behalf of the Audit Committee in issue in this case.  Not so.  Netopia's defenses to

10 Plaintiffs' claims are based not on Morrison & Foerster's advice, but on the fact of Plaintiffs'

11 misconduct.  Accordingly, there is no "at issue" waiver.  Even if there were "at issue" waiver, however,

12 that would not justify the expansive discovery sought in Plaintiffs' motion.  "At issue" waiver would

13 not open the door to every single privileged document created by Morrison & Foerster concerning any

14 aspect of their work for the Audit Committee.  Instead, it would be limited only to documents relevant

15 to any advice they provided to the Audit Committee concerning Plaintiffs.  At a minimum, then,

16 Plaintiffs' subpoena is impermissibly overbroad.

17        Plaintiffs alternatively argue Netopia waived any privilege by disclosing documents to the SEC.

18 Even assuming Netopia's disclosure of documents to the SEC constituted waiver, that waiver could not

19 extend to documents that were not disclosed to the SEC (or any other third party).  Plaintiffs apparently

20 believe that the disclosure of *any* documents to the SEC entitles them to discovery of *all* privileged

21 attorney-client and work product materials within Morrrison & Foerster's possession.  This position is

22 untenable.

23        Therefore, the Court should grant the Committee's motion to quash or modify the subpoena to

24 non-party Morrison & Foerster.

25

26

27

28

**II.    Argument**

A.    There Has Been No "At-Issue" Waiver Because The Committee Has Not Placed Morrison & Foerster's Advice In Issue.

Plaintiffs' arguments notwithstanding, there has been no "at issue" waiver in this case. The "at issue" waiver doctrine applies when a party attempts to use attorney-client privilege or work product protection "as a sword," relying on privileged materials in asserting its defenses. This case is about whistleblowing—conduct which, as its primary characteristic, involves the self-motivated reporting of wrongdoing to an individual or entity with authority to investigate and prosecute that wrongdoing. Plaintiffs never allege that they did anything of the sort, nor could they. They participated in an investigation, at the Audit Committee's request, in which they admitted *exactly the misconduct for which they were terminated.*

That fact—that Plaintiffs themselves were responsible for acts the Audit Committee was investigating—is the basis for Netopia's defenses in this case. Yet, Plaintiffs have latched on to two sentences in Netopia's response to their OSHA complaint to assert that Netopia position is an advice-of-counsel defense. (*See* Op. at 5; McClure Decl. ¶ 10, Exh. I (Letter from Sara Brody to Rossana Nardizzi dated January 21, 2005 ("OSHA letter")). In the OSHA letter, Netopia's counsel wrote "The [Morrison & Foerster] lawyers reported their *findings* to the Audit Committee; the Audit Committee, in turn met with Netopia's board of directors and described the results of its investigation. Based on this report, the board of directors voted to terminate Messrs. Frankl and Deckard, for the following misconduct." (McClure Decl. ¶ 10, Exh. I (emphasis added).) By equating Morrison & Foerster's factual *findings* with legal advice, Plaintiffs assert that Netopia relied on legal advice to terminate Plaintiffs and is now hiding behind the privilege to conceal the nature of the advice. The truth is, however, that Netopia has never represented, and has not raised as a defense in this lawsuit, that it relied on any legal advice of Morrison & Foerster in terminate Plaintiffs' employment. Rather, Netopia has consistently maintained that it relied on certain facts and documents gathered by Morrison & Foerster that incriminated Plaintiffs, all of which were provided to OSHA in response to Plaintiffs' complaint and all of which have been subsequently re-produced in this lawsuit.

1    As the Ninth Circuit has explained, "[w]here a party raises a claim which in fairness requires

2    disclosure of the protected communication, the privilege may be implicitly waived." *Chevron Corp. v.*

3    *Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). In *Chevron*, the plaintiff sought to obtain privileged

4    communications after the defendant represented that certain decisions were based on the advice of

5    counsel. *Id.* There, the court reasoned that "to the extent that Pennzoil claims that its tax position is

6    reasonable because it was based on advice of counsel, Pennzoil puts at issue the tax advice it

7    received." *Id.* at 1162-62. Similarly, in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975), the case

8    cited in Plaintiff's opposition, the court explained that the defendants waived the attorney-client

9    privilege by "invok[ing] the privilege in furtherance of an affirmative defense they asserted for their

10   own benefit" which placed the privileged information in issue.

11   Unlike these cases, however, Netopia is not asserting it relied on the advice of counsel, but

12   rather on Plaintiffs' conduct, to make its termination decision. Therefore, contrary to Plaintiffs'

13   argument, Netopia's affirmative defenses do not place Morrison & Foerster's advice, if any, at issue.

14   To the extent any privileged information in Morrison & Foerster's possession relating to the Audit

15   Committee's investigation has any bearing on Netopia's affirmative defenses, it is only tangential and

16   indirect. Plaintiffs are not entitled to discovery of privileged materials simply because they contend

17   the privileged information is indirectly related to Netopia's defenses. *See In re Geothermal Resources*

18   *Intern., Inc.*, 93 F.3d 648, 653 (9th Cir. 1996) (privileged information not discoverable when "only one

19   form of indirect evidence regarding appellants' good faith"); *Rhone-Poulenc Rorer, Inc. v. Home*

20   *Indemn. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (explaining that "[a]dvice is not in issue merely because

21   it is relevant, and does not necessarily become in issue merely because the attorney's advice might

22   affect the client's state of mind in a relevant manner"). Accordingly, the subpoena should be quashed

23   or modified.

24   Further, even if there had been an "at issue" waiver, that would not justify the sweeping

25   invasion of the privilege Plaintiffs seek. Even when "at issue" waiver occurs, "the forfeiture should be

26   narrowly construed and tailored to remedy the unfairness or prejudice." *Trudeau v. New York State*

27   *Consumer Protection Bd.*, 237 F.R.D. 325, 341 (N.D.N.Y. 2006). The scope of any "at issue" waiver

28   should be limited to the advice underlying the defense asserted. *See Autobytel, Inc. v. Dealix Corp.*,

3

1    455 F. Supp. 2d 569, 575 (E.D. Tex. 2006) (noting that "inquiries into the infringer's state of mind

2    regarding infringement defenses not addressed in the underlying opinion are of limited utility in

3    determining whether the infringer's reliance on the underlying opinion is reasonable"). Here, however,

4    Plaintiffs seek to destroy privilege over the entire body of work performed by Morrison & Foerster—

5    even documents and information having nothing to do with their claims. In sum, the discovery

6    Plaintiffs seek far exceeds what would be contemplated by the "at issue" waiver doctrine, if applied in

7    this case.

8              B.      Morrison & Foerster's Disclosure Of Materials To KPMG Does Not Constitute Waiver.

9              Plaintiffs contend that Morrison & Foerster's disclosure of a few documents to Netopia's

10   outside auditors, KPMG, effectively waived all privileges Netopia could assert to every attorney-client

11   or work product document in Morrison & Foerster's possession. (Op. at 8-9.) Netopia fully addresses

12   the waiver argument with respect to KPMG in its briefs in support of its Motion to Quash or Modify

13   the Subpoenas directed to non-party witness Jonathan Guthart, and incorporates all those arguments

14   here.

15             C.      Netopia's Disclosure Of Materials To The SEC Does Not Compel Disclosure Here.

16             Plaintiffs also contend all documents concerning "the ICC transactions" (Op. at 7) and the

17   internal investigation conducted by Morrison & Foerster on behalf of the Audit Committee (Op. at 8)

18   must be produced because Netopia disclosed allegedly privileged materials concerning the ICC

19   transactions to the SEC. First, Plaintiffs provide no evidence that any privileged materials were, in

20   fact, produced to the SEC. Secondly, the law of "selective waiver" is not as settled as Plaintiffs would

21   have the court believe. The Ninth Circuit has not yet ruled on the issue, although it has noted that

22   disclosure to the government does not necessarily constitute a waiver to a private party. *See Bittaker v.*

23   *Woodford*, 331 F.3d 715, 720 n.5 (9th Cir. 2003). Of the few courts that have sanctioned or adopted a

24   per se rule against selective waiver, even they recognize that the doctrine furthers the search for truth,

25   realizes investigative efficiencies, encourages settlements, and possibly increases corporate self-

26   policing. *See, e.g., In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 303 (6th Cir. 2002). Other

27   courts believe selective waiver should be applied in a common-sense manner on a case-by-case basis

28   and have suggested it is possible to maintain privilege as to third parties by only producing documents

4

1    pursuant to an agreement on confidentiality and non-waiver, as Netopia did here. *See, e.g., In re*

2    *Steinhardt Partners, L.P.*, 9 F.3d 230, 235-36 (2d Cir. 1993); *Teachers Insurance and Annuity Ass'n of*

3    *America v. Shamrock Broadcasting Co.*, 521 F. Supp. 638, 646 (S.D.N.Y. 1981).

4        Even assuming Plaintiffs per se selective waiver argument would be accepted by the Ninth

5    Circuit, Plaintiffs still have not demonstrated any justification for the sweeping invasion of the

6    privilege they seek. Plaintiffs seek "all documents . . . and materials collected, reviewed, and/or

7    created by Morrison & Foerster, LLP in connection with its investigation for and on behalf of Netopia

8    and/or the Netopia Audit Committee in 2004 . . . ." (Motion, Ex. A). This request includes far more

9    information than Netopia allegedly disclosed when it cooperated with the SEC. Plaintiffs offer no

10   cases in which a court has held that waiver of the attorney-client privilege extended to privileged

11   materials that were never disclosed, nor could they. Waiver of the privilege is limited "to

12   communications about the matter actually disclosed." *Weil v. Investment/Indicators, Research and*

13   *Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981); *see also Chevron*, 974 F.2d at 1162 (concluding that

14   disclosure was "limited" and did not include "every document or communication that touched on the

15   more general tax deferral question").

16        Here, Plaintiffs contend (Op. at 7) that the disclosure of "certain materials" to the SEC resulted

17   in a waiver of the privilege as to all matters relating to the ICC transactions. None of the cases in

18   Plaintiffs' opposition support such an expansive application of the waiver doctrine. Instead, if

19   Plaintiffs arguments are accepted, the Court still must modify their subpoena to exclude all privileged

20   materials that were not disclosed to the SEC.

21   **III.    Conclusion**

22        In sum, the Court should quash or modify the subpoenas directed to Morrison & Foerster

23   because there is no justifiable reason to permit Plaintiffs to invade the attorney-client privilege.

24   Because Netopia has not placed Morrison & Foerster's advice in issue, and because Plaintiffs subpoena

25   calls for privileged materials that have never been disclosed by Netopia or Morrison & Foerster,

26   Plaintiffs are not entitled to such discovery.

27

28

Reply Memorandum In Support Of The Motion Of The Netopia Audit Committee To Quash Or Modify Subpoena
Duces Tecum                                                              C07-80195 MISC MHP (EMC)

Dated:  September 19, 2007

AKIN GUMP STRAUSS HAUER & FELD LLP
ROLAND M. JUAREZ
STEPHANIE K. OSTEEN


By  _/ Roland M. Juarez /s/_
                        Roland M. Juarez
Attorneys for The Netopia Audit Committee

6

1

PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Ste 2400, Los Angeles, CA 90067. On September 19, 2007, I served the foregoing document(s) described as: **REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF THE NETOPIA AUDIT COMMITTEE TO QUASH OR MODIFY SUBPOENA DUCES TECUM** on the interested party(ies) below, using the following means:

4

5

6

7

     Wade L. McClure
     Gibson, McClure, Wallace & Daniels, LLP
     8080 N. Central Expressway, Suite 1300, LB 50
     Dallas, Texas 75206

8

9

10

☐ BY PERSONAL SERVICE  I delivered such envelope(s) by hand to the offices of the addressee(s).

11

☐ BY UNITED STATES MAIL  I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

12

13

14

☐ BY OVERNIGHT DELIVERY  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

15

16

17

☐ BY MESSENGER SERVICE  I served the documents by placing them in an envelope or package addressed to the respective address(es) of the party(ies) stated above and providing them to a professional messenger service for service.

18

19

☐ BY FAX  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the respective fax number(s) of the party(ies) as stated above. No error was reported by the fax machine that I used. A copy of the record of the fax transmission(s), which I printed out, is attached.

20

21

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

22

23

24

     I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

25

26

     Executed on September 19, 2007 at Los Angeles, California.

27

Tracy Howe
[Print Name of Person Executing Proof]

/ Tracy Howe /s/
[Signature]

28

7